# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| WORLDWIDE DIRECT, INC., et al., | ) |
| | ) Case Nos. 99-108 to -127 (MFW) |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |

## SIXTH AND FINAL VERIFIED APPLICATION OF HENNIGAN, BENNETT & DORMAN FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES

| | |
|---|---|
| <u>Name of Applicant</u>: | Hennigan, Bennett & Dorman ("HBD") |
| Authorized to Provide <u>Professional Services to</u>: | Debtors and Debtors in Possession |
| <u>Date of Retention</u>: | Order entered January 21, 1999 |
| Period for Which Compensation <u>and Reimbursement is Sought</u>: | *Final Interim Period*:  December 1, 2000, through June 30, 2001 *(see the note on Pages 1-2 for an explanation of why the final interim period relates to a period of seven months)* |
| | *Total Period For Entire Case*:  January 19, 1999, through June 30, 2001 |
| <u>Amount of Compensation Requested</u>: | *Final Interim Period*: $294,578.00 (excluding voluntary write-offs of $33,590.12) |
| | *Entire Case*: $5,872,609.90 (excluding voluntary write-offs of $763,225.23) |
| Amount of Expense <u>Reimbursement Requested</u>: | *Final Interim Period*:  $89,106.83 |
| | *Entire Case*: $1,042,422.46 |

This is the sixth and final fee application filed by HBD:

- On or about June 15, 1999, HBD filed its First Interim Fee Application, by which, as amended, HBD requested interim approval of fees in the amount of $741,457.00 (after accounting for voluntary write-offs in the amount of $64,233.03) and reimbursement of expenses in the amount of $91,538.05 with respect to the period from January 19 through April 30, 1999. On or about August 27, 1999, this Court entered its Omnibus Order Approving First Interim Fee Applications, by which the Court approved HBD's requested fees and expenses in full.

30118.v1

- On or about October 15, 1999, HBD filed its Second Interim Fee Application, by which HBD requested interim approval of fees in the amount of $1,477,634.45 (after accounting for voluntary write-offs in the amount of $110,176.71) and reimbursement of expenses in the amount of $280,216.93 with respect to the period from May 1 through August 31, 1999. On or about December 29, 1999, this Court entered its Omnibus Order Approving Second Interim Fee Applications, by which the Court approved HBD's requested fees and expenses in full.

- On or about February 15, 2000, HBD filed its Third Interim Fee Application, by which, as amended, HBD requested interim approval of fees in the amount of $1,867,829.45 (after accounting for voluntary write-offs in the amount of $213,339.43) and reimbursement of expenses in the amount of $250,322.97 with respect to the period from September 1 through December 31, 1999. On or about March 17, 2000, this Court entered its Omnibus Order Approving Third Interim Fee Applications, by which the Court approved HBD's requested fees and expenses in full.

- On or about June 15, 2000, HBD filed its Fourth Interim Fee Application, by which HBD requested interim approval of fees in the amount of $871,715.50 (after accounting for voluntary write-offs in the amount of $261,796.15) and reimbursement of expenses in the amount of $195,261.65 with respect to the period from January 1 through April 30, 2000. On or about September 6, 2000, this Court entered its Omnibus Order Approving Fourth Interim Fee Applications, by which the Court approved HBD's requested fees and expenses in full.

- On or about January 15, 2001, HBD filed its Fifth Interim Fee Application, by which HBD requested interim approval of fees in the amount of $704,737.00 (after accounting for voluntary write-offs in the amount of $80,089.79) and reimbursement of expenses in the amount of $132,304.94 with respect to the period from May 1 through November 30, 2000. On or about March 5, 2001, this Court entered its Order Approving HBD's Fifth Interim Fee Application, by which the Court approved HBD's requested fees and expenses in full.

- (Note – due to late posting fees and additional credits and adjustments given by HBD, the amounts requested on an interim basis by HBD differ immaterially from the total amounts of fees and expenses for which final allowance is requested by this Application).

30118.v1

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re                                            ) | Chapter 11 |
| WORLDWIDE DIRECT, INC., et al.,          ) | |
|                                                  ) | Case Nos. 99-108 to -127 (MFW) |
| Debtors.                               ) | |
|                                                  ) | Jointly Administered |
|                                                  ) | |

## SIXTH AND FINAL VERIFIED APPLICATION OF HENNIGAN, BENNETT, & DORMAN FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES

Pursuant to sections 330 and 331 of the Bankruptcy Code and Rule 2016 of the Federal Rules of Bankruptcy Procedure, Hennigan, Bennett & Dorman ("HBD") hereby moves this Court for an order awarding it (a) reasonable interim compensation for professional services rendered to Worldwide Direct, Inc., a Delaware corporation, and its parent company SmarTalk TeleServices, Inc. ("SMTK") and SMTK's direct and indirect subsidiaries that are debtors and debtors in possession in the above-captioned cases (collectively, with SMTK, the "Debtors") in the amount of $297,578.00, together with reimbursement for actual and necessary expenses incurred in the amount of $89,106.83, for the period from December 1, 2000, through and including June 30, 2000 (the "Sixth Fee Period"); and (b) final approval and allowance of HBD's total fees in these cases from the petition date of January 19, 1999, through the June 30, 2001, date of effectiveness of the Debtors' plan of reorganization (the "Entire Case Fee Period") in the amount of $5,872,609.90, together with reimbursement for actual and necessary expenses incurred in the Entire Case Fee Period in the amount of $1,042,422.46.

Through August 31, 2000, HBD, along with other professionals employed in these cases, previously had filed interim fee applications every four months. At the end of August 2000, the hearings regarding the confirmation of the Debtors' Second Amended Consolidated Liquidating Chapter 11 Plan (the "Plan") had transpired and the matter of confirmation of the Plan was under submission with the Court. Because the Plan provided a deadline for the filing of final fee

applications shortly after the date of effectiveness, the Debtors and the Official Committee of

Unsecured Creditors (the "Committee") agreed that it would be inefficient and wasteful for

professionals employed in these cases to prepare interim fee applications in September 2000 and

then immediately follow those interim applications with final fee applications after Plan

confirmation. Accordingly, the Debtors and the Committee requested that professionals refrain

from filing their next scheduled interim fee applications pending a decision regarding

confirmation of the Plan. However, as the Plan still remained under submission in December

2000, however, the Debtors and the Committee revisited that determination and decided that it

would be appropriate for professionals to submit another round of interim fee applications to

cover the period from May through November 2000. For the same reasons, professionals

employed by the Debtors and the Committee refrained from filing additional interim fee

applications for services rendered after November 2000 until such time as the Plan could be

confirmed and become effective, which ultimately happened on June 30, 2001.

     In support of this application, HBD respectfully represents as follows:


## INTRODUCTION

    1.    HBD was employed to serve as bankruptcy counsel to the Debtors in these

chapter 11 cases pursuant to an Order entered on January 21, 1999. By that Order, the Court

authorized HBD to be compensated at the expense of the bankruptcy estates in such amounts as

subsequently allowed by the Court.

    2.    At all relevant times, HBD has been and is a disinterested person within the

meaning of section 101(14) of the Bankruptcy Code, and HBD has not represented or held, and

does not represent or hold, any interest adverse to the interests of the Debtors.

    3.    All services for which compensation is requested by HBD were performed for or

on behalf of the Debtors and not on behalf of any committee, creditor or other person.

    4.    HBD has classified all services performed for which compensation is sought for

the Sixth Fee Period and the Entire Case Fee Period into the following categories:

30118.v1

2

- Case Administration (category 010);

- Communications with Creditors (category 020);

- General Business Operations (category 030);

- Fee/Employment Applications (category 040);

- Fee/Employment Objections (category 050);

- Financing (category 060);

- Claims Administration and Objections (category 070);

- Asset Analysis and Recovery (category 080);

- Asset Disposition (category 090);

- Plan/Disclosure Statement (category 100)

- Employee Benefits/Plans (category 110)

- General Litigation (category 120);

- Claims Agent Services (category 200);

- Fletcher Litigation (category 300);

- AudioFAX Litigation (category 400);

- Document Review, Analysis, and Management (category 500); and

- Intrine Litigation (category 600)

5.      HBD has attempted to place the services performed in the category that best relates to the service provided.  However, because certain services may relate to one or more categories and are subject to the interpretation of individual timekeepers, services pertaining to one category in fact may be recorded in other categories.

6.      Attached as <u>Exhibit A</u> to the accompanying Submission of Exhibits is a detailed chronological statement of services performed by HBD during the Sixth Fee Period, reflected by service category.  The statement is itemized by the service categories referenced above and, within each category, includes a listing of the name of the person who rendered a particular service, the date and amount of time expended, and a detailed description of the work performed. Attached as <u>Exhibit B</u> to the accompanying Submission of Exhibits are separate summaries of

HBD's services throughout both the Sixth Fee Period and the Entire Case Fee Period, organized by service category.

7.      HBD submitted similar chronological statements of services in connection with its previous five interim fee applications, which are summarized on the cover pages to this Application. Because such information is extremely voluminous, and because the Court previously approved the fees and expenses requested in those prior applications on an interim basis, HBD has not resubmitted at this time its previously-approved invoices for other periods within the Entire Fee Period, and HBD instead incorporates all of those statements by reference. Copies are available upon request to HBD at the address indicated below. Moreover, in the Section of this Application entitled "Summary of Services Rendered," HBD briefly summarizes its fees and services for each service category for the Entire Fee Period.

8.      During the Sixth Fee Period, in the exercise of its professional judgment and discretion, HBD voluntarily reduced its invoices to the Debtors for fees and expenses equaling $33,590.12. For the Entire Case Fee Period, in the exercise of its professional judgment and discretion, HBD voluntarily reduced its invoices to the Debtors for fees and expenses equaling $763,225.23.

## SUMMARY OF SERVICES RENDERED

### Case Administration

9.      Sixth Fee Period (Exhibit A, pages 1 through 6). During the Sixth Fee Period, HBD continued to oversee every aspect of the administration of these twenty chapter 11 cases and saw the cases through confirmation and to the Effective Date of the Plan. Among other things, HBD assisted the Debtors' management in complying with the United States Trustee's monthly reporting requirements and maintained a master case calendar and issues list to keep abreast of the myriad of deadlines and issues arising in the combined cases. In connection with maintaining the case calendar and issues list, HBD also regularly reviewed the official court docket to reconcile the master calendar with the Court's calendar.

10.     To ensure prompt and accurate notice to all parties in these cases, HBD maintained, updated and made available for distribution a list of parties who had requested special notice. Finally, as is typical in chapter 11 cases (particularly cases of this size), there were significant other case administration matters that required constant oversight and administration by HBD during the Sixth Fee Period.

11.     During the Sixth Fee Period, HBD expended a total of 59.4 hours performing services related to the Case Administration category. The amount of fees attributable to this category is $10,867.00. However, by agreement with the United States Trustee, HBD has agreed to write off half of its non-working travel time as reflected in this category, reducing the total amount of HBD's fee request with respect to the Case Administration category for the Sixth Fee Period by $2,769.00 to $8,098.00 (an average of approximately $1,156 per month), with a blended hourly rate of $136.

12.     Entire Case Fee Period. HBD rendered a multitude of similar case administration services throughout the course of these cases, which at times proved extremely complex and administratively burdensome. In total, during the Entire Case Fee Period, HBD expended a total of 848.50 hours performing services related to the Case Administration category. The amount of fees attributable to this category for the Entire Case Fee Period is $191,072.50 (an average of approximately $6,369.09 per month), and the blended hourly rate for the category is $225.19.

## Communications With Creditors

13.     Sixth Fee Period (Exhibit A, pages 7 through 40). Given that these are sizable cases with thousands of potential creditors, HBD continually has communicated with creditors concerning the status of the jointly-administered estates and has corresponded with and responded to numerous written and telephonic requests for information from creditors and other interested parties. During the Sixth Fee Period, the volume of HBD's communications with creditors remained substantial because, as explained below, during such time the matter of confirmation of the Plan remained pending, and because HBD filed and pursued a number of

objections to claims.  As a result of those actions, creditors frequently contacted HBD for information about the Plan and about the status of their claims.

14.    Moreover, the Committee has been extremely active in these cases, and HBD communicated very frequently with the professionals and/or members of the Committee during the Sixth Fee Period.  HBD also participated in conference calls with Committee professionals and others regarding pending and pressing issues that had arisen in the cases, including litigation issues, issues regarding confirmation and effectiveness of the Plan, and issues regarding the analysis and resolution of various claims asserted against the Debtors.

15.    During the Sixth Fee Period, HBD expended a total of 63.1 hours performing services related to the Communications With Creditors category.  The amount of fees attributable to this category is $22,673.00 (an average of approximately $3,239 per month), and the blended hourly rate for this category is $359.

16.    <u>Entire Case Fee Period</u>.  HBD rendered similar services throughout the course of these cases.  In total, during the Entire Case Fee Period, HBD expended a total of 904.30 hours performing services related to the Communications with Creditors category.  The amount of fees attributable to this category for the Entire Case Fee Period is $276,943.50 (an average of approximately $9,231.45 per month), and the blended hourly rate for the category is $306.26.

<u>**General Business Operations**</u>

17.    <u>Sixth Fee Period (Exhibit A, pages 30 through 40)</u>.  Although the Debtors ceased normal business operations following the sale of their assets to AT&T Corp. ("<u>AT&T</u>"), during the Sixth  Fee Period HBD continued to perform substantial services attributable (for lack of a more appropriate category) to the General Business Operations category.

18.    For example, HBD consulted with the various remaining personnel of the Debtors on almost a daily basis about the varied and complex issues that continued to arise in these cases, including issues relating to the analysis and disposition of certain of the Debtors' remaining assets, issues relating to numerous claims asserted against the Debtors, issues relating to reporting requirements imposed by the Securities Exchange Commission, and issues arising from

the Debtors' continuing efforts to wind-down their affairs and the affairs of their non-debtor foreign subsidiaries. HBD also assisted the Debtors in preparing for the transfer of administration of these cases to the Liquidating Trust formed on the Effective Date of the Plan.

19.   During the Sixth Fee Period, HBD expended a total of 40.0 hours performing services related to the General Business Operations category. The amount of fees attributable to this category is $15,072.50 (an average of approximately $2,153 per month), and the blended hourly rate for this category is $376.

20.   Entire Case Fee Period. HBD rendered similar services throughout the course of these cases, including the period in which the Debtors operated their businesses prior to the sale to AT&T. In total, during the Entire Case Fee Period, HBD expended a total of 1,556.10 hours performing services related to the General Business Operations category. The amount of fees attributable to this category for the Entire Case Fee Period is $280,964.00 (an average of approximately $9,365.47 per month), and the blended hourly rate for the category is $180.56.

## Fee/Employment Applications

21.   Sixth Fee Period (Exhibit A, pages 41 through 43). During the Sixth Fee Period, HBD prepared its comprehensive Fifth Interim Fee Application (for a period covering seven months, as noted above), and assisted several other of the Debtors' professionals in preparing their fifth interim fee applications and with other fee-related issues.

22.   During the Sixth Fee Period, HBD expended a total of 23.2 hours performing services related to the Fee/Employment Applications category. The amount of fees attributable to this matter is $5,227.50 (an average of approximately $746 per month), and the blended hourly rate for this category is $225.

23.   Entire Case Fee Period. HBD rendered similar services throughout the course of these cases. In total, during the Entire Case Fee Period, HBD expended a total of 295.40 hours performing services related to the Fee/Employment Applications category. The amount of fees attributable to this category for the Entire Case Fee Period is $63,694.00 (an average of approximately $2,123.14 per month), and the blended hourly rate for the category is $215.62.

## Fee/Employment Objections

24.    Sixth Fee Period (Exhibit A, page 44). During the Sixth Fee Period, HBD prepared and successfully litigated an objection to an application by a former member of the Committee for reimbursement of attorneys' fees, and reviewed and monitored other professional fee issues.

25.    In total, during the Sixth Fee Period HBD expended 3.1 hours performing services related to the Fee/Employment Objections category. The amount of fees attributable to this matter is $1,209.00 (an average of approximately $172 per month), and the blended hourly rate for this category is $390.

26.    Entire Case Fee Period. HBD rendered similar services throughout the course of these cases, including review of certain fee applications and responses to the Committee's objections to the employment applications of the Debtors' professionals. In total, during the Entire Case Fee Period, HBD expended a total of 46.20 hours performing services related to the Fee/Employment Objections category. The amount of fees attributable to this category for the Entire Case Fee Period is $14,720.50 (an average of approximately $490.69 per month), and the blended hourly rate for the category is $318.63.

## Financing

27.    Sixth Fee Period (Exhibit A, page 45). During the Sixth Fee Period, HBD rendered minimal services of 0.2 hours, with fees of $78.00 (an average of approximately $11 per month), attributable to the Financing category.

28.    Entire Case Fee Period. In the early months of these cases, a large portion of HBD's services related to financing activities. Among other things, HBD assisted the Debtors in obtaining a hotly-contested debtor-in-possession financing facility, as well as authority to use cash collateral on a non-consensual basis, so as to enable continued operations during the period in which approval of the sale to AT&T was under consideration. In total, during the Entire Case Fee Period, HBD expended a total of 193.50 hours performing services related to the Financing category. The amount of fees attributable to this category for the Entire Case Fee Period is

$57,044.50 (an average of approximately $1,901.49 per month), and the blended hourly rate for the category is $294.81.

## Claims Administration And Objections

29.    Sixth Fee Period (Exhibit A, pages 46 through 109). During the Sixth Fee Period, a majority of HBD's services were attributable to the Claims Administration And Objections category.

30.    For example, HBD continued to assist Executive Sounding Board Associates ("ESBA"), the Debtors' financial advisors, in reviewing hundreds of the proofs of claim filed against the Debtors. Based upon that review, HBD prepared and obtained Court approval of several "omnibus" objections to claims, by which HBD achieved the disallowance or reclassification of hundreds of claims. HBD also drafted and prosecuted numerous additional objections to specific claims, including the taking of depositions, propounding and responding to discovery, and appearing at hearings before the Court.

31.    Similarly, HBD negotiated and drafted dozens of compromise agreements to enable prolonged litigation over certain disputed claims, as well as the related motions and pleadings necessary to obtain the Court's approval of those compromises. Similarly, HBD assisted Ernst & Young LLP, the Committee's financial advisors, in its analysis and negotiation of the hundreds of state and federal tax claims filed against the Debtors, and HBD drafted settlement agreements for the resolution of many of those claims.

32.    During the Sixth Fee Period, HBD expended a total of 464.4 hours performing services related to the Claims Administration And Objections category. The amount of fees attributable to this matter is $130,994.50 (an average of approximately $18,713 per month), and the blended hourly rate for this category is $282.

33.    Entire Case Fee Period. HBD rendered similar services throughout the course of these cases. As a direct result of HBD's efforts, by the end of the Sixth Fee Period all of the dozens of cure payment claims, and all but several dozen of the more than 2,000 proofs of claim and scheduled claims, asserted against the Debtors had been reconciled and resolved, the

maximum amount of claims had been reduced from well over $1.5 billion to less than $400 million, and the estates stood in a position to make a substantial interim distribution to creditors shortly after the Effective Date of the Plan.

34.     In total, during the Entire Case Fee Period, HBD expended a total of 2,539.60 hours performing services related to the Claims Administration And Objections category. The amount of fees attributable to this category for the Entire Case Fee Period is $661,490.00 (an average of approximately $22,049.67 per month), and the blended hourly rate for the category is $260.47.

**Asset Analysis And Recovery**

35.     Sixth Fee Period (Exhibit A, page 110). During the Sixth Fee Period, HBD rendered minimal services of 2.0 hours, with fees of $780.00 (an average of approximately $111 per month), attributable to the Asset Analysis And Recovery category.

36.     Entire Case Fee Period. Throughout the course of these cases, HBD assisted the Debtors on numerous occasions in the analysis of their assets and their efforts to maximize the value of the bankruptcy estates. Among other things, at the Debtors' direct request, HBD prepared comprehensive "work ups" with respect to several of the causes of action available against third-parties as a result of the Debtors' restatement of their financial results and ultimate financial demise, and HBD stood ready to commence litigation to assert those claims at the time when the Committee insisted that the actions be delegated to it.

37.     In total, during the Entire Case Fee Period, HBD expended a total of 2,943.00 hours performing services related to the Asset Analysis And Recovery category. The amount of fees attributable to this category for the Entire Case Fee Period is $675,961.35 (an average of approximately $22,532.05 per month), and the blended hourly rate for the category is $229.69.

**Asset Disposition**

38.     Sixth Fee Period (Exhibit A, page 111). During the Sixth Fee Period, HBD devoted time to obtaining final settlement of the litigation regarding the recovery of remaining

amounts due from AT&T under the "holdback note" provided in connection with the sale of the Debtors' assets to AT&T.

39.     During the Sixth Fee Period, HBD expended a total of 9.3 hours performing services related to the Asset Disposition category.  The amount of fees attributable to this category is $3,168.50 (an average of approximately $452 per month), and the blended hourly rate for this category is $340.

40.     Entire Case Fee Period.  Because these have been liquidating chapter 11 cases, HBD's most important and most extensive services in these cases – along with services regarding claims analysis and objection – have related to the disposition of the Debtors' assets.  For the first several months of the cases, HBD devoted nearly around-the-clock services in an effort to negotiate, document, obtain approval of, and close the sale of most of the Debtors' assets to AT&T.  When that massive project was concluded, HBD helped the Debtors turn their efforts to the liquidation of their remaining assets.  Thereafter, when AT&T refused to pay nearly $40 million of the deferred purchase price for the business, HBD commenced (and ultimately settled on very favorable terms) litigation against AT&T.  All told, as a direct result of HBD's efforts, the bankruptcy estates now have well over $100 million in cash available for distribution to unsecured creditors (as all secured creditors previously have been paid).

41.     In total, during the Entire Case Fee Period, HBD expended a total of 1,948.50 hours performing services related to the Asset Disposition category.  The amount of fees attributable to this category for the Entire Case Fee Period is $518,852.50 (an average of approximately $17,295.09 per month), and the blended hourly rate for the category is $266.29.

**Plan/Disclosure Statement**

42.     Sixth Fee Period (Exhibit A, pages 112 through 113).  During the Sixth Fee Period, HBD performed several services related to achieving confirmation and effectiveness of the Plan, including attendance at a hearing on the Committee's motion for a Plan status conference, preparation of a motion to modify the Plan, and preparation of various documents and notices to achieve Plan effectiveness.

43.     In total, during the Sixth Fee Period HBD expended a total of 15.5 hours performing services related to the Plan/Disclosure Statement category. The amount of fees attributable to this category is $6,045.00 (an average of approximately $863 per month), and the blended hourly rate for this category is $390.

44.     Entire Case Fee Period. The plan process was a difficult one in these cases. The plan proposed by the Debtors and the Committee was contested by several groups holders of disputed claims. Ultimately, the Debtors and the Committee achieved confirmation of the Plan after lengthy disputes and litigation over the proposed disclosure statement and confirmation of the Plan. HBD played an integral role in assisting the Debtors throughout the process.

45.     In total, during the Entire Case Fee Period, HBD expended a total of 1,029.90 hours performing services related to the Plan/Disclosure Statement category. The amount of fees attributable to this category is $318,611.00 (an average of approximately $10,620.37 per month), and the blended hourly rate for the category is $309.37.

## Employee Benefits/Plans

46.     Sixth Fee Period. HBD rendered no services attributable to the Employee Benefits/Plans category during the Sixth Fee Period.

47.     Entire Case Fee Period. During the bankruptcy cases, HBD rendered a number of services relating to the Debtors' employees, including pleadings for the approval of various retention agreements and other employee benefits.

48.     In total, during the Entire Case Fee Period, HBD expended a total of 1.70 hours performing services related to the Employee Benefits/Plans category. The amount of fees attributable to this category is $480.00 (an average of approximately $16.00 per month), and the blended hourly rate for the category is $282.36.

## General Litigation

49.     Sixth Fee Period (Exhibit A, pages 114 through 123). HBD continued to perform services attributable to the General Litigation Category during the Sixth Fee Period. Among other things, HBD assisted the Debtors in responding to continuing document and information

requests made by the Securities Exchange Commission, and continued to monitor the consolidated class-action securities litigation proceedings pending with respect to SMTK's prepetition sale of securities. HBD also monitored the Committee's litigation against Donaldson Lufkin & Jenrette and PricewaterhouseCoopers.

50.    During the Sixth Fee Period, HBD also prepared a brief in defense of an appeal regarding the disallowance of a Committee member's request for payment of attorneys' fees, as well as various tolling agreements to enable the estates to consider further various avoidance actions.

51.    During the Sixth Fee Period, HBD expended a total of 60.6 hours performing services related to the General Litigation category. The amount of fees attributable to this category is $18,140.00 (an average of approximately $2,591 per month), and the blended hourly rate for this category is $299.

52.    <u>Entire Case Fee Period</u>. These cases were marked by periods of significant litigation. As a result, HBD rendered substantial services relating to the General Litigation category (in addition to the various other litigation categories described below) throughout the course of these cases. In total, during the Entire Case Fee Period, HBD expended a total of 764.30 hours performing services related to the General Litigation category. The amount of fees attributable to this category for the Entire Case Fee Period is $204,549.50 (an average of approximately $6,818.32 per month), and the blended hourly rate for the category is $267.63.

## Claims Agent Services

53.    <u>Sixth Fee Period (Exhibit A, page 124)</u>. HBD has been appointed the official claims agent in the Debtors' bankruptcy cases. In that capacity, during the Sixth Fee Period, HBD periodically updated the Official Claims Register to account for newly-filed claims and claims assignments, and HBD prepared various claims-related reports as requested by the Debtors and by the Committee.

54.    During the Sixth Fee Period, HBD expended a total of 5.3 hours performing services related to the Claims Agent Services category. The amount of fees attributable to this

category is $433.00 (an average of approximately $61 per month), and the blended hourly rate for
this category is $81.

55.    Entire Case Fee Period. HBD rendered similar services throughout the course of
these cases. In total, during the Entire Case Fee Period, HBD expended a total of 393.30 hours
performing services related to the Claims Agent Services category. The amount of fees
attributable to this category for the Entire Case Fee Period is $57,328.00 (an average of
approximately $1,910.94 per month), and the blended hourly rate for the category is $145.77.

### Fletcher Litigation

56.    Sixth Fee Period. HBD rendered no services attributable to the Fletcher Litigation
category during the Sixth Fee Period.

57.    Entire Case Fee Period. The Fletcher Litigation category relates to services
rendered in connection with an adversary proceeding commenced in objection to the proof of
claim filed by Fletcher International, the holder of a sizable disputed secured claim.

58.    At times, the litigation with Fletcher was intense and time consuming.
Consequently, HBD rendered a wide range of services that have been allocated to this category.
For example, HBD drafted and responded to discovery requests and prepared for depositions of
various of Fletcher's employees and officers (including the review of documents produced by
Fletcher, electronic research, and the review of relevant portions of the 1,200 boxes of documents
in the Debtors' document repository that related to topics likely to be addressed at the
depositions). HBD also expended a significant amount of time preparing and responding to
several dispositive and non-dispositive motions (motions for summary judgment and the like).
Moreover, after Fletcher filed numerous motions in the Fletcher litigation, including (a) a motion
seeking judgment on the pleadings, (b) a motion seeking to stay discovery, or alternatively,
continue the discovery cut-off, (c) a motion seeking to file a cross-complaint against an
Intervenor in the Fletcher Litigation, and (d) a motion to quash certain depositions, HBD drafted
responsive pleadings and declarations. HBD also interviewed potential expert consultants and

witnesses and worked with expert consultants with respect to the analysis of several issues in the Fletcher litigation.

59.     In total, during the Entire Case Fee Period, HBD expended a total of 2,847.60 hours performing services related to the Fletcher Litigation category. The amount of fees attributable to this category is $661,793.40 (an average of approximately $22,059.78 per month), and the blended hourly rate for the category is $232.41.

<b>AudioFAX Litigation</b>

60.     <u>Sixth Fee Period</u>. HBD rendered no services attributable to the AT&T Litigation Category during the Sixth Fee Period.

61.     <u>Entire Case Fee Period</u>. The AudioFAX Litigation category relates to services rendered in connection with the litigation regarding the cure payment claim filed by AudioFAX, which culminated in successful summary judgment obtained by HBD on behalf of the Debtors.

62.     HBD rendered substantial services attributable to the AudioFAX litigation category. For example, HBD engaged in extensive discovery by propounding and responding to document requests, requests for admissions, and interrogatories. HBD also attended depositions in Los Angeles, Columbus, Ohio, and Atlanta, Georgia.

63.     Thereafter, HBD prepared a comprehensive objection to AudioFAX's cure claim, along with a motion for summary judgment or summary adjudication. HBD subsequently prepared reply pleadings and an objection to AudioFAX's cross-motion for summary judgment. Finally, HBD appeared and represented the Debtors at the hearing with respect to the matter.

64.     In total, during the Entire Case Fee Period, HBD expended a total of 488.90 hours performing services related to the AudioFAX Litigation category. The amount of fees attributable to this category for the Entire Case Fee Period is $154,841.00 (an average of approximately $5,161.37 per month), and the blended hourly rate for the category is $ 316.72.

## Document Analysis, Review, And Management

65.    Sixth Fee Period (Exhibit A, pages 125 through 172).  HBD and the Debtors determined early in these cases that the analysis of the significant potential causes of action available to the bankruptcy estates would entail the review of numerous documents and records maintained by the Debtors, which documents also likely would be responsive to the broad formal and informal document requests received from Fletcher, the Committee, PricewaterhouseCoopers, shareholder class-action litigants, AT&T, Intrine Communications ("Intrine"), and other parties.  The Document Analysis, Review, And Management Category reflects HBD's services with respect to those documents and records.

66.    HBD created and maintained a comprehensive repository of the Debtors' documents, from which documents could be reviewed and produced as efficiently as possible. HBD compiled documents from numerous sources, including the Debtors' former facilities in Ohio and Massachusetts, several of the Debtors' former litigation firms, and the Debtors' former corporate counsel, and HBD organized those documents in a warehouse in Dublin, Ohio.  To date, as a result of HBD's efforts, that repository contains more than 1,200 boxes of documents.

67.    During the Sixth Fee Period, HBD continued to maintain the repository and to respond to document requests by the Debtors, the Committee, and various litigants.  Moreover, in anticipation of the transition of documents to the Liquidating Trust upon the Effective Date of the Plan, HBD prepared and supervised a comprehensive inventory and plan for transition.

68.    During the Sixth Fee Period, HBD expended a total of 520.2 hours performing services related to the Document Analysis, Review, And Management category.  The amount of fees attributable to this category is $81,825.00 (an average of approximately $11,689 per month), and the blended hourly rate for this category is $157.

69.    Entire Case Fee Period.  HBD rendered similar services throughout the course of these cases.  In total, during the Entire Case Fee Period, HBD expended a total of 16,520.30 hours performing services related to the Document Analysis, Review, And Management category.  The amount of fees attributable to this category is $1,588,365.65 (an average of

approximately $52,945.53 per month), and the blended hourly rate for the category is *$96.15*. In order to conduct the document review as efficiently and cost-effectively as possible, HBD frequently employed temporary attorneys and paralegals, on a contract basis with billing rates significantly lower than the billing rates for HBD's full-time attorneys and paralegals, to assist with privilege review tasks, with oversight by HBD attorneys and paralegals.

### Intrine Litigation

70.     Sixth Fee Period (Exhibit A, page 173).  During the Sixth Fee Period, HBD rendered minimal services of 2.3 hours, with fees of $834.00 (an average of approximately $119 per month), attributable to the Intrine Litigation category.

71.     Entire Case Fee Period.  The Intrine Litigation category relates to services regarding the proofs of claim filed by Intrine, the entity that asserted the largest claim against the estates.  HBD prepared for litigation with Intrine by analyzing the claims, researching numerous legal issues, preparing a damage analysis, interviewing witnesses, meeting with potential experts, and conducting discovery from Intrine.  HBD also litigated issues regarding relief from the stay and attended a status conference before the Superior Court and participated in several conference calls with the proposed arbitrator.

72.     Ultimately, the Debtors and Intrine commenced settlement negotiations, and HBD prepared a detailed settlement memorandum, wrote several detailed letters to Intrine regarding settlement, and attended five settlement conferences.  The parties eventually were able to reach a favorable compromise that provided for Intrine to receive an allowed unsecured claim of $4.675 million (a reduction in claim amount of more than $500 million).  HBD thereafter drafted and negotiated a settlement agreement and prepared pleadings necessary for Court approval.

73.     In total, during the Entire Case Fee Period, HBD expended a total of 839.30 hours performing services related to the Intrine Litigation category.  The amount of fees attributable to this category for the Entire Case Fee Period is $145,898.50 (an average of approximately $4,863.29 per month), and the blended hourly rate for the category is $173.84.

## SUMMARY OF DISBURSEMENTS

74.    The total amount of actual and necessary expenses incurred by HBD in connection with these cases during the Sixth Fee Period (after accounting for the write-offs referenced above and other credits) is $89,106.83.  Attached as <u>Exhibit C</u> to the accompanying Submission of Exhibits is a chronological list of all expenses incurred by HBD for which reimbursement is sought with respect to the Sixth Fee Period, and attached as <u>Exhibit D</u> is a summary of all such expenses by description for both the Sixth Fee Period and the Entire Case Fee Period.  Exhibit C includes the detailed listing of such expenses for the Sixth Fee Period and is broken down into categories of charges, including, among other things, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, travel expenses, and computerized research.

75.    HBD has made every effort to limit its expenses and to use the most economical means available for accomplishing the tasks requiring expenditures of costs.  HBD charges its clients only for the actual expenses incurred, without markup or surcharge, and HBD does not charge for non-ordinary overhead expenses such as secretarial and other overtime.

### Computerized Legal Research

76.    <u>Sixth Fee Period</u>.  HBD frequently uses computerized legal research (such as Westlaw and Lexis) services in connection with the research of issues arising in these cases. During the Sixth Fee Period, HBD's computerized legal research expenses for these cases were $6,582.81 (approximately $940 per month).

77.    <u>Entire Case Fee Period</u>.  HBD's computerized legal research expenses during the Entire Case Fee Period were $140,012.53 (approximately $4,667.09 per month).

### Courier/Overnight Mail

78.    <u>Sixth Fee Period</u>.  Although HBD strives to avoid messenger and overnight mail expenses when information can be transmitted by mail, e-mail, or (where economically feasible) telecopy, when messengers or overnight delivery must be used, HBD attempts to use the least expensive service available consistent with obtaining delivery within the time required.  The

charges for messenger services are posted to clients' accounts and reimbursement is requested at actual amounts charged by the outside services. During the Sixth Fee Period, the expenses incurred for courier services with respect to these cases were $7,637.61 (approximately $1,091 per month).

79.    Entire Case Fee Period. HBD's courier/overnight mail expenses during the Entire Case Fee Period were $64,478.57 (approximately $2,149.29 per month).

## Graphics

80.    Sixth Fee Period. HBD incurred no expenses attributable to the Graphics category during the Sixth Fee Period.

81.    Entire Case Fee Period. HBD's computer/graphics expenses during the Entire Case Fee Period were $281.00 (approximately $9.37 per month).

## Meals

82.    Sixth Fee Period. By necessity, HBD personnel frequently incur meal expenses when traveling on business relating to these cases. During the Sixth Fee Period, HBD's expenses for such meals chargeable to the Debtors were $69.71 (approximately $10 per month).

83.    Entire Case Fee Period. HBD's meal expenses during the Entire Case Fee Period were $7,139.78 (approximately $238.00 per month).

## Outside Background Research

84.    Sixth Fee Period. HBD incurred no expenses attributable to the Outside Background Research category during the Sixth Fee Period.

85.    Entire Case Fee Period. HBD's outside background research expenses during the Entire Case Fee Period were $3,134.37 (approximately $104.48 per month).

## Parking

86.    Sixth Fee Period. During the Sixth Fee Period, HBD's expenses for out-of-office parking (including parking expenses incurred when traveling for matters relating to these cases) were $145.25 (approximately $20 per month).

87.    Entire Case Fee Period.  HBD's parking expenses during the Entire Case Fee Period were $5,238.37 (approximately $174.62 per month).

### Postage

88.    Sixth Fee Period.  HBD incurs postage costs for mailing notices to creditors, serving pleadings, and sending general correspondence in the representation of the Debtors. Costs for postage are compiled automatically based upon client account numbers identified when postage is printed by HBD's postage meter and are passed along to the Debtors without addition or premium.  During the Sixth Fee Period, HBD's expenses for postage in these cases were $390.24 (approximately $55 per month).

89.    Entire Case Fee Period.  HBD's postage expenses during the Entire Case Fee Period were $12,757.02 (approximately $425.24 per month).

### Professional Services

90.    Sixth Fee Period.  During the Sixth Fee Period, HBD directly paid a total of $380.00 for outside professional services relating to these cases, including the fees of the vendor who provided document imaging and recovery services.

91.    Entire Case Fee Period.  HBD's professional services expenses during the Entire Case Fee Period – including expert witness fees – were $147,487.63 (approximately $4,916.26 per month).

### Publications

92.    Sixth Fee Period.  HBD incurred no expenses attributable to the Publications category during the Sixth Fee Period.

93.    Entire Case Fee Period.  HBD's publications expenses during the Entire Case Fee Period were $6.00 (approximately $.20 per month).

### Reproduction (In House) and (Outside)

94.    Sixth Fee Period.  HBD generally handles regular and routine photocopying in-house.  For this engagement, HBD charges $.10 per page for in-house photocopying (reduced from $.15 per page commencing in September 2000), which amount is intended to cover the

costs of supplies and labor associated with providing photocopying services. HBD's photocopy machines automatically record the number of copies made in accordance with the client's account number, which is input into a device attached to the photocopy machine. Whenever feasible, HBD sends large copying projects to outside copy services that charge bulk rates for photocopying. In such instances, unless the client pays such outside services directly, HBD charges its clients the same amount that HBD pays to the outside services.

95.     During the Sixth Fee Period, HBD's photocopying charges in these cases, both in house and outside, were $65,085.57 (approximately $9,298 per month). This amount includes $62,610.60 in extraordinary outsourced photocopying and courier expenses relating to the various discovery productions conducted by HBD on behalf of the Debtors and incurred during the period from November 1999 through June 2000, which expenses were paid by HBD but inadvertently were never billed to the Debtors.

96.     Entire Case Fee Period. HBD's reproduction expenses during the Entire Case Fee Period were $437,700.66 (approximately $14,590.03 per month).

## Supplies/Equipment

97.     Sixth Fee Period. HBD incurred no expenses attributable to the Supplies/Equipment category during the Sixth Fee Period.

98.     Entire Case Fee Period. HBD's supplies/equipment expenses during the Entire Case Fee Period were $829.76 (approximately $27.66 per month).

## Telecopy

99.     Sixth Fee Period. HBD's telecopy machines automatically record the number of pages sent when the person who is sending a telecopy enters the client's account number into a device attached to the telecopy machine. HBD charges $1.00 per page for outgoing telecopies and does not charge for telecopies received. During the Sixth Fee Period, HBD's telecopy expenses were $1,905.00 (approximately $272 per month).

100.    Entire Case Fee Period. HBD's telecopy expenses during the Entire Case Fee Period were $32,935.00 (approximately $1,097.84 per month).

**Telephone**

101.   Sixth Fee Period.  HBD records long distance telephone expenses associated with individual client accounts automatically as the calls are made.  During the Sixth Fee Period, HBD's telephone expenses for matters in these cases were $1,729.93 (approximately $247 per month).

102.   Entire Case Fee Period.  HBD's telephone expenses during the Entire Case Fee Period were $19,266.80 (approximately $642.23 per month).

**Temporary Help**

103.   Sixth Fee Period.  HBD incurred no expenses attributable to the Temporary Help category during the Sixth Fee Period.

104.   Entire Case Fee Period.  HBD's temporary help expenses during the Entire Case Fee Period were $32,661.15 (approximately $1,088.71 per month).

**Third Party Reimbursement**

105.   Entire Case Fee Period.  HBD was reimbursed by a third party vendor for certain photocopying expenses pursuant to an agreement made with the Debtors.  The total reimbursement, for which the Debtors were credited, was <$21,024.66>.

**Transcripts**

106.   Sixth Fee Period.  HBD incurred transcript expenses of $562 during the Sixth Fee Period.

107.   Entire Case Fee Period.  HBD's transcript expenses during the Entire Case Fee Period were $2,772.20 (approximately $92.41 per month).

**Transportation**

108.   Sixth Fee Period.  HBD attended multiple Court hearings and meetings with the Debtors, the Committee, and other professionals, and HBD therefore incurred airfare and other transportation expenses.  Adjustments were made to the cost of airfare to reduce the cost in all instances to coach fare.  After such adjustments, during the Sixth Fee Period, HBD's expenses for transportation in these cases were $4,618.71 (approximately $660 per month).

**109.**    <u>Entire Case Fee Period</u>.  HBD's transportation expenses during the Entire Case Fee Period were <u>$161,839.40</u> (approximately <u>$5,394.65 per month</u>).

*        *        *

110.    HBD submits that all expenses that HBD advanced on behalf of the Debtors were necessarily incurred and are properly charged as administrative expenses of these estates.

111.    HBD believes that this Application substantially complies with the requirements of this Court's General Order 32.

## CONCLUSION

Wherefore, HBD respectfully requests that this Court enter its order:

(a)    Approving this Application;

(b)    Approving and allowing HBD's fees for the Sixth Fee Period totaling $297,578.00;

(c)    Approving and allowing HBD's expense reimbursements for the Sixth Fee Period totaling $89,106.83;

(d)    Approving and allowing on a final basis HBD's fees for the Entire Case Fee Period totaling $5,872,609.90;

(e)    Approving and allowing on a final basis HBD's expense reimbursements for the Entire Case Fee Period totaling $1,042,422.46;

(f)     Directing the Liquidating Trust formed pursuant to the Plan to pay to HBD such

allowed fees and expenses for which it has not previously been compensated; and

(g)     Granting such other and further relief as the Court deems just and proper.

Dated:  Los Angeles, California        HENNIGAN, BENNETT & DORMAN
August 13, 2001

_____
Bruce Bennett
James O. Johnston
601 South Figueroa Street, Suite 3300
Los Angeles, California  90017
Telephone:  (213) 694-1200
Telecopy:  (213) 694-1234
Counsel for Debtors and Debtors-in-Possession

30118.v1                          24

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| WORLDWIDE DIRECT, INC., et al., ) | Case Nos. 99-108 to -127 (MFW) |
| ) | |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |

**VERIFICATION OF JAMES O. JOHNSTON IN SUPPORT OF THE SIXTH AND FINAL VERIFIED APPLICATION OF HENNIGAN, BENNETT & DORMAN FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES**

I, James O. Johnston, hereby declare that:

1.      I am a partner with Hennigan, Bennett & Dorman, reorganization counsel to the debtors and debtors in possession ("HBD").

2.      The order authorizing my pro hac vice admission to practice before this Court was entered on the docket on January 21, 1999.

3.      I personally have performed many of the legal services rendered by HBD in the above-referenced cases and am familiar with the other work performed on behalf of the debtors by the lawyers and paraprofessionals of HBD.

4.      The facts set forth in the foregoing "Sixth And Final Verified Application Of Hennigan, Bennett & Dorman For Interim Allowance Of Compensation And For Reimbursement Of Expenses" are true and correct to the best of my knowledge, information and belief.

Dated:  August 13 ,2001

_____
James O. Johnston

SWORN TO AND SUBSCRIBED before me this 13th day of August 2001.

_____
Notary Public

30167.v1



OLIVETTE C. SASSER
Commission # 1277063
Notary Public - California
Los Angeles County
My Comm. Expires Sep 16, 2004