IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | § |
| | §   Chapter 11 |
| WORLDWIDE DIRECT, INC., *et al.,* | §   Case No. 99-00108-MFW through |
| | §   Case No. 99-00127-MFW |
| Debtors. | §   (Jointly Administered) |
| | § |
| | §   **Objection Deadline: December 3, 2001 @ 4:00 p.m.** |
| | §   **Uncontested Hearing Date:  December 13, 2001 @ 2:00 p.m.** |
| | §   **Contested Hearing Date:  January 8, 2001 @ 2:00 p.m.** |
| | § |
| | §   **Related Docket Nos. 2431, 2441, 2442 & 2516** |

**OBJECTION TO THE FINAL FEE APPLICATION OF HENNIGAN
BENNETT & DORMAN AND HOWREY & SIMON FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES FOR THE PRE-EFFECTIVE DATE PERIOD**

Goldin Associates, L.L.C., in its capacity as Liquidating Trustee (the "Liquidating Trustee") for the Worldwide Direct Liquidation Trust (the "Liquidating Trust") created in accordance with the Second Amended Consolidated Liquidating Chapter 11 Plan For SmarTalk TeleServices, Inc., And Affiliates, Proposed By The Debtors And By The Official Committee Of Unsecured Creditors (as subsequently confirmed and modified, the "Plan"), hereby objects to the Final Fee Applications of Hennigan Bennett & Dorman and Howrey Simon Arnold & White Seeking Compensation and Reimbursement of Expenses for the Pre-Effective Date Period. In support of the relief requested, the Liquidating Trustee would respectfully show as follows:

**Jurisdiction**

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157.

2. The statutory predicates for the relief requested herein are sections 105, 330 and 331 of the Bankruptcy Code.

**Background**

3.  On January 19, 1999 (the "Petition Date"), Worldwide Direct, Inc., SmarTalk TeleServices, Inc. ("SmarTalk") and SmarTalk's eighteen (18) direct and indirect subsidiaries (collectively, the "Debtors"), filed separate voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq.[1]

4.  On January 20, 1999, the Bankruptcy Court signed its Order directing the joint administration of the Debtors' cases under Case No. 99-108 (MFW).  On February 2, 1999, the Official Committee of Unsecured Creditors ("Committee") was constituted.

5.  On June 7, 2001, the Court entered its Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Consolidated Liquidating Chapter 11 Plan for SmarTalk TeleServices, Inc., and Affiliates, Proposed by the Debtors and by the Official Committee of Unsecured Creditors (the "Confirmation Order").  Pursuant to the Confirmation Order, the Court confirmed the Plan as modified therein and, among other things: (i) approved the creation and transfer of the Remaining Assets to the Liquidating Trust; (ii) appointed Goldin Associates, L.L.C. and Harrison J. Goldin as the Liquidating Trustee; (iii) named the members of the Board

---

[1] The subsidiaries are SmarTalk USPS Sales Co., a Delaware corporation; GTI TeleCom, Inc., a Florida corporation; USA Telecommunications Services, Inc., a North Carolina Corporation; SmarTel Communications, Inc., a Delaware corporation; SMTK NY-1 Corp., a New York corporation; Creative Network Marketing, Inc., a Delaware corporation; SmarTalk (Delaware) Corp., a Delaware corporation; SMTK Acquisition Corp., a Florida corporation; Conquest Telecommunication Services Corp., a Delaware corp.; SMTK Acquisition Corp. III, a Delaware corporation; SmarTalk Acquisition Corp., a Nevada corporation; Conquest Communications Corp., an Ohio corporation; Conquest Long Distance Corp., an Ohio corporation; Conquest Operator Services Corp., an Ohio corporation; SmarTel, Inc., a Massachusetts corporation; SmarTel International, Inc., a New York corporation; SmarTel Communications of Virginia, Inc., a Virginia corporation; and Conquest Operator Services, LP, a Delaware corporation.

of the Liquidating Trust; and (iv) authorized the Liquidating Trustee to implement the provisions of the Liquidating Trust Agreement as set forth in the Plan upon the Effective Date.[2]

6.  All of the conditions precedent to the Effective Date of the Plan have occurred and the Effective Date of the Plan was established as June 30, 2001. On July 3, 2001, the Liquidating Trustee served a Notice of Effective Date in accordance with the provisions of the Plan.

**Relief Requested and Basis for Relief**

7.  Pursuant to the Confirmation Order, final fee applications were to be filed no later than August 14, 2001. The Liquidating Trustee estimates that approximately up to twenty-two (22) final fee applications were filed representing fees in excess of $20 million. The Liquidating Trustee was particularly struck by the enormity of the fees, particularly in light of the sale of substantially all of the assets of the Debtor for a sale price of approximately $110 million. The professional fees in the case, therefore, represent approximately 18% of the recovery from the asset sale.

8.  The Liquidating Trustee and its counsel reviewed and analyzed all of the final fee applications. The Liquidating Trustee retained a fee auditor ("Fee Auditor") to review and prepare reports of 13 selected fee applications. These reports assisted the Liquidating Trustee and its counsel in reviewing the fee applications, and as set forth more fully below, recommending reductions to the final fee applications.

9.  As the Fee Auditor completed the reports and they were reviewed by the Liquidating Trustee and its counsel, the reports were provided to the various professional firms,

---

[2] As provided in the Order Granting Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Order Effecting Non-Material Modification and Clarification to Confirm Chapter 11 Plan, Docket No. 2355, dated July 12, 2001 the ("Modification Order"), Goldin Associates, L.L.C. is now the sole Liquidating Trustee.

together with a request that the firms make a voluntary fee reduction.  In almost all of the cases, the Liquidating Trustee and the professional firms negotiated mutually-agreeable fee reductions.

10. Among the applications analyzed by the Fee Auditor were those filed by Henigan Bennett & Dorman and Howrey Simon Arnold & White.  A copy of the draft Fee Auditor's report for Hennigan Bennett & Dorman is annexed hereto as Exhibit A and the Fee Auditor's report for Howrey Simon Arnold & White is annexed hereto as Exhibit B.  The Liquidating Trustee incorporates the Fee Auditor's analysis contained in Exhibit A and B as the basis for the objection for those firms' fees and expenses.

11. The party requesting compensation bears the burden of proving the reasonableness of the fees sought.  Zolfo, Cooper & Co. v. Sunbeam Oster Company, Inc., 50 F.3d 253, 260 (3d Cir. 1995); In re Engel, 124 F.3d 567, 576 (3d Cir. 1998).  "Because time is precious, the reviewing court need only correct reasonably discernable abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled."  In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 845 (3d Cir. 1994).  "It is not necessary that a court setting reasonable fees focus on each and every time entry if the pattern of excessive hours and staffing appears knowledgeable to the court from its own experience . . ."  In re Rancourt, 207 B.R. 338, 362 (Bankr. D.N.H. 1997) (citations omitted).  As recognized by the Third Circuit:

> The Court should review a fee application to ensure the applicant exercises the same "billing judgment" as do non-bankruptcy attorneys by, for example, writing off unproductive research time, duplicative services, redundant costs precipitated by overstaffing, or other expenses with regard to which the professional generally assumes the cost as overhead in corresponding non-bankruptcy matters, or for which non-bankruptcy clients typically decline to pay.

Busy Beaver Building Centers, 19 F.3d at 856 (citations omitted).

12. "The Court may determine what is the reasonable amount of time a professional should have to spend on a given project . . . Professionals will not be rewarded for inefficiency, nor fully compensated for spending an unreasonable amount of time on activities of little benefit to the estate." In re Spanjer Brothers, Inc., 203 B.R. 85, 90 (Bankr. N.D.Ill. 1996) (citations omitted).

13. Even if a fee is reasonable, the Court may not allow compensation for duplicative services or for services that were unnecessary nor reasonably likely to benefit the Debtor's estate. 11 U.S.C. § 330(a)(4). When more than one professional is working on the case in the same capacity as another, then the likelihood of duplication of effort increases. In re Seneca Oil Co., 655 B.R. 902, 909 (Bankr. W.D. Okla. 1986). A bankruptcy estate may not be burdened with unnecessary duplication of services. See In re Bennett Funding Group, Inc., 213 B.R. 234, 245 (Bankr. N.D.N.Y. 1997).

14. Time entries with regard to conferences must be greatly detailed, as it is impossible for the Court to evaluate whether the meetings are for the purpose of informing other professionals as to the status or whether each professional made a substantive contribution. In re Poseidon Pools of America, Inc., 180 B.R. 718, 730-31 (Bankr. E.D.N.Y. 1995); In re General Oil Distributors, Inc., 51 B.R. 794, 801 (Bankr. E.D.N.Y. 1985). In particular, entries pertaining to meetings, conferences, correspondence and telephone calls should identify the participants and describe the general substance or subject matter of these services. See e.g., In re Citrone Dev. Corp., 106 B.R. 359, 362 (Bankr. S.D.N.Y. 1989).

15. Benefit to the estate is an essential component of any compensation award. The Court must consider whether the services were beneficial at the time the services were rendered, and may not allow compensation for services that were not reasonably likely to benefit the estate.

DEL1: 38089-1

16.     Additionally, work performed by senior professionals which could have been assigned to more junior level staff with a lower billing rate should be compensated at that lower rate." See e.g., Busy Beaver Building Centers, Inc., 19 F.3d at 848-55.  As this Circuit has held, "the reasonable hourly rate has a cap based on the expected and actual complexity of the case . . ."  Id. at 856, fn. 35 (cited with approval Zolfo, 50 F.3d at 259).

**The Fee Application of Hennigan Bennett & Mercer**

17.     Hennigan Bennett and Mercer ("Hennigan") acted as counsel for the Debtors.  Hennigan has filed a fee application requesting the allowance of fees in the total sum of $5,957,951.40 and expenses in the total sum of $1,057,086.77.  Hennigan further requests approval for payment in the amount of $294,578.00 in fees and $89,106.83 in expenses incurred during the period from December 1, 2000 through June 30, 2001.  As a result of five prior interim fee applications and monthly payments pursuant to an Administrative Order, to date Hennigan has been awarded and received payment of the sum of $6,934,252.37.

18.     The Fee Auditor's report for Hennigan points out many objectionable areas and suggests that further documentation and information may be necessary.  The Liquidating Trustee hereby incorporates the Fee Auditor's report into this objection.

19.     Simultaneously with this objection, the Liquidating Trustee is serving discovery upon Hennigan, and will be prepared to supplement the record after discovery is completed.

**The Fee Application of Howrey Simon Arnold & White**

20.     Howrey Simon Arnold & White ("Howrey") acted as special counsel for the Official Committee of Unsecured Creditors.  Howrey has filed a fee application requesting the allowance of fees in the total sum of $653,830.70 and expenses in the total sum of $29,911.49.  Howrey further requests that payment thereon be made of the remaining unpaid amount of

$119,160.19 in fees and expenses. As a result of four prior interim payments, Howrey has received funds totaling $564,582.00.

21.  The Fee Auditor's report for Howrey points out numerous objectionable areas and suggests that further documentation and information is necessary. The Liquidating Trustee hereby incorporates the Fee Auditor's report into this objection.

WHEREFORE, the Liquidating Trustee respectfully requests the Court to reduce the final fee applications of Hennigan and Howrey for the Pre-Effective Date Period, and grant such other and further relief as is just and proper.

> GIBBONS, DEL DEO, DOLAN,
> GRIFFINGER :& VECCHIONE
> Elizabeth S. Kardos, Esq.
> One Riverfront Plaza
> Newark, New Jersey  07102
> Telephone: (973) 596-4500
> Facsimile: (973) 639-6247
> Counsel for Goldin Associates, L.L.C.,
> Liquidating Trustee of the
> Worldwide Direct Liquidation Trust
>
> KLEHR, HARRISON, HARVEY,
> BRANZBURG & ELLERS, LLP
>
>      /s/ Steven K. Kortanek
> Steven K. Kortanek (#3106)
> 919 Market Street, Suite 1000
> Wilmington, DE 19801
> (302) 426-1189 Telephone
> (302) 426-9193 Facsimile
> skortanek@klehr.com
> Local Counsel for Goldin Associates, L.L.C.,
> Liquidating Trustee of the
> Worldwide Direct Liquidation Trust

Dated:  December 3, 2001

DEL1: 38089-1