IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| WORLDWIDE DIRECT, INC., *et al.,* | § | Case No. 99-00108-MFW through |
| | § | Case No. 99-00127-MFW |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | **Related Docket Nos. 2431, 2441, 2442, 2516 & 2549** |

## SUPPLEMENTAL OBJECTION TO THE FINAL FEE APPLICATION OF HENNIGAN BENNETT & DORMAN FOR THE PRE-EFFECTIVE DATE PERIOD

Goldin Associates, L.L.C., in its capacity as Liquidating Trustee (the "Liquidating Trustee") for the Worldwide Direct Liquidation Trust (the "Liquidating Trust") created in accordance with the Second Amended Consolidated Liquidating Chapter 11 Plan For SmarTalk TeleServices, Inc., And Affiliates, Proposed By The Debtors And By The Official Committee Of Unsecured Creditors (as subsequently confirmed and modified, the "Plan"), hereby submits its Supplemental Objection to the Final Fee Application of Hennigan Bennett & Dorman for the Pre-Effective Date Period.  In support of the relief requested, the Liquidating Trustee would respectfully show as follows:

### Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157.

2. The statutory predicates for the relief requested herein are sections 105, 327, 330, 331 and 504 of the Bankruptcy Code.

**Background**

3.      On January 19, 1999 (the "Petition Date"), Worldwide Direct, Inc., SmarTalk TeleServices, Inc. ("SmarTalk") and SmarTalk's eighteen (18) direct and indirect subsidiaries (collectively, the "Debtors"), filed separate voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq.[1]

4.      On January 20, 1999, the Bankruptcy Court signed its Order directing the joint administration of the Debtors' cases under Case No. 99-108 (MFW).  On February 2, 1999, the Official Committee of Unsecured Creditors ("Committee") was constituted.

5.      On June 7, 2001, the Court entered its Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Consolidated Liquidating Chapter 11 Plan for SmarTalk TeleServices, Inc., and Affiliates, Proposed by the Debtors and by the Official Committee of Unsecured Creditors (the "Confirmation Order").  Pursuant to the Confirmation Order, the Court confirmed the Plan as modified therein and, among other things: (i) approved the creation and transfer of the Remaining Assets to the Liquidating Trust; (ii) appointed Goldin Associates, L.L.C. and Harrison J. Goldin as the Liquidating Trustee; (iii) named the members of the Board of the Liquidating Trust; and (iv) authorized the Liquidating Trustee to implement the provisions of the Liquidating Trust Agreement as set forth in the Plan upon the Effective Date.

---

[1] The subsidiaries are SmarTalk USPS Sales Co., a Delaware corporation; GTI TeleCom, Inc., a Florida corporation; USA Telecommunications Services, Inc., a North Carolina Corporation; SmarTel Communications, Inc., a Delaware corporation; SMTK NY-1 Corp., a New York corporation; Creative Network Marketing, Inc., a Delaware corporation; SmarTalk (Delaware) Corp., a Delaware corporation; SMTK Acquisition Corp., a Florida corporation; Conquest Telecommunication Services Corp., a Delaware corp.; SMTK Acquisition Corp. III, a Delaware corporation; SmarTalk Acquisition Corp., a Nevada corporation; Conquest Communications Corp., an Ohio corporation; Conquest Long Distance Corp., an Ohio corporation; Conquest Operator Services Corp., an Ohio corporation; SmarTel, Inc., a Massachusetts corporation; SmarTel International, Inc., a New York corporation; SmarTel Communications of Virginia, Inc., a Virginia corporation; and Conquest Operator Services, LP, a Delaware corporation.

6.  All of the conditions precedent to the Effective Date of the Plan have occurred and the Effective Date of the Plan was established as June 30, 2001. On July 3, 2001, the Liquidating Trustee served a Notice of Effective Date in accordance with the provisions of the Plan.

7.  On December 3, 2001, the Liquidating Trustee filed an Objection to the Final Fee Applications of Hennigan, Bennett & Dorman ("HBD") for Compensation and Reimbursement of Expenses for the Pre-Effective Date Period (the "Objection").

8.  In support of the Objection, the Liquidating Trustee served a Notice of Deposition on HBD, requesting several categories of documents from HBD and requesting the testimony of James O. Johnston, Esq. Thereafter, HBD served upon the Liquidating Trustee and the Fee Auditor (as that term is defined in the Objection) various discovery requests. Since that time, both parties have reviewed responsive documents and have taken depositions of various individuals. The time by which the parties are required to complete discovery regarding the Objection was February 28, 2002. Pursuant to a Stipulation with HBD, the Liquidating Trustee was permitted to file this Supplemental Objection by March 1, 2002.

## Relief Requested and Basis for Relief

9.  In addition to the reasons set forth in the Objection, HBD's fees and expenses should be reduced for the following reasons.

## Fees charged for Services Rendered By Temporary Timekeepers Are Not Allowable

10. Beginning in the Second Interim Period (May 1 through August 31, 1999), HBD started extensive use of attorneys and paralegals, who were not partners, members, regular associates, or employees of the firm (the "Temporary Timekeepers"). Deposition of James Johnston at 71:17 - 72:2; 77:6-9 ("Johnston Dep."). A copy of relevant portions of the transcript

of the Johnston Dep. is annexed to the Certification of Brendan P. Langendorfer, Esq. In Support of Supplemental Objection to the Final Fee Application of Hennigan Bennett & Dorman for the Pre-Effective Date Period (the "Langendorfer Cert") filed simultaneously herewith as Exhibit A. Services of the Temporary Timekeepers were provided to the firm by a number of employment or staffing agencies. (Johnston Dep. at 72:22-24). The bulk of the services rendered by the Temporary Timekeepers were in the Document Analysis, Review and Management Category (Category Number 500), a service category in which HB seeks allowance of a total of $1,588,365 in fees incurred in roughly an 18 month period. Of that total, in excess of $901,000 is attributed to the services provided by Temporary Timekeepers.

11.     In addition, HBD used Temporary Timekeepers for other tasks. Approximately $31,000 in fees for services rendered by the Temporary Timekeepers in categories other than Document Analysis, Review and Management was charged to the Debtors. HBD received interim compensation based in part upon the services rendered by the Temporary Timekeepers. HBD would pay invoices rendered by the staffing agencies who provided the Temporary Timekeepers, and did not pay the Temporary Timekeepers directly. (Johnston Dep. at 74:15-20; 77:1-3).

12.     HBD's Retention Application, a copy of which is annexed as Exhibit B to the Langendorfer Cert., does not disclose that the firm intended to utilize the services of Temporary Timekeepers in its representation of the Debtors. The Court did not approve HBD's use of Temporary Timekeepers to provide legal or paralegal services to these Debtors. (Johnston Dep. 71:5-7). The Debtors never applied for authorization to employ any of the Temporary Timekeepers in accordance with section 327 of the Bankruptcy Code or Rule 2014 of the Federal

Rules of Bankruptcy Procedure. Nor did the Court ever enter an Order authorizing the Debtors to employ any of the Temporary Timekeepers as professional persons in this case.

13. The HBD partner in charge of the case was unaware how the description of services purportedly provided by the Temporary Timekeepers was derived by the firm in the preparation of its fee application. (Johnston Dep. at 92:22 - 93:3). The description of services rendered by the Temporary Timekeepers is extraordinarily repetitive.

14. HBD applied significant markups to the rates HBD paid for the Temporary Timekeepers' services before passing those costs on to the Debtors. The regular hourly rates which HBD paid the staffing agencies for temporary attorneys ranged from approximately $42.25 to $45.00,[2] and from $17.90 to $35.00 for temporary paralegals. HBD seeks allowance and payment for the services of the Temporary Timekeepers at the rates of $71.00 to $75.00 for temporary attorneys and $60.00 to $65.00 for paralegals. The Temporary Timekeepers did not receive any benefits from the firm of the type provided to employees generally, such as health insurance and retirement benefits. (Johnston Dep. at 77:21-78:1). Although, the Temporary Timekeepers might have received an occasional meal and payment of parking expenses, Mr. Johnston was not certain. (Johnston Dep. at 75:11-17; 76:3-25).

15. The Temporary Timekeepers performed their work in an existing conference room in the firm's Los Angeles offices. (Johnston Dep. at 75:19-23; 79:18-23). Accordingly, overhead costs attributable to the HBD's use of the Temporary Timekeepers appear to have been de minimus.

16. Section 330 of the Bankruptcy Code allows the Court to award to "a professional person employed under section 327" reasonable compensation for the services rendered by such

---

[2] James Habel, a temporary attorney used by HBD was employed at a rate of $60.00 per hour. Because Mr. Habel's payment arrangement was unique, his rate was not included in this range.

professional person "and by any paraprofessional person employed by any such person" who qualifies for compensation under section 330 of the Bankruptcy Code. <u>The Court authorized the retention of HBD only</u>. The temporary attorneys used by HBD were not employed under section 327 of the Bankruptcy Code, nor were those temporary attorneys eligible to render services in this case without further order of the Court under Bankruptcy Rule 2014(b), since they were not partners, members, or regular associates of HBD. The temporary paralegals used by HBD were not employed by HBD, the professional person retained in accordance with section 327 of the Bankruptcy Code and eligible for compensation under section 330 of the Bankruptcy Code, as required by section 330(a)(1)(A) of the Bankruptcy Code. Because the Temporary Timekeepers are professionals or paraprofessionals who are not partners, members, associates or employees of HBD, they were required to have been separately retained under section 327 of the Bankruptcy Code as a condition of allowance of their fees. In <u>Quesada v. United States Trustee</u>, 222 B.R. 193 (D.P.R. 1998), the District Court was confronted with nearly identical circumstances. In that case, the chapter 7 trustee filed an application requesting compensation for legal serves performed by attorneys who were not associated with or employed by his firm. There, because the chapter 7 trustee did not seek advance approval of the retention of the temporary attorneys at issue, the Court denied the chapter 7 trustee all compensation associated with the employment of the temporary attorneys. The Court based its holding on the universal principle that a professional hired by a debtor in possession without the court's approval may not be compensated. <u>Quesada</u> at 198. <u>See</u> <u>also</u> <u>In re Arkansas Co., Inc.</u>, 798 F. 2d 645, 649 (3d Cir. 1986) (Bankruptcy Code and Bankruptcy Rules require both prior approval of employment and after the fact approval of compensation); and <u>In re United Companies Financial Corp.</u> 241, B.R. 521, 528 (Bankr. D.Del. 1999).

17.     Payment by HBD for the services of the Temporary Timekeepers also violates section 504(a) of the Bankruptcy Code, which provides an independent basis to disallow the fees requested.  Section 504 of the Bankruptcy Code prohibits professional fee sharing with "another person," except that "a member, partner or regular associate" in a law firm may share bankruptcy fees with members, partners or regular associates of that firm.  Clearly, sharing the interim fees received, either with the Temporary Timekeepers or the agencies which provided them, is on its face violative of section 504(a) of the Bankruptcy Code, which prohibits fee sharing with any "person", see Bankruptcy Code Section 101(41).  For example, in In re Codesco, Inc., 15 B.R. 351 (Bankr.S.D.N.Y. 1981), the debtor's appraiser retained, without Court approval, an outside consultant who was to be paid from the fees that the appraiser was to receive from the debtor; such arrangement was held to violate section 504 of the Bankruptcy Code.   Fee sharing among attorneys is prohibited and the proper remedy is to require disgorgement.  In re Consolidated Bancshares, Inc., 785 F. 2d 1249, 1256-1257 (5th Cir. 1986).  In In re Arthur and Joan Larsen, 190 B.R. 713 (Bankr. D.Me. 1996), an attorney sought compensation for pre-conversion services rendered to the debtors during the pendency of their chapter 11 cases.  In Larsen, the attorney requested reimbursement of expenses in connection with services rendered by an attorney not associated with the fee applicant's firm.  Although the attorney was seeking reimbursement of an expense and not payment of fees, the Court nevertheless denied reimbursement on the grounds that the expense was an impermissible sharing.  Id. at 718.

18.     The record keeping with respect to the Temporary Timekeepers' services does not allow the court to determine whether those services rendered were actual, i.e., in fact performed, as required by Local Rule 2016-2(d).  Nor can the Court ascertain the reasonableness or necessity of the Temporary Timekeepers' services in light of the apparent absence of a

contemporaneous description of those services by the service provider.  See e.g., In re Zenith Laboratories, Inc., 119 B.R. 51, 53-55 (Bankr. D.N.J. 1990) ( . . . any professional fees sought to be paid from a debtor's estate should be based upon meticulous contemporaneous time records . . . which should reveal sufficient data to enable the Court to make an informed judgment about the specific tasks and hours allotted." (citations omitted); American Law Center P.C. v. Linda Ekstrom Stanley (In re Jastrem), 253 F.3d. 438, 443 (9th Cir. 2001) (The Court of Appeals upheld the Bankruptcy Court's decision to reduce the fees for debtor's counsel based, in part, on his failure to provide contemporaneous time records supporting his claim for fees) and Mayalt v. Parker & Parsley Petroleum Co., 963 F.Supp. 310, 312-13 (S.D.N.Y. 1997) (In deciding to award fees to counsel to plaintiff class in settled securities class action, the Court recognized that "where adequate contemporaneous records have not been kept, the court should not award the full amount requested." (citations omitted).  In sum, it is respectfully submitted that based upon the unambiguous statutory language, as well as the cases cited above, that the Court may not allow compensation for reimbursement for services rendered by, or reimbursement of expenses paid to the Temporary Timekeepers, which requires a reduction in the HBD fee application of $932,000.

**Excessive time was charged to the Document Analysis, Review and Management Category**

19.     In its Third Interim Fee Application for the  period September 1 through December 31, 1999, HBD represented that the Document project was essentially complete, after having spent 14,203 hours and seeking to charge the estates $1,312,508.15 through the end of the Third Interim Period for the project.  In and of itself this amount is shockingly high and should be scrutinized.  In addition to, and notwithstanding that representation, HBD charged an additional $155,000 in fees to that project in the Fourth Interim Period (January 1 through April

30, 2000). Given that HBD filed its *Third Interim Verified Application of Hennigan, Mercer & Bennett for Interim Allowance of Compensation and for Reimbursement of Expenses* ("Third Interim Application") on February 15, 2000, one and a half months into the Fourth Interim Period, it is difficult to square the aforementioned representation made in the Third Interim Application with the need for an additional $155,000 in fees to complete an already essentially completed document review.

**HBD is not entitled to reimbursement for the fees charged by financial consultants employed by the firm, whose retention was not authorized by the Court.**

20. HBD charged a total of 531.7 hours of time, with a value in excess of $73,000 for professional persons employed by the firm, who HBD describes as "financial consultants." Those financial consultants, who are not attorneys, are not members of or regular associates of HBD. (Johnston Dep. at 66:20 – 68:22). Use of, and billing for those persons, who are neither lawyers nor paralegals, was neither disclosed in the Retention Application nor approved by the Court. No application was made to employ those financial consultants as professional persons, and no Order was ever entered by this Court authorizing the retention of those financial consultants as professional persons. As such, those financial consultants were not authorized to provide professional services to the Debtors, and the Debtors were not allowed to make payment for the services rendered by those financial consultants. Accordingly, all fees attributed to services rendered by financial consultants must be denied. In re United Companies Financial Corporation, 241 B.R. 521, 528 (Bankr. D.Del. 1999).

**Excessive, Non-Beneficial, Duplicative, Unreasonable and Unnecessary Fees Were Incurred in the Asset Analysis Category of Services.**

21. Much of the so-called Asset Analysis category of services was not necessary, was excessive, unreasonable, duplicative, and was not likely to confer a benefit when performed.

Approximately $675,0000 was spent by HBD in legal and factual analysis as to the estates' causes of action against 3 or 4 third parties: Donaldson, Lufkin & Jenrette and its affiliated entities ("DLJ"), CS First Boston ("CSFB"), the debtors former accountants PriceWaterhouse Coopers ("PWC") and the Debtors' directors and officers. The firm took no depositions and did no other discovery with respect to the potential claims against those third parties, and no actions against such parties were filed by HBD. (Johnston Dep. at 122:20 – 123:8). The firm was well aware "early on" in the case, and certainly by late 1999, that the Committee intended to control the prosecution of the estates' causes of action. (Johnston Dep. at 105:15 – 106:12; 123:13-18). In fact, on August 6, 1999, the Debtors and the Committee stipulated that the Committee would control the investigation and prosecution of claims against the Debtors' directors and officers (defined as the "Delegated Claims"). On February 22, 2000, the Committee filed an uncontested Motion for entry of an Order transferring to the Committee authority to pursue all of the claims which had not previously been delegated to it. See Exhibit C annexed to the Langendorfer Cert. Despite its awareness of the Committee's intentions with respect to the causes of action, the firm plowed forward with hundreds of thousands of dollars in fees in researching the validity of such claims. All of HBD's work in this area was for naught, as no use was put to any of HBD's work product resulting from the $675,000 in fees which the firm spent in this category. (Johnston Dep. at 124:22-25). The Committee refused to accept the work product performed by HBD when it was tendered by the firm. (Johnston Dep. at 123:13 - 124:3). Thus, the estates have been saddled with the duplication of effort and expense resulting from the same causes of action having been researched and analyzed by two different firms.

**HBD's plan services were largely unnecessary and wasteful.**

22.     In 1999, shortly after the asset sale was concluded the Committee provided the Debtor with a draft of a liquidating plan.  (Johnston Dep. at 125:2-6).  HBD recognized that in these liquidating cases, the wishes of the Committee would be controlling in terms of a plan's contents.  (Johnston Dep. at 127:7-10).  Ultimately, the proceeds of the liquidation belonged to the creditors, who had the right to control the form of their distribution.  Notwithstanding their recognition that the creditors had the right to control the form of the plan, HBD spent substantial sums negotiating with the Committee over the plan's form and redrafting same.  Those services should not be allowed, as they were neither beneficial nor necessary.  HBD spent a total sum in excess of $300,000 on plan related work, and a substantial reduction in the amount of the compensable time spent by the firm in challenging the Committee's view of what a plan should contain is warranted.

**The So-Called "Voluntary Reductions" of Fees Are Not Meaningful as They Represent Time Which Was Not Compensable**

23.     HBD will no doubt argue that it has already taken its medicine by voluntarily reducing its charges by a total of $763,225.23 before submitting its fee application.  The firm was not being magnanimous in doing so, however, as the motivation for those reductions was recognition that the services which were the subject of the voluntary reductions would not be compensable in any event.  See Johnson Dep. at 148:5-13.  The records of time written off are annexed to the Langendorfer Cert. as Exhibit D.  Even a cursory review of the records provided by HBD in discovery identifying the charges written off demonstrate the non-compensability of virtually all of those services.  Some examples of the more egregious entries that were written off include the following:  (1) "Locate and retrieve book and law review articles for Ms. Smith"; (2) "Telephone Conference with Mr. Okada regarding document inventory"; (3) "Pull pleading

clips, tab and deliver to OS for copies, and deliver copies to Mr. Most"; (4) "Leave Message with Mr. Johnston regarding status"; and (5) "Address calendaring issues." See Exhibits E through I attached to the Langendorfer Cert. The voluntary reductions generally consist of time entries representing secretarial, clerical, or non-legal work which the timekeeper inexplicably, and clearly inappropriately, billed to this file, which were properly eliminated on review by a responsible person. The so-called voluntary reductions should not color this court's view as to the amount of an appropriate reduction to the firm's fee application.

WHEREFOR, the Court must reduce the final fee application of HBD for the Pre-Effective Date Period, disallow compensation in accordance with the Liquidating Trustee's objections, and grant such other and further relief as is just and proper.

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP


    /s/ Steven K. Kortanek
Steven K. Kortanek, Esq.
Stephanie A. Fox, Esq.
919 Market Street, Suite 1000
Wilmington, Delaware  19801
Phone: (302) 426-1189
Fax:    (302) 426-9193

-and-

Elizabeth S. Kardos, Esq.
Gibbons, Del Deo, Dolan,
Griffinger & Vecchione
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey  07102
Telephone: (973) 596-4500
Facsimile: (973) 639-6247

Dated:  March 1, 2002

#580530 v1
102882-41010

DEL1: 40244-1