UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| WORLDWIDE DIRECT, INC., et al., | ) | Case Nos. 99-108 to -127 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### DECLARATION OF JAMES O. JOHNSTON IN SUPPORT OF
### HENNIGAN, BENNETT & DORMAN'S FINAL FEE APPLICATION

I, James O. Johnston, hereby declare that:

1. I am a partner at Hennigan, Bennett & Dorman ("HBD"), former counsel for the Debtors in the above captioned cases. I am an attorney at law admitted to practice before all courts of the State of California and was admitted pro hac vice on behalf of the Debtors in the case entitled In Re Worldwide Direct, Inc., et al., Case Nos. 99-00108 (MFW) through 99-00127 (MFW) in the United States Bankruptcy Court for the District of Delaware. I submit this declaration in support of "Reply of Hennigan, Bennett & Dorman to the Liquidating Trust's Objection to the Final Fee Application." I have personal knowledge of the following facts and, if called and sworn as a witness, I could and would competently testify thereto.

2. I was the attorney at HBD with primary responsibility for matters relating to the administration and liquidation of the Debtors' estate, including matters regarding drafting and confirmation of the Plan and related documents.

3. In mid-1999, the Official Committee of Unsecured Creditors (the "Committee") requested that HBD prepare a disclosure statement for a possible plan to be filed in the bankruptcy cases. I devoted substantial effort to preparing and distributing a draft to meet the timetable established by the Committee. The Committee then circulated a draft liquidating plan which appeared to me to be a form plan from a different case, with certain terms changed. I reviewed and

commented upon that plan and identified numerous material problems that needed to be addressed and resolved.

4. I assisted the Committee in researching and considering numerous issues implicated by the Committee's draft plan, and I participated in lengthy meetings with Committee professionals in which issues regarding the plan were discussed and negotiated. Among other things, I feared that a liquidating trust would be needlessly complex and controversial. As a result, I proposed several plan structures that differed from the "liquidating trust" structure favored by the Committee.

5. Since the Committee ultimately insisted upon the use of a liquidating trust, I commented upon and extensively revised the draft plan and liquidating trust agreement prepared by the Committee, and I revised and reworked the disclosure statement that I previously had prepared. At the request of the Committee and as counsel to the co-proponent of the Plan, I also commented upon and revised other plan-related documents, including a draft revenue ruling request to the Internal Revenue Service regarding certain anticipated tax consequences of the proposed plan.

6. When the Disclosure Statement and Plan were finalized, I prepared a detailed motion to establish procedures for the solicitation of votes on the Plan following approval of the Disclosure Statement, and I arranged to have the documents filed with the Court. I was shocked when, a few weeks later, a member of the Committee objected to provisions of the Plan that the Committee itself had insisted upon (the provisions regarding fee shifting in litigation in respect of "senior claim" status under the Plan).

7. Thereafter, I researched a number of issues implicated by other objections raised to the Disclosure Statement, negotiated with the objecting parties for resolution of the objections, and based upon those negotiations, I subsequently prepared and filed comprehensive revisions to the Plan, Disclosure Statement, and the Liquidating Trust Agreement. I also prepared a detailed reply brief with respect to the remaining Disclosure Statement objections.

8. After the Court approved the Disclosure Statement on the condition that certain additional changes be made to the Plan documents, I took the lead in preparing a detailed Second Amended Plan, Disclosure Statement, and Liquidating Trust Agreement. I then arranged to have the Disclosure Statement and related materials disseminated to all creditors for the purposes of Plan

balloting. Concurrently, I prepared and obtained approval of a motion to subordinate and classify into a class of subordinated claims under the Plan the hundreds of claims filed by persons who asserted securities-fraud claims against the Debtors. Thereafter, HBD assumed responsibility for receiving and tabulating the hundreds of ballots cast with respect to the Plan.

9. After receiving a number of objections to confirmation based in part upon the controversial liquidating trust structure demanded by the Committee, I drafted a comprehensive reply and brief in support of confirmation, and I subsequently participated in negotiations that resolved all but several of the objections. Subsequently, I prepared for and attended the three days of hearings regarding confirmation of the Plan (which spanned several weeks) and, at the direct request of the Committee, I conducted direct examination of a witness and argued various point at the hearing. Thereafter, I prepared an extensive post-hearing brief, along with a comprehensive proposed order of confirmation and proposed findings of fact and conclusions of law.

10. Throughout the course of the case, I reviewed each of HBD's monthly bills before they were sent to the Debtors, the Committee, and the United States Trustee. In reviewing those bills, I was guided by the overarching principle that, particularly because this was a liquidating case, the touchstone of HBD's services would be economy and the maximization of the estate for distribution to creditors. To that end, I believe that I was extremely generous to the estate in overseeing HBD's billing practices. In total, I effected voluntary write-offs of more than $750,000 in HBD's fees and expenses.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed this 15th day of March, 2002, at Los Angeles, California.

James O. Johnston