UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re )<br>)<br>WORLDWIDE DIRECT, INC., et al., )<br>)<br>Debtors. )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 11<br><br>Case Nos. 99-108 to -127 (MFW)<br><br>Jointly Administered<br><br><br>Hearing Date: January 5, 2005<br>                at 2:00 p.m.<br><br>Objection Deadline: January 3, 2005<br>(extended by agreement) |

**RESPONSE OF HENNIGAN, BENNETT & DORMAN LLP TO MOTION BY LIQUIDATING TRUSTEE TO ENFORCE OCTOBER 29, 2004, ORDER**

Hennigan, Bennett & Dorman LLP ("HBD") hereby responds to the "Motion (I) To Enforce October 29, 2004, Bankruptcy Court Order Requiring Hennigan, Bennett & Dorman To Disgorge Fees And (II) For Sanctions For Civil Contempt Including An Award Of Interest, Costs, And Fees" (the "Motion"), filed by Goldin Associates, L.L.C. as Liquidating Trustee (the "Trustee") of the Worldwide Direct Liquidating Trust (the "Trust").

## I.    BACKGROUND

HBD served as counsel to the Debtors in this case from the petition date of January 19, 1999, through June 30, 2001, the effective date of the Debtors' plan. During that time, HBD played a major role in every development and accomplishment in the case.

On the effective date, the Trust, controlled by a "trust board" initially consisting of members of the former Official Committee of Creditors, became vested with the Debtors' remaining assets, charged with fiduciary duties to the estate, and tasked with concluding the case. After obtaining months of extensions, on December 3, 2001, the Trust objected to HBD's final

fee application and sought to disallow a staggering $2,729,337 of HBD's fees and expenses, amounting to nearly forty percent (40%) of HBD's final fee and expense request.

After a lengthy, two-day hearing on HBD's fee application, the Court took the matter under submission on December 5, 2002. On October 29, 2004, the Court issued its opinion allowing HBD a total of $5,492,359.69 in fees and $1,042,422.46 in expenses, while partially sustaining only $380,250 of the Trust's objections and rejecting every legal ground raised by the Trust. HBD therefore succeeded in preserving over eighty-six percent (86%) of the fees and expenses to which an objection was made and nearly ninety-five percent (95%) of HBD's total requested fees and expenses.

The Trust has correctly calculated that, in light of the Court's decision, HBD has received approximately $399,000 in payments over the allowed amount of its fees and expenses. However, after receiving and reviewing the Court's opinion, HBD determined that, in light of its success and the unusual circumstances of this case (including the Trust's use of an obviously-flawed "fee audit" that this Court ultimately disregarded after finding it to be factually inaccurate and unreliable), it was entitled to an award of at least some of the fees and expenses that it incurred in defending the fees it earned in this case. *See, e.g., Smith v. Edwards & Hale, Ltd. (In re Smith)*, 317 F.3d 918, 928 (9th Cir. 2002) ("Failure to grant fees for successfully defending challenges to an authorized fee application would dilute fee awards, in violation of section 330(a), and this would reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally.").

Thus, upon receiving the Trust's demand for payment, HBD informed the Trust that it intended to apply for an award of fees and expenses incurred in connection with the fee application litigation. As HBD believed that its fees and expenses would approximate the amount by which HBD's payments exceeded the amount of its previously allowed fees and expenses, HBD informed the Trust that it would not immediately remit that excess to the Trust and thereby risk that the funds would be disbursed or otherwise become unrecoverable from the Trust.

As HBD was preparing its supplemental fee application, the Trust filed its Motion, in which it seeks an order (a) compelling HBD to immediately disgorge the excess payments prior to any determination on HBD's fee application and (b) sanctioning HBD by awarding the Trust attorneys' fees, costs, and prejudgment interest.

Concurrently with this Response, HBD has filed its supplemental fee application (the "Supplemental Application"), in which it requests fees in the amount of $186,068.31 and expenses in the amount of $44,700.78, which together represent eighty-six percent (86%) of the total fees and expenses that HBD incurred in fending off the vast majority of the Trust's objection to more than $2.7 million of HBD's final fees and expenses.[1] HBD also has tendered payment to the Trust in the amount of $168,701.13, representing the difference between the $399,470.22 in excess payments and the amount of HBD's requested fees and expenses.

## II.   ARGUMENT

As explained in HBD's accompanying Supplemental Application, the touchstone of the Bankruptcy Code's provisions for the compensation of professionals is "that professionals and paraprofessionals in bankruptcy cases should earn the same income as their non-bankruptcy counterparts." *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 849 (3d Cir. 1993). In light of this policy of comparable compensation, courts have held that professionals are entitled to be compensated for the fees and expenses they incur in successfully defending against objections made to their fee applications. *See, e.g., Smith*, 317 F.3d at 928-29; *Burgess v. Klenske (In re Manoa Finance Co.)*, 853 F.2d 687, 692 (9th Cir. 1988); *Big Rivers Electric Corp.*

---

[1] HBD endeavored to prepare its supplemental fee application as rapidly as possible after receipt of the Court's opinion. This effort, however, was complicated by the fact that HBD changed accounting systems after the final hearing on the Trust's objection to HBD's fee application and was unable to retrieve archived time entries without the assistance of a support technician provided by the accounting system supplier. Also, as HBD was preparing its application with the intent to have it heard on January 5 (the same time as the hearing on the Motion), the undersigned counsel experienced a death in his immediate family which necessitated a slight delay. The Trust refused to continue the hearing on the Motion so that it could be heard concurrently with the hearing on HBD's Supplemental Application.

*v. Schilling (In re Big Rivers Electric Corp.)*, 252 B.R. 670, 675-76 (W.D. Ky. 2000); *Nunley v. Jessee*, 92 B.R. 152, 153-54 (W.D. Va. 1988); *In re Hutter Construction Co.*, 126 B.R. 1005, 1013 (Bankr. E.D. Wis. 1991).

The rationale for this is straightforward: "To deny [the professional] reasonable compensation for successfully defending its fee awards would dilute its compensation for 'actual and necessary services'" and thus run afoul of the Bankruptcy Code's policy of equal compensation. *Smith*, 317 F.3d at 929; *see Big Rivers*, 252 B.R. at 675 ("To deny these fees would unnecessarily dilute the Examiner's compensation and force him to bear the costs of defending a fee which was properly awarded to him by the Bankruptcy Court.").

Here, as explained in the Supplemental Application, HBD was faced with an objection to more than $2.7 million of its requested fees and expenses. That objection was not based on any review of HBD's work product or services rendered in the case. Rather, the objection was premised solely on a trumped-up, preliminary "audit" report that this Court later determined to be inaccurate and unreliable. Even the Trust ultimately abandoned all but four of the twenty-four categories of objections set forth in that report, but only on the eve of trial and only after forcing HBD to incur substantial fees and costs in establishing the myriad of errors made by the auditor.

Under these circumstances, to deny HBD its reasonable fees and expenses incurred in defending against that objection this case would dilute the fee that HBD earned for its services in this case and would open the floodgates to similar meritless objections in the future. *Smith*, 317 F.3d at 929 ("denying . . . fees for defending against Smith's objections, which the bankruptcy court found were 'frivolous,' would serve to encourage debtors to file meritless objections to fee applications").[2]

---

[2] In its Motion, the Trust asserts that HBD is not entitled to any award of fees because the Trust "offered to resolve its objections to Hennigan's fees before litigation for roughly the amount of the Excess Fees." Mtn. at 3. This apparently refers to the Trust's October 1, 2001 memo, sent on a "blast fax" to all professionals in this case, demanding that every professional agree to a flat seven percent (7%) reduction in their requested fees or face a fee audit, which would subject the professional "to the cost and inconvenience of having to address issues raised by a fee audit," and could result in an objection "greater than what is currently proposed." *See* HBD Trial Ex. 18. At that time, however, the Trust conceded that

HBD, of course, does not question this Court's authority to order the disgorgement of fees, including the payments in excess of the fees and expenses that HBD has been allowed to date. HBD submits, however, that it is logical and appropriate for the Court to hear and determine the Supplemental Application before ordering such disgorgement. The alternative would be for HBD to make a payment to the Trust and then, upon an award of the requested supplemental fees, receive funds back a few weeks or months later. If, however, the Court determines that the latter course of action is more appropriate, HBD immediately will remit the entire amount of the excess payment to the Trust prior to a hearing on the Supplement Application.[3]

Finally, the Trust's request for prejudgment interest is entirely inappropriate. Until the Court's order two months ago, HBD had been awarded every dollar of fees and expenses that it had applied for in this case. There was no basis, ground, or reason for HBD to disgorge anything to the Trust prior to that time, and the Trust never made any demand for payment from HBD. Moreover, HBD has acted expeditiously throughout this entire litigation, and the length of the proceedings is not the result of any of HBD's actions.

### III.  CONCLUSION

HBD is entitled to seek an award of fees and expenses it incurred in protecting over eighty-six percent (86%) of the fees and expenses that were subject to objection by the Trust.

---

it had not made "a thorough and detailed examination" of the various fee applications, *id.*, and not a single ground for objection to even a dollar of HBD's fees had been identified, so HBD declined to agree to reduce its fees in the absence of any demonstrated reason (other than the threat of a fee auditor) for doing so. In any event, the reduction ultimately ordered by the Court is substantially lower than the "offer" tendered by the Trust before the litigation commenced.

[3]  The Trust implies that HBD's Supplemental Application is untimely because "more than two years passed since such fees were incurred and the last hearing on [HBD]'s fee application was held." Mtn. at 3. HBD, however, could not have made a request for additional fees and expenses until the Court ruled on the Trust's objections, which occurred just two months ago. If the Court had sustained all or even most of those objections, HBD would not have been entitled to a supplemental award of fees. *See Smith*, 317 F.3d at 922 (supplemental award made after fee objections were determined); *Nunley*, 92 B.R. at 153 (same).

HBD has made a request for such an award in its Supplemental Application. Until that Supplemental Application is heard and determined, HBD should not be obligated to pay over to the Trust funds that the Trust would have to return to HBD upon allowance by the Court. HBD therefore respectfully requests that the Court deny the Motion.

Dated: December 30, 2004                HENNIGAN, BENNETT & DORMAN LLP

_____
Bruce Bennett
James O. Johnston
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
Telephone: (213) 694-1200
Telecopy: (213) 694-1234

457384.v2                                          -6-