## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| WORLDWIDE DIRECT, INC., <u>et al</u>., | ) |
| | ) Case Nos. 99-108 to -127 (MFW) |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |
| | ) **Hearing Date: February 8, 2005** |
| | ) **at 11:30 a.m.** |
| | ) |
| | ) **Objection Deadline: February 1, 2005** |
| | ) |

## APPLICATION OF HENNIGAN, BENNETT & DORMAN LLP FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES INCURRED IN DEFENSE OF OBJECTION TO THE FIRM'S FINAL FEE APPLICATION

<u>Name of Applicant</u>:          Hennigan, Bennett & Dorman LLP ("<u>HBD</u>")

Authorized to Provide
<u>Professional Services to</u>:          Debtors and Debtors in Possession

<u>Date of Retention</u>:          Order entered January 21, 1999

Period for Which Compensation
<u>and Reimbursement is Sought</u>:          November 27, 2001, through May 31, 2003

<u>Amount of Compensation Requested</u>:          <u>$186,068.31</u> (representing 86% of the actual fees incurred)

Amount of Expense
<u>Reimbursement Requested</u>:          <u>$44,700.78</u> (representing 86% of the actual expenses incurred)

This is a final application.

HBD does not request any compensation for the preparation of this Application.

457166.v2

**Prior Applications**

| Date Filed | Period | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| 6/15/99 (interim) | 1/19/99 – 4/30/99 | $741,457.00 | $91,538.05 | $741,457.00 | $91,538.05 |
| 10/15/99 (interim) | 5/1/99 – 8/31/99 | $1,477,634.45 | $280,216.93 | $1,477,634.45 | $280,216.93 |
| 2/15/00 (interim) | 9/1/99 – 12/31/99 | $1,867,829.45 | $250,322.97 | $1,867,829.45 | $250,322.97 |
| 6/15/00 (interim) | 1/1/00 – 4/30/00 | $871,715.50 | $195,261.65 | $871,715.50 | $195,261.65 |
| 1/15/01 (interim) | 5/1/00 – 11/30/00 | $704,737.00 | $132,304.94 | $704,737.00 | $132,304.94 |
| 8/14/01 (final) | 1/19/99 – 6/30/01 | $5,872,609.90 | $1,042,422.46 | $5,492,359.69 | $1,042,422.46 |

**Timekeeper Summary**

| Name of Professional | Position; Years in the position; Year of obtaining license to practice; Area of expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Bruce Bennett | Partner; Joined HBD as a partner in 1995; member of the California bar since 1982; Bankruptcy. | $550 ('02) | 49.9 | $27,445.00 |
| Laura Lindgren | Partner; Joined HBD as a partner in 1995; member of the California bar since 1978; Litigation. | $420 ('01)<br>$435 ('02) | 5.5<br>145.4 | $2,310.00<br>$63,249.00 |
| James O. Johnston | Partner; Joined HBD as a partner in 1999; member of the California bar since1993, Bankruptcy. | $390 ('01)<br>$425 ('02)<br>$465 ('03) | 5.3<br>111.4<br>4.0 | $2,067.00<br>$47,345.00<br>$1,860.00 |
| Shawna Ballard | Partner; Joined HBD as an associate in 1996; member of the California bar since 1991; Litigation. | $400 ('02) | 21.6 | $8,640.00 |
| Linda Kontos | Of Counsel; Joined HBD as an associate in 1995; member of the California bar since 1994; Litigation. | $280 ('01)<br>$295 ('02)<br>$325 ('03) | 19.0<br>181.2<br>5.2 | $5,320.00<br>$53,454.00<br>$1,690.00 |
| Julie Stueck | Paralegal; Joined HBD as a paralegal in 1995; paralegal for 19 years. | $165 ('02) | 1.1 | $181.50 |
| Anita Wallace | Paralegal; joined HBD as a paralegal in 1995; paralegal for 13 years. | $165 ('02) | 10.4 | $1,716.00 |
| Celestino Santos | Information Systems Analyst; Joined HBD in 1999. | $115 ('02) | 9.4 | $1,081.00 |
| Grand Total: | $216,358.50, for which HBD seeks payment of eighty-six percent (86%), or $186,068.31. | | | |
| Blended Rate: | $326.78 (including the discount) | | | |

457166.v2

## Compensation by Project Category

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Discovery – Documents | 58.5 | $17,070.00, for which HBD seeks payment of eighty-six percent (86%), or $14,680.20. |
| Discovery – Depositions | 92.8 | $39,653.50, for which HBD seeks payment of eighty-six percent (86%), or $34,102.01. |
| Pleadings and Research | 234.6 | $85,744.50, for which HBD seeks payment of eighty-six percent (86%), or $73,740.27. |
| Hearings | 164.1 | $67,585.00, for which HBD seeks payment of eighty-six percent (86%), or $58,123.10. |
| Correspondence and Miscellaneous | 19.4 | $6,303.50, for which HBD seeks payment of eighty-six percent (86%), or $5,422.73. |

**Expense Summary**

| Expense Category | Service Provider | Total Expenses |
|---|---|---|
| Computerized Legal Research | Lexis/Nexis Westlaw Pacer | $3,872.19, for which HBD seeks payment of eighty-six percent (86%), or $3,330.08. |
| Courier / Overnight Mail | Miscellaneous vendors | $4,349.84, for which HBD seeks payment of eighty-six percent (86%), or $3,740.86. |
| Court Fees | n/a | $90.00, for which HBD seeks payment of eighty-six percent (86%), or $77.40. |
| Facsimile (outgoing at $1/page; no charge for incoming) | n/a | $196.00, for which HBD seeks payment of eighty-six percent (86%), or $168.56. |
| Long Distance Telephone | MCI | $1,908.71, for which HBD seeks payment of eighty-six percent (86%), or $1,641.49. |
| Photocopy (internal at $0.10/page) | n/a | $11,428.10, for which HBD seeks payment of eighty-six percent (86%), or $9,828.17. |
| Photocopy (external at cost) | Miscellaneous vendors | $7,639.81, for which HBD seeks payment of eighty-six percent (86%), or $6,570.24. |
| Postage | n/a | $70.04, for which HBD seeks payment of eighty-six percent (86%), or $60.23. |
| Transcript Fees | Miscellaneous vendors | $5,128.75, for which HBD seeks payment of eighty-six percent (86%), or $4,410.73. |
| Transportation and Travel Expenses | Miscellaneous vendors | $17,294.21, for which HBD seeks payment of eighty-six percent (86%), or $14,873.02. |

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| WORLDWIDE DIRECT, INC., <u>et al</u>., | ) |
| | ) Case Nos. 99-108 to -127 (MFW) |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |
| | ) |
| | ) **Hearing Date: February 8, 2005** |
| | ) **at 11:30 a.m.** |
| | ) |
| | ) **Objection Deadline: February 1, 2005** |
| | ) |

## APPLICATION OF HENNIGAN, BENNETT & DORMAN LLP FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES INCURRED IN DEFENSE OF OBJECTION TO THE FIRM'S FINAL FEE APPLICATION

Hennigan, Bennett & Dorman LLP ("<u>HBD</u>") hereby moves this Court for an order, under section 330 of the Bankruptcy Code, awarding it reasonable compensation for professional services rendered and reimbursement of its actual and necessary expenses incurred in connection with HBD's defense of the objection filed by the Worldwide Direct Liquidating Trust (the "<u>Trust</u>") to HBD's previously-filed final fee application. HBD requests fees in the amount of <u>$186,068.31</u> and expenses in the amount of <u>$44,700.78</u>, which together represent eighty-six percent (86%) of the total fees and expenses that HBD incurred in fending off the vast majority of the Trust's objection to more than $2.7 million of HBD's requested fees and expenses.

## I.    INTRODUCTION

Through the Bankruptcy Code, Congress intended "that professionals and paraprofessionals in bankruptcy cases should earn the same income as their non-bankruptcy counterparts." *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 849 (3d Cir. 1993). The Third Circuit has explained that "Congress' manifest intent [was] to provide fully competitive income to bankruptcy attorneys." *Id.* at 853.

In light of this policy, courts have held that professionals are entitled to be compensated from the bankruptcy estate for their reasonable fees and expenses incurred in successfully defending against objections made to their fee applications:

> Failure to grant fees for successfully defending challenges to an authorized fee application would dilute fee awards, in violation of section 330(a), and this would reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally.

*Smith v. Edwards & Hale, Ltd. (In re Smith)*, 317 F.3d 918, 928 (9th Cir. 2002) (citing *In re Nucorp. Energy, Inc.)*, 764 F.2d 655 (9th Cir. 1985)). The Third Circuit has implicitly acknowledged this very point. *See Busy Beaver*, 19 F.3d at 847 (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 983 (3d Cir. 1983), for the proposition that, "[i]f attorneys are required to litigate for their fees but are not compensated for the time spent on such litigation, their effective rates will be reduced correspondingly").

In fact, previously in this very case, the Court awarded a professional employed by the Debtors $30,000 in attorneys' fees incurred in successfully defending against a fee objection made by the Creditors' Committee (whose members now sit on the Liquidating Trust Board and control the Trust).[1]

HBD seeks a comparable award by this Application. The Court will recall that the Trust objected to a staggering $2,729,337 of the final fees and expenses requested by HBD for its two-and-a-half years of service as counsel to the Debtors in this case. That objection amounted to nearly forty percent (40%) of HBD's final fee and expense request (which itself reflected a voluntary reduction of more than $750,000 in fees and expenses). Ultimately, the Court sustained only $380,250 of the Trust's objections, less than fourteen percent (14%) of the amount

---

[1]    *See* Order Regarding Supplemental Application Of Houlihan Lokey Howard & Zukin, entered June 9, 2000 [doc. # 1749/1768] (awarding compromised amount of $30,000); "Supplemental Application Of Houlihan Lokey Howard & Zukin Capital For Compensation And Reimbursement Of Expenses" [doc. # 1458/1474].

of fees and expenses that the Trust sought to deny HBD, while rejecting every legal ground raised by the Trust.

Almost all of the reduction in HBD's requested fees involved the "temporary attorney" issue discussed at length in the Court's opinion in this matter. That issue could have been briefed and litigated efficiently and inexpensively, as fee disputes routinely are handled. Instead, litigation over the Trust's objection was lengthy and expensive, running for more than a year with the trial itself consuming nearly two days of the Court's time. The Trust created and exacerbated this situation in numerous ways.

First, the evidence revealed that the Liquidating Trustee (the entity pursuing the objection on behalf of the Trust) filed the objection without ever reading HBD's final fee application, reviewing any of HBD's work product, discussing HBD or HBD's work with the Debtors or any other parties in interest, or discussing any of its objections with HBD. *See* "Reply Of Hennigan, Bennett & Dorman To The Liquidating Trust's Objection To The Final Fee Application" [doc. # 2661] (the "HBD Reply") at 18-19, and deposition testimony cited therein. Rather, upon receiving a copy of the fee auditor's draft report, the Liquidating Trustee simply filed the draft as its "objection," without any discussion with the auditor and without even reading the report in its entirety. *Id.* As this Court has now found, the auditor also never reviewed any of HBD's work product, discussed HBD or its work with the Debtors or any other parties in interest, or discussed any of the "objections" in the draft report with HBD. Opinion dated October 29, 2004 ("Op.") at 4. Thus, the Court ultimately excluded and found to be unreliable the very report that served as the sole basis for the Trust's $2.7 million objection to HBD's fees, but only *after* (and as a result of) HBD's painstaking (and expensive) discovery, depositions, and cross-examination of the auditor. Op. at 3-5.

Second, after filing the objection, the Trust demanded the production of virtually every document in HBD's files relating to this case, including *all of HBD's work product*. At great expense, HBD ultimately culled through, reviewed, and made available over *500 boxes* of hard copy documents, plus HBD's electronic files on four CD-Roms (roughly 2 gigabytes of data).

457166.v2                                -3-

HBD Reply at 44-45. Yet, *after* HBD incurred that expense, the Trust scarcely bothered to review the production, all the while continuing to maintain that it would seek to disallow the entire $2.7 million in fees and costs that were the subject of the Trust's objection. Then, literally on the eve of trial, the Trust decided to abandon all but four of the twenty-four categories of objections identified in the auditor's draft report. Op. at 2-3. In contrast to HBD's full and voluntary production, the Trust stonewalled HBD's modest discovery requests, refused to accept service of the subpoenas duces tecum on behalf of any of the Liquidating Trust Board members, and filed motions to quash the subpoenas once HBD incurred the expense of serving them out of state. *See* HBD Reply at 45-46 and exhibits cited therein.

Third, because the Trust refused to abandon the auditor's obviously-flawed report, which had nothing to do with the substance of the Trust's objection on the "temporary attorney" issue, the trial on the Trust's objection consumed two days, requiring two cross-country trips by the HBD attorneys tasked with defending HBD's fees. HBD also was forced to travel cross-country on several occasions to depose the fee auditor and his associate, and the employees of the Liquidating Trustee who purportedly were tasked with reviewing and making decisions about HBD's fees.

All of the Trust's tactics served to needlessly prolong and increase the expense of this dispute. Indeed, HBD estimates that, despite the slapdash nature of the Trust's objection, the Trust's professionals incurred approximately $240,000 in fees in attacking HBD, including over $87,500 in fees charged by the fee auditor for producing the report that the Court ultimately found to be unreliable.[2] HBD was required to mount a comparably vigorous defense to defend against the unwarranted objection to more than $2.7 million of its fees and expenses.

---

[2]     *See* "Final Application Of Legal Cost Control, Inc. Fee Auditor For Reimbursement Of Holdback Fees And Expenses" [doc. # 2885] ($87,687 fee relating to the draft report on HBD); "First Interim Post-Effective Date Application Of Gibbons, Del Deo, Griffinger & Vecchione, PC As Counsel To Golding Associates, Liquidating Trustee Of The Worldwide Direct Liquidation Trust" [doc. # 2889] (approximately 2/3rds of requested fees of $185,261 relate to HBD); "First Interim Application Of Wollmuth Maher Deutsch LLP" [doc. # 2891] (approximately 1/3rd of requested fees of $33,201 relate to HBD); "Second Interim

In light of HBD's near total success on all objections other than the objection raised with respect to the "temporary attorneys," and HBD's success on more than half of the fees requested with respect to the "temporary attorneys," HBD submits that it has prevailed in this litigation and is entitled to be compensated for the fees and expenses incurred in defending its final fee application. As HBD succeeded in preserving over eighty-six percent (86%) of the fees and expenses to which an objection was made (and nearly ninety-five percent (95%) of HBD's total requested fees and expenses), HBD requests that the Court award it fees in the amount of $186,068.31 and expenses in the amount of $44,700.78, which together represent eighty-six percent (86%) of the total fees and expenses that HBD incurred in this fee dispute.

## II.    BACKGROUND

The Debtors filed their chapter 11 cases on January 19, 1999, and this Court approved HBD's retention as the Debtors' counsel by an order entered on January 21, 1999. From the petition date through the effective date of the Plan on June 30, 2001, HBD played a major role in every development and accomplishment in the case. HBD's services and major accomplishments are summarized in the HBR Reply and will not be repeated here. HBD merely notes that the Court has now overruled each and every objection of the Trust relating to the substance, merits, and value of HBD's work in this case.

On the Plan's June 30, 2001, effective date, the Trust became vested with the Debtors' remaining assets, charged with fiduciary duties to the estate, and tasked with concluding the case. After obtaining months of extensions, on December 3, 2001, the Trust objected to more than $2.7 million of HBD's requested fees and expenses. That objection, however, contained not one iota of analysis or discussion regarding HBD, its services, or its fees. Rather, the objection merely attached the "draft report" of the auditor and stated that the report "points out many objectionable

---

Application Of Wollmuth Maher Deutsch LLP" [doc. # 3083] (approximately 1/5th of requested fees of $96,881 relate to HBD).

areas and suggests that further documentation and information may be necessary." Obj. at 6 [doc. # 2549]. This was the entirety of the Trust's analysis.

In fact, the Liquidating Trustee later testified that he made no effort to audit or examine HBD's fees. The Liquidating Trustee did not even review HBD's bills or fee applications, or even read the entirety of the auditor's report. *See* HBD Reply at 18-19 and deposition testimony cited therein. Rather, the Trust simply submitted the document to the Court and sought, without any analysis, to utilize it to justify the forfeiture of nearly forty percent (40%) of HBD's fees.

This, by itself, is unacceptable conduct for a fiduciary of the bankruptcy estates. It is all the more objectionable in light of the fact that the auditor's report was without substance. Discovery conducted by HBD revealed, and testimony at the trial later confirmed, that the report that served as the objection to HBD's fees was not based on an audit and was prepared without any review of HBD's underlying work product, without any consultation with HBD's clients or members of the Committee or any other parties in interest, and without any knowledge of the issues involved in the SmarTalk/Worldwide Direct case. While the report purportedly was prepared in accordance with "Generally Accepted Legal Auditing Principles (GALAP)," the auditor later was forced to concede in his testimony that there is no such thing. Op. at 4-5.

Moreover, as the Court has now found, the auditor's report was incomplete and riddled with errors that served to inflate the amount of fees subject to the objection and obscure the true nature and value of HBD's services. For example:

- The report's exhibits attributed to HBD over 100 incorrect time entries, variously overstating the time actually recorded in HBD's invoices, creating duplicate entries when only a single entry appeared in HBD's invoices, and fabricating time entries that had no correspondence time entry at all in HBD's invoices.

- The report ignored the fee application narratives and subject matter categories into which HBD meticulously grouped its fees, thus providing a basis for the auditor to claim that certain time entries were "vague," where simply referring to the

narrative or fee category into which the entries are classified would have provided context and resolved any "vagueness" regarding the entries.

- The report frequently included the same time entries in two or more categories of objection, thus double- or triple-counting a single "objectionable" time entry and thereby increasing the amount of the fees subject to the objection by a like amount.

- The report ignored HBD's prior reductions in photocopy and facsimile charges, and thus asserted objections to tens of thousands of dollars of "expenses" for which HBD never sought reimbursement.

Op. at 3-5.

In sum, HBD was required to dissect and defend against an objection that, before the Trust's eleventh-hour "supplement" was filed, was based solely on a report that the Court found to be erroneous and "not reliable." Given the attack on more than $2.7 million of its fees and expenses, HBD was required to conduct and respond to discovery and otherwise mount a vigorous defense, only to learn on literally the eve of trial that the Trust was abandoning all but four of the twenty-four categories of objections identified in the auditor's draft report. Op. at 2-3. And even then, because the Trust continued to rely on the auditor and to pursue several objections raised in the report (all of which were later overruled in all but immaterial amounts), the hearing on HBD's fees continued for two days. All of this had the effect of demonstrably increasing the fees and expenses incurred by HBD in protecting the fees that it had earned in service of the Debtors and the estates.

### III.    SUMMARY OF HBD'S SERVICES

In this Application, HBD requests an award of reasonable fees and expenses incurred in connection with HBD's defense of the Trust's objection to HBD's final fee application. As HBD succeeded in preserving over eighty-six percent (86%) of the fees and expenses to which an objection was made (and nearly ninety-five percent (95%) of HBD's total requested fees and

expenses), HBD requests that it be awarded eighty-six percent (86%) of the fees and expenses that it incurred. HBD, however, does not request any fees or expenses associated with the preparation of its final fee application or this Application.

HBD has grouped the services that are the subject of this Application into the following five categories:

- Discovery – Documents
- Discovery – Depositions
- Research and Pleadings
- Hearings
- Correspondence and Miscellaneous[3]

Attached as <u>Exhibit A</u> is a detailed chronological statement of services performed by HBD, grouped by service category. Within each category, the statement includes a listing of the name of the person who rendered a particular service, the date and amount of time expended, and a detailed description of the work performed. Separate summaries of HBD's services, organized by timekeeper and by service category, are included above behind the cover page of this Application. The following is a narrative summary of HBD's services:

**A.     Discovery – Documents.**

The Trust made incredibly broad discovery requests of HBD. The Trust demanded:

- All documents relating to any voluntary "write-offs" . . . including but not limited to, the original time entries for any tasks and any invoices subject to such write-offs;
- All documents relating to the Document Review, Analysis and Management, as identified as category 500 in the Fee Application;

---

[3]    HBD has attempted to place the services performed in the category that best relates to the service provided. However, because certain services may relate to one or more categories, services pertaining to one category in fact may be recorded in other categories.

- *All written or recorded work product of [HBD] for which [HBD] seeks recovery of fees;*

- All communications . . . relating to any fees charged to the Debtors by [HBD];

- All documents relating to the employment of temporary personnel, including but not limited to, copies of all documents relating to payments made to temporary personnel and the resumes of any individual billed by [HBD] as an attorney or paralegal;

- All documents relating to expenses incurred by [HBD] in connection with computer assisted legal research for which it seeks reimbursement;

- All documents relating to payments to third parties; and

- All documents relating to travel and/or transportation expenses incurred by Hennigan for which it seeks reimbursement.

*See* HBD Trial Ex. 21 (emphasis added).

This demand forced HBD to review its entire file of documents generated and received in its two-and-a-half years of service in this case. This was an expensive and time consuming effort, as evidenced by the fact that HBD ultimately culled through, reviewed, and made available to the Trust over *500 boxes* of hard copy documents, plus HBD's electronic files on four CD-Roms (roughly 2 gigabytes of data).[4]

HBD also prepared and served limited discovery requests on the Trust and members of the Trust Board. In contrast to HBD's cooperative approach, however, HBD's modest requests were met with resistance and defiance at every turn. The Trust objected to the majority of

---

[4]  Much of the document review was performed by Jason Patty, a former "temporary attorney" whom HBD hired after conclusion of the SmarTalk document review project discussed at length in HBD's reply brief and in Mr. Bennett's testimony. Mr. Patty spent three full weeks, and over 100 hours, reviewing and compiling documents to respond to the Trust's document requests. HBD, however, has voluntarily not elected not to seek compensation for *any* of Mr. Patty's time in this regard.

document requests and ultimately produced less than two boxes of documents, while delaying production of additional documents until after HBD had completed the depositions of key witnesses. The Trust refused to answer the majority of interrogatories propounded, most of which sought basic explanation of the confusing objections set forth in the auditor's report, and then failed to verify supplemental responses that provided, at best, a modicum of the requested information. The Trust also refused to accept service and filed motions to quash the subpoenas issued to members of the Trust Board. All of this dramatically increased the expense of this dispute.

In total, HBD expended 58.5 hours performing services attributable to the Discovery – Document category, for a total of $17.070.00 in fees, for which HBD seeks payment of eighty-six percent (86%), or $14,680.20.

## B.    Discovery – Depositions.

Because the auditor's report was so fundamentally flawed and inaccurate, because the Trust never conducted any sort of dialogue with HBD to attempt to get answers to the various questions posed in the auditor's report, and because the Trust failed to substantively respond to HBD's interrogatories, HBD was compelled to depose representatives of the auditor and the Trust to try to ascertain the basis for the massive objection that had been made to HBD's fees. This also was a time consuming and expensive process.

Ultimately, HBD deposed the principal of the auditor – John Marquess – at his offices in Newark, and Mr. Marquess' associate, Skyler Altland, in Los Angeles. HBD also deposed two representatives of the Trust and the Liquidating Trustee – David Pauker and Mark Slane – in New York. The Trust in turn deposed Mr. Johnston of HBD for a full day.

In total, HBD expended 92.8 hours performing services attributable to the Discovery – Depositions category, for a total of $39,653.50 in fees, for which HBD seeks payment of eighty-six percent (86%), or $34,102.01.

## C.     Pleadings and Research.

The primary task in the "Pleadings and Research" category was HBD's written response to the Trust's objection to HBD's fees.   Due to the far ranging nature of the objection – which included dozens of different "categories" of objections and a request to disallow virtually all of HBD's fees incurred during the plan confirmation process and the fees relating to litigation matters (*i.e.*, document productions, damage analyses, expert witness fees and the like), HBD had no choice but to prepare a comprehensive written response to the Trust's many factual and legal errors.   Pursuant to the briefing schedule, HBD prepared and filed a 49-page response brief, together with six supporting declarations, 53 exhibits, and excerpts of deposition testimony.   Then, in an effort to streamline the hearing on the Trust's objection, HBD agreed with the Trust's counsel to draft and submit revised declarations that could be admitted into evidence without objection and thus eliminate the need for live testimony from three witnesses.   Ultimately, in the face of HBD's comprehensive briefing, the Trust abandoned all but four of the "categories" of objections it originally pursued against HBD.

HBD also drafted responses to the Trust's motions in limine and motions to quash HBD's subpoenas, and researched various legal issues regarding temporary personnel and other matters raised in the Trust's pleadings.

In total, HBD expended 234.6 hours performing services attributable to the Pleading and Research category, for a total of $85,744.50 in fees, for which HBD seeks payment of eighty-six percent (86%), or $73,740.27.

## D.     Hearings.

The hearing on the Trust's objection to HBD's fees continued over two days six months apart, commencing on May 16, 2002, and concluding on December 5, 2002. The hearings and associated travel alone thus consumed significant time and generated significant expense. Preparation for the hearings (including preparing for the hearing that was originally scheduled for September 5, 2002, but continued in the days before to December 5, 2002) also was time

consuming, involving witness preparation, preparation for cross-examination of witnesses, and preparation of opening statements and closing arguments.

In total, HBD expended 164.1 hours performing services attributable to the Hearings category, for a total of $67,585.00 in fees, for which HBD seeks payment of eighty-six percent (86%), or $58,123.10.

**E.     Correspondence and Miscellaneous.**

As indicated in the attached time records, HBD corresponded with the Trust and opposing counsel on numerous discovery, scheduling, and other matters during the course of this dispute. In total, HBD expended 19.4 hours performing services attributable to the Hearings category, for a total of $6,305.50 in fees, for which HBD seeks payment of eighty-six percent (86%), or $5,422.73.

## IV.     SUMMARY OF HBD'S EXPENSES

HBD incurred a total of $51,977.65 in actual, reasonable, and necessary expenses in connection with its defense of the Trust's objection.  HBD seeks reimbursement of eighty-six percent (86%) of this amount, or $44,700.78.

Attached as Exhibit B is an itemization of all expenses incurred by HBD for which reimbursement is sought.  A summary of HBD's expenses, by type, is included above behind the cover page of this Application.

HBD made every effort to limit its expenses and to use the most economical means available for accomplishing the tasks requiring expenditures of costs.  As it did throughout this case, HBD charged only for the actual expenses incurred, without markup or surcharge (including computer assisted legal research), and HBD did not charge for non-ordinary overhead expenses such as secretarial and other overtime.  As indicated in the itemization, HBD requests reimbursement of internal photocopies at the rate of $0.10/page and for outgoing facsimiles at the

rate of $1.00/page (with no charge for incoming facsimiles). All airfare has been written down to an approximation of full coach fare.

## V.     ARGUMENT

As noted in the Introduction to this Application, the touchstone of the Bankruptcy Code's provisions for the compensation of professionals is "that professionals and paraprofessionals in bankruptcy cases should earn the same income as their non-bankruptcy counterparts." *Busy Beaver*, 19 F.3d at 849.

In light of this policy of comparable compensation, courts have held that professionals are entitled to be compensated for the fees and expenses they incur in successfully defending against objections made to their fee applications. *See, e.g., Smith*, 317 F.3d at 928-29; *Burgess v. Klenske (In re Manoa Finance Co.)*, 853 F.2d 687, 692 (9th Cir. 1988); *Big Rivers Electric Corp. v. Schilling (In re Big Rivers Electric Corp.)*, 252 B.R. 670, 675-76 (W.D. Ky. 2000); *Nunley v. Jessee*, 92 B.R. 152, 153-54 (W.D. Va. 1988); *In re Hutter Construction Co.*, 126 B.R. 1005, 1013 (Bankr. E.D. Wis. 1991). The rationale for this is straightforward: "To deny [the professional] reasonable compensation for successfully defending its fee awards would dilute its compensation for 'actual and necessary services'" and thus run afoul of the Bankruptcy Code's policy of equal compensation. *Smith*, 317 F.3d at 929; *see Big Rivers*, 252 B.R. at 675 ("To deny these fees would unnecessarily dilute the Examiner's compensation and force him to bear the costs of defending a fee which was properly awarded to him by the Bankruptcy Court.").[5]

Here, HBD was faced with an objection to more than $2.7 million of its requested fees and expenses. That objection was not based on any review of HBD's work product or services

---

[5]    The Third Circuit has reached this same conclusion in similar contexts. *See, e.g. Pawlak v. Greenawalt*, 713 F.2d 972, 983 (3d Cir. 1983) ("if attorneys are required to litigate for their fees but are not compensated for the time spent on such litigation, their effective rates will be reduced correspondingly") (common benefit action); *Bagby v. Beal*, 606 F.2d 411, 415-16 (3d Cir. 1979) (same) (civil rights action); *Prandini v. National Tea Co.*, 585 F.2d 47, 53-54 (3d Cir. 1978) (same).

rendered in the case. Rather, the objection was premised solely on a trumped-up, preliminary "audit" report that this Court later determined to be inaccurate and unreliable. Even the Trust ultimately abandoned all but four of the twenty-four categories of objections set forth in that report, but only on the eve of trial and only after forcing HBD to incur substantial fees and costs in establishing the myriad of errors made by the auditor.

Under these circumstances, to deny HBD its reasonable fees and expenses incurred in defending against that objection this case would dilute the fee that HBD earned for its services in this case and would open the floodgates to similar meritless objections in the future: "[D]enying . . . fees for defending against Smith's objections, which the bankruptcy court found were 'frivolous,' would serve to encourage debtors to file meritless objections to fee applications. This case evinces one of the 'sets of circumstances' where litigation of a fee application is 'necessary' for the purposes of section 330(a)." *Smith*, 317 F.3d at 929; *see Hutter Construction*, 126 B.R. at 1013 ("Baseless filings in bankruptcy court must be deterred, and the limited resources of the court should be spent on productive matters. This includes baseless fee applications, *and irresponsible objections to fee applications*.") (emphasis added) (citations omitted).[6]

HBD acknowledges that the Court did partially sustain the Trust's objection to the fees that HBD sought with respect to its use of temporary personnel in the case, although not on

---

[6]    In its recently filed Motion to compel payment from HBD, the Trust asserted that HBD is not entitled to any award of fees because the Trust "offered to resolve its objections to Hennigan's fees before litigation for roughly the amount of the Excess Fees." Mtn. at 3. This apparently refers to the Trust's October 1, 2001 memo, sent on a "blast fax" to all professionals in this case, demanding that every professional agree to a flat seven percent (7%) reduction in their requested fees or face a fee audit, which would subject the professional "to the cost and inconvenience of having to address issues raised by a fee audit," and could result in an objection "greater than what is currently proposed." *See* HBD Trial Ex. 18. At that time, however, the Trust conceded that it had not made "a thorough and detailed examination" of the various fee applications, *id.*, and not a single ground for objection to even a dollar of HBD's fees had been identified, so HBD declined to agree to reduce its fees in the absence of any demonstrated reason (other than the threat of a fee auditor) for doing so. In any event, the reduction ultimately ordered by the Court is substantially lower than the "offer" tendered by the Trust before the litigation commenced.

grounds raised by the auditor or by Trust in its belated supplemental objection. Even in so doing, the Court rejected the Trust's legal arguments and affirmed the basic point that HBD did not violate any bankruptcy or ethical rules in employing the temporary personnel, and that HBD was entitled to "bill and receive compensation for their services from the Debtors' estates." Op. at 22. Nevertheless, in light of the Court's conclusion that HBD did not meet its burden of proving that fees over the amount that HBD paid to the temporary personnel agencies should be borne by the estate, HBD now seeks an award of only eighty-six percent (86%) of the fees and expenses that it incurred in defending against the Trust's objection, which approximates the percentage of HBD's fees subject to objection that ultimately were allowed. *See Hutter Construction*, 126 B.R. at 1019-20 (adopting a similar, percentage-based approach and awarding a professional a fraction of the fees it incurred in successfully defending a portion of the compensation requested in its fee application); *Big Rivers*, 252 B.R. at 675-76 (awarding fees incurred in a successful defense of a portion of a fee request; denying fees incurred in connection with the portion of a fee request that did not result in an award of allowed fees).

## VI.    CONCLUSION

HBD prevailed in protecting over eighty-six percent (86%) of the fees and expenses that were subject to objection by the Trust (and nearly ninety-five percent (95%) of HBD's total requested fees and expenses). Without an award of a comparable percentage of the fees and expenses that HBD incurred in fending off the Trust's largely unfounded attacks, HBD's actual compensation for the valuable services it rendered in this case would be unfairly diluted in violation of "Congress' manifest intent to provide fully competitive income to bankruptcy attorneys." *Busy Beaver*, 19 F.3d at 853.

HBD therefore requests that the Court award it fees in the amount of $186,068.31 and expenses in the amount of $44,700.78, which together represent eighty-six percent (86%) of the total fees and expenses that HBD incurred in defending its final fee application.

Dated: December 30, 2004                HENNIGAN, BENNETT & DORMAN LLP


                                        _____
                                        Bruce Bennett
                                        James O. Johnston
                                        601 South Figueroa Street, Suite 3300
                                        Los Angeles, California  90017
                                        Telephone:  (213) 694-1200
                                        Telecopy:  (213) 694-1234

## CERTIFICATION OF JAMES O. JOHNSTON

I, James O. Johnston, hereby declare that:

    1.    I am a partner with Hennigan, Bennett & Dorman LLP ("HBD"), formerly the reorganization counsel to the debtors and debtors in possession in these cases.

    2.    The order authorizing my pro hac vice admission to practice before this Court in these cases was entered on the docket on January 21, 1999.

    3.    I have reviewed the requirements of Local Rule 2016-2. To the best of my knowledge, the foregoing "Application Of Hennigan, Bennett & Dorman LLP For Allowance Of Compensation And For Reimbursement Of Expenses Incurred In Defense Of Objection To The Firm's Final Fee Application" complies with the requirements of Local Rule 2016-2.

    I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

    Executed this 30th day of December, 2004, at Los Angeles, California.

                                      _____
                                      James O. Johnston

457166.v2