Case No. CV 1:05-00206-KAJ

## UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

*In re* WORLDWIDE DIRECT, INC., et al., *Debtors*.

HENNIGAN, BENNETT & DORMAN LLP, *Appellant*,

v.

GOLDIN ASSOCIATES, L.L.C.,
as Liquidating Trustee for the Worldwide Direct Liquidating Trust, *Appellee*.

*Appeal From The United States Bankruptcy Court*

*For The District of Delaware*

Bankr. Case Nos. 99-108 to -127 (MFW) (jointly administered)

## APPELLANT HENNIGAN, BENNETT & DORMAN LLP's

## OPENING BRIEF

James O. Johnston, Jr.
HENNIGAN, BENNETT & DORMAN LLP
601 South Figueroa Street
Suite 3300
Los Angeles, California 90017
Telephone: (213) 694-1200
Telecopy: (213) 694-1234

Robert S. Brady (Bar No. 2874)
YOUNG CONAWAY STARGATT &
TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Telecopy: (302) 571-1253

*Counsel for Appellant*
*Hennigan, Bennett & Dorman LLP*

**TABLE OF AUTHORITIES**

Page

I.    **BASIS OF APPELLATE JURISDICTION** ........................1

II.   **STATEMENT OF THE ISSUE PRESENTED AND THE APPLICABLE STANDARD OF REVIEW** .......................1

III.  **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**....................................2

IV.  **SUMMARY OF ARGUMENT** ..........................................3

V.   **STATEMENT OF THE FACTS.** .......................................5

    A.   HBD Renders Critical Services To The Estate And Achieves Superior Results During The Bankruptcy Case. ..........5

    B.   The Liquidating Trust Attempts To Strong-Arm HBD Into Agreeing To Reduce Its Fee. ...............9

    C.   The Liquidating Trust Files A Massive, And Groundless, Objection To HBD's Final Fee Application. ..............9

    D.   The Liquidating Trust's Litigation Tactics Needlessly Prolong And Increase The Expense Of The Fee Dispute. .........12

    E.   The Bankruptcy Court Overrules Virtually All Of The Liquidating Trust's Objections Other Than The Objection Made With Respect To "Temporary Attorneys." ...........13

    F.   The Bankruptcy Court Adopts A *Per Se* Rule And Declines To Compensate HBD For The Fees Incurred In Fending Off The Liquidating Trust's Objection....................15

VI.  **ARGUMENT**....................................................15

    A.   The Bankruptcy Code Requires That Bankruptcy Professionals Receive Compensation Equivalent To Their Non-Bankruptcy Counterparts, And Such Compensation Should Not Be Diluted By Fees Incurred In Responding To Unsuccessful Fee Objections. .........16

        1.  *A Substantial Majority Of Courts Authorize The Compensation Requested HBD*......................16

        2.  *The Compensation Requested By HBD Is Consistent With Third Circuit Precedent.* ..................17

3. *Other Strong Policy Grounds Support The Majority Rule.* ...........19

4. *The Authority Cited By The Liquidating Trust Is Inapposite And/Or Contrary To Third Circuit Precedent.* ..............................20

B. The Liquidating Trust's Attempt To Leverage A Discount From HBD Does Not Provide A Basis For Denying HBD's Supplemental Application. ........................................................................25

VII. **CONCLUSION** .................................................................................................25

## TABLE OF AUTHORITIES

Page

**Cases**

*Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979) ...................................................................18

*Big Rivers Electric Corp. v. Schilling (In re Big Rivers Electric Corp.),*
    252 B.R. 670 (W.D. Ky. 2000) ............................................................................17,24

*Burgess v. Klenske (In re Manoa Finance Co.)*, 853 F.2d 687 (9th Cir. 1988).................17

*In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833 (3d Cir. 1993) ...........4,16,17,19,23

*In re Computer Learning Centers, Inc.*, 285 B.R. 191 (Bankr. E.D. Va. 2002)......17,20,22

*In re DN Associates*, 165 B.R. 344 (Bankr. D. Me. 1994) ...............................................21

*In re Gillette Holdings, Inc.*, 137 B.R. 462 (Bankr. D. Colo. 1992)..................................21

*Grant v. George Schuman Tire & Batter Co.*, 908 F.2d 874 (11th Cir. 1990)..................21

*In re Hers Cosmetics Corp.*, 114 B.R. 240 (Bankr. C.D. Cal. 1990).......................17,20,24

*In re Hutter Construction Co.*, 126 B.R. 1005 (Bankr. E.D. Wis. 1991) ...............17,20,24

*In re Moss*, 320 B.R. 143 (Bankr. E.D. Mich. 2005)........................................................17

*In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985) ...............................1,17,18,19,22

*Nunley v. Jessee*, 92 B.R. 152 (W.D. Va. 1988)...........................................................17,24

*In re On Tour, LLC*, 276 B.R. 407 (Bankr. D. Md. 2002)..................................................17

*Pawlak v. Greenawalt*, 713 F.2d 972 (3d Cir. 1983).....................................................4,18

*Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978)...............................................18

*Sloan v. Hoffman (In re Chavez)*, 157 B.R. 30 (D. Colo. 1993).......................................17

*Smith v. Edwards & Hale, Ltd. (In re Smith)*, 317 F.3d 918 (9th Cir. 2002)........4,16,20,24

*In re St. Rita's Associates Private Placement, L.P.,*
    260 B.R. 650 (Bankr. W.D.N.Y. 2001) ..............................................................20-21

*Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto*
    *(In re Lakeshore Village Resort, Ltd.)*, 81 F.3d 103 (9th Cir. 1996) ...........................1

**Statutes**

11 U.S.C. § 330.................................................................................................................16

28 U.S.C. § 158(a) ..............................................................................................................1

This is the Opening Brief of appellant Hennigan, Bennett & Dorman LLP ("HBD") on appeal from the Bankruptcy Court's order denying HBD's "Application For Allowance Of Compensation And For Reimbursement Of Expenses Incurred In Defense Of Objection To The Firm's Final Fee Application" (the "Supplemental Application").

## I.    BASIS OF APPELLATE JURISDICTION

The Bankruptcy Court's order denying HBD's Supplemental Application is a final order. *E.g.*, *Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore Village Resort, Ltd.)*, 81 F.3d 103, 105 (9th Cir. 1996) ("The bankruptcy court's order denying Crossland's fee application constituted a final decision under section 158(a). Thus, the district court properly asserted jurisdiction."). This Court has jurisdiction over HBD's timely appeal of that final order pursuant to 28 U.S.C. § 158(a)(1).

## II.    STATEMENT OF THE ISSUE PRESENTED
## AND THE APPLICABLE STANDARD OF REVIEW

**Issue**: Did the Bankruptcy Court err in adopting a new *per se* rule prohibiting HBD – and other bankruptcy professionals – from recouping any fees or expenses associated with defending against an unsuccessful fee objection, and concluding instead that such litigation expenses are "simply the cost of doing business"?

**Standard of Review**: This Court should review *de novo* the Bankruptcy Court's adoption of the *per se* rule, which was premised upon an erroneous conclusion of law. *E.g.*, *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir. 1985) (applying *de novo* review to, and ultimately reversing, "the bankruptcy court's decision to disallow compensation for services related to the preparation and presentation of attorneys' fee applications[, which] was based on an erroneous construction of 11 U.S.C. § 330, the statutory provision governing reimbursement to counsel in bankruptcy proceedings").

## III.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

HBD served as lead bankruptcy counsel to Worldwide Direct, Inc. and eighteen of its affiliates (collectively, the "Debtors") for more than two years, from the bankruptcy petition date through the effective date of the Debtors' consolidated plan. HBD played a major role in every accomplishment in the highly-successful bankruptcy case, which included approval of a sale of the Debtors' business for over $150 million and confirmation of a contested plan that was jointly proposed with the Official Committee of Unsecured Creditors (the "Committee").

After that joint plan became effective, HBD filed its final fee application for services rendered in the bankruptcy case. The Worldwide Direct Liquidating Trust (the "Liquidating Trust"),[1] which was created pursuant to the plan, subsequently objected to more than $2.7 million of HBD's requested fees and expenses – nearly 40% of the total sought in HBD's fee application – even though none of HBD's fees had been the subject of any previous objection during its two-plus years of service to the bankruptcy estate.

As described below, the Liquidating Trust's objection did not state any ground for the massive forfeiture sought from HBD. Instead, the objection merely attached a "draft report" of an outfit called "Legal Cost Control" ("LCC") – retained by the Liquidating Trust as a so-called "fee auditor" – and asserted that the report "points out many objectionable areas and suggests that further documentation and information may be necessary." The Liquidating Trustee later testified that it made no effort to review HBD's work product or even read the entirety of LCC's report prior to authorizing the $2.7 million objection. Moreover, the LCC report itself was fatally flawed – the Bankruptcy Court found the report to be so riddled with errors that it was "not reliable" and had to be excluded from evidence.

---

[1]    Appellant Goldin Associates, LLC (the "Liquidating Trustee") is trustee of the Liquidating Trust. At the times relevant to this appeal, the Liquidating Trust's Board of Directors included former members of the Committee.

After a lengthy discovery period (needlessly prolonged by the Liquidating Trust's litigation tactics) and two days of hearings, the Bankruptcy Court overruled nearly all of the Liquidating Trust's objections and allowed over 86% of the fees and expenses subject to objection (and nearly 95% of HBD's total fee request). In light of this victory, and the irresponsible way in which the Liquidating Trust pursued its objection, HBD filed its Supplemental Application seeking reimbursement for its fees and expenses incurred in defending the final fee application. As HBD succeeded in preserving over 86% of the amounts subject to objection, HBD requested reimbursement of a like percentage of its fees and expenses incurred in defense of the objection.

After a hearing, the Bankruptcy Court denied HBD's Supplemental Application. It agreed that the Liquidating Trust's objection to HBD's fees "did not have a sound basis in fact," Ap. 3308, at 22,[2] and stated that HBD satisfied the various factors set forth in many cases that award fees to bankruptcy professionals who prevail in fee objection litigation, *id.* The Court, however, declined to follow that majority rule, and instead adopted a *per se* rule that bankruptcy professionals are not entitled to recover their fees because "the benefit by responding to [fee] objections is for the benefit of the professional, not the estate." *Id.*

HBD timely appealed.

### IV.    SUMMARY OF ARGUMENT

The Bankruptcy Court erred in adopting a *per se* rule, in contravention of the rule established in nearly every published opinion to address the subject, prohibiting professionals employed in bankruptcy cases from recouping any fees or expenses associated with defending against an unsuccessful objection to a fee application.

---

[2]    "Ap." refers to HBD's accompanying Appendix, identified by tab and, where appropriate, page number. The tab numbers reflect the corresponding docket number in the bankruptcy case from which this appeal is taken. "Doc." refers to the docket number of a document designated for the record on appeal.

The Bankruptcy Court should have granted HBD's Supplemental Application because:

1.     The Bankruptcy Court's failure to reimburse HBD for the fees and expenses it incurred in successfully defending its final fee application dilutes HBD's actual, allowed compensation for services rendered during the bankruptcy case. This dilution contravenes the intent and purpose of section 330(a) of the Bankruptcy Code: "Failure to grant fees for successfully defending challenges to an authorized fee application would dilute fee awards, in violation of section 330(a), and this would reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally." *Smith v. Edwards & Hale, Ltd. (In re Smith)*, 317 F.3d 918, 928 (9th Cir. 2002).

2.     The Third Circuit has endorsed the notion that, without reimbursement for fees incurred in disputes over fees, bankruptcy professionals would not receive the full, comparable compensation to which they are entitled. *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 847 n.17 (3d Cir. 1993) (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 983 (3rd Cir. 1983), for the proposition that, "if attorneys are required to litigate for their fees but are not compensated for the time spent on such litigation, their effective rates will be reduced correspondingly"). A leading case from the Ninth Circuit specifically looks to Third Circuit precedent to support the conclusion that bankruptcy professionals should be reimbursed for their fees incurred in successfully fending off fee objections. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 660-62 (9th Cir. 1985).

3.     The majority rule rejected by the Bankruptcy Court serves to deter exactly what happened to HBD in this case – the prosecution of a largely-frivolous, mean-spirited objection to a fee application in an attempt to extract a reduction in fees regardless of merit. *Smith*, 317 F.3d at 929 ("denying . . . fees for defending against [fee] objections . . . would serve to encourage debtors to file meritless objections to fee applications").

4.    The "American Rule" upon which the Liquidating Trust relies is not applicable because HBD seeks recovery pursuant to the specific statutory fee authorization provided by the Bankruptcy Code. A bankruptcy case is not analogous to the routine, nonbankruptcy context cited by the Liquidating Trust, because the specific statutory procedures for obtaining fees in bankruptcy cases are different, and vastly more burdensome, than those faced by professions outside of bankruptcy. In this case, HBD was subjected to a massive objection to its fees, by an objector that was being reimbursed from the bankruptcy estate for its own fees and expenses, notwithstanding that HBD's client had no objection to its fees and was fully satisfied with HBD's work, and notwithstanding that no party had objected to HBD's fees at any time during the two-plus years that HBD represented the Debtors in this case (meaning that HBD had no notice of any concerns and no opportunity to change the fees and billing practices that ultimately became subject to objection). This could not happen outside of bankruptcy.

## V.    STATEMENT OF THE FACTS

**A.    HBD Renders Critical Services To The Estate And Achieves Superior Results During The Bankruptcy Case.**

The Debtors filed their chapter 11 cases on January 19, 1999. HBD was involved in every aspect of the bankruptcy case from that date through the effective date of the plan on June 30, 2001.

This was not a routine bankruptcy case. The Debtors arrived in bankruptcy in financial and operational disarray resulting from an accounting scandal. Nevertheless, with HBD's guidance the Debtors were able to achieve a $150 million sale of their business four months after the petition date. After that sale closed, HBD then took the lead in tackling the substantial work that remained, including dealing with over $1.5 billion of claims filed against the Debtors and pursuing major causes of action in nonbankruptcy litigation.

In total, HBD spent over 34,000 hours in service to the estate, and HBD's total

fees and expenses, after a voluntary write off of more than $750,000, were approximately

$6.8 million. Doc. 2431. This Brief is not the place to detail all of the work that HBD

performed. In that regard, reference is made to HBD's five comprehensive interim fee

applications filed in the bankruptcy case, which meticulously described HBD's services.

However, in order to put the Liquidating Trust's fee objection in perspective, HBD

provides the following brief summary of significant matters for which it was responsible.

Sale To AT&T. HBD litigated for approval of a sale to AT&T of most of the

Debtors' business, to which a number of objections were filed (including an objection by

the Committee). HBD resolved a number of complex issues and, due to HBD's efforts,

the Debtors were able to consummate the sale four months after filing for bankruptcy and

ultimately receive consideration of approximately $150 million. Ap. 2661, at 6-7.

Holdback Note Litigation With AT&T. $40 million of the purchase price paid by

AT&T was in the form of a "holdback note," with installment payments due after the sale

closing date. AT&T, however, made no payments on that note and instead asserted

indemnification claims in excess of $40 million. HBD prepared a forty-page complaint

against AT&T for recovery of the $40 million and, due in large part to HBD's analysis of

a number of complicated, data-intensive issues, AT&T ultimately capitulated and paid

virtually all of the amounts due on the note. *Id.* at 7-8.

Claims. HBD objected to a $38 million secured claim asserted by Fletcher

International Limited and successfully responded to Fletcher's dispositive motions for

judgment as a matter of law and summary judgment, prompting Fletcher to settle its

claims at a significant discount. Nearly 2,000 other claims were filed or scheduled in the

bankruptcy case. HBD was responsible for analyzing and objecting to those claims and,

as a result of HBD's efforts, all but several dozen of the claims had been reconciled and

resolved by the effective date of the Debtors' plan, with the maximum amount of the

estate's liability reduced from over $1.5 billion to less than $400 million. *Id.* at 8-10.

The Plan. During the bankruptcy case, the Debtors committed to working with the Committee to formulate a plan, and HBD assumed primary responsibility for that effort. HBD prepared a disclosure statement and worked closely with the Committee in drafting a plan. HBD brokered a compromise among feuding members of the Committee and, ultimately, coordinated the dissemination of the plan to thousands of creditors. HBD then drafted a comprehensive brief responding to objections to confirmation of the plan and participated in the three days of confirmation hearings. HBD prepared an extensive post-hearing brief, along with a proposed order, findings of fact, and conclusions of law, which ultimately were adopted by the Bankruptcy Court when it confirmed the plan. *Id.* at 10-13. Given this, HBD was astounded when, just months after confirmation, the Liquidating Trust (which came into being only pursuant to the plan that HBD had caused to be confirmed) objected to all of HBD's fees for services regarding the plan and contended that "HBD's plan services were largely unnecessary and wasteful." Ap. 2650, at ¶ 22. As described below, the Bankruptcy Court later completely overruled that objection.

Cause of Action Investigation. The Debtors believed that their financial distress was prompted by the forced restatement of financial results resulting from errors made by the Debtors' prepetition accountants and by ill-fated transactions undertaken on the advice of investment banks. HBD has a nationally-renowned commercial litigation practice, and was a natural choice to assist the estate in investigating and pursuing claims against such third parties.[3] At the direction of the Debtors, HBD commenced Rule 2004 discovery, conducted extensive factual and legal research (including witness interviews and document review), and began to prepare for litigation with respect to the claims. Later, however, for reasons that it never fully explained, the Committee demanded that

---

[3]    For example, HBD served as lead bankruptcy and litigation counsel to Orange County, California in connection with the largest municipal bankruptcy in history, and HBD achieved record recoveries on behalf of the County from investment professionals and accounting firms.

the Debtors cease all work and instead delegate to the Committee the right to bring the claims. The Debtors agreed to that delegation, and HBD stopped work on the claims. HBD, however, made all of its extensive work product freely available to the Committee. Ap. 2661, at 13-16. HBD was shocked when the Liquidating Trust subsequently objected to all of HBD's fees for creating that work product, on the ground that "the estates have been saddled with the duplication of effort and expense resulting from the same causes of action having been researched and analyzed by two different firms." Ap. 2650, at ¶ 21. The Bankruptcy Court ultimately overruled that objection in its entirety.

Document Retention and Discovery. Early in the bankruptcy, the Committee filed discovery requests against the Debtors and demanded that the Debtors consolidate all of their documents in a single, secure repository. HBD compiled documents from numerous sources across the country, organized them in a warehouse in Ohio, performed a subject matter review of approximately 1,200 boxes of documents, and created a 1,000 page index. In an effort to avoid the very large expense associated with conducting a privilege review of the documents, the Debtors offered to enter into a "joint defense" agreement with the Committee and to give the Committee access to all of the Debtors' documents, including otherwise privileged documents. The Committee rejected that offer and forced HBD to then perform a privilege review of hundreds of boxes of potentially-relevant documents. This was a massive project by any standard, and the final privilege log also was more than 1,000 pages long.[4] Ap. 2661, at 16-18. Here again, the Liquidating Trust objected to HBD's services in this regard (which were a direct result of requests made by the Committee), Ap. 2650, at ¶ 19, and the Bankruptcy Court subsequently overruled this objection as well.

---

[4] In order to complete this project, with the full assent of the Committee, HBD employed a team of "temporary" attorneys and paralegals, with billing rates significantly lower than the billing rates for HBD's full-time attorneys and paralegals, to perform the privilege review process. The Liquidating Trust's objection to such temporary personnel is described below.

**B.    The Liquidating Trust Attempts To Strong-Arm HBD Into Agreeing To Reduce Its Fee.**

Shortly after the effective date of the Debtors' plan, HBD filed its final fee application. Prior to that time, HBD had filed five interim fee applications, which meticulously described all of the services, fees, and expenses for which HBD sought final approval. No party, including the Committee (whose members later became members of the Liquidating Trust Board) objected to, raised any concerns regarding, or made any reservation of rights with respect to any part of those fee applications, which were approved by the Court after notice and hearings.

Nevertheless, two months after HBD had filed its final fee application, the Liquidating Trustee wrote to HBD and every other fee applicant and made the following demand: either agree to a flat 7% reduction in the requested fees (in consideration for which, "the Liquidating Trustee and the Liquidating Trust Board will inform the court that we support the final application") or face a fee audit, which the Liquidating Trust threatened would subject the professional "to the cost and inconvenience of having to address issues raised by a fee audit," and could result in an objection "greater than what is currently proposed." Ap. 2662. The Liquidating Trustee conceded that it had not made "a thorough and detailed examination" of the various fee applications, and it provided no explanation for the fee reduction it sought. *Id.*

HBD declined to agree to the 7% reduction in its fees (more than $411,000). Instead, HBD told the Liquidating Trustee that it should take into account the services rendered and results achieved by HBD, as well as HBD's prior voluntary write offs of more than $750,000. Doc. 3305, Ex. A.

**C.    The Liquidating Trust Files A Massive, And Groundless, Objection To HBD's Final Fee Application.**

The Liquidating Trustee's demand letter promised that "[t]he fee examiner will ensure the effective and timely review of final fee applications and address and resolve (hopefully, by agreement) any issues regarding the compensation sought by each

applicant." This did not happen. In fact, neither the Liquidating Trust nor its "auditor" –
LCC – ever sought to discuss or resolve any issues with HBD. Ap. 2661, at 19.

Instead, after obtaining months of extensions, the Liquidating Trust proceeded to
object to more than $2.7 million – nearly 40% – of HBD's total requested fees and
expenses of $6.8 million. That massive objection contained no analysis or discussion
regarding HBD, its services, or its fees. Rather, the objection merely attached a "draft
report" prepared by LCC and stated that the report "points out many objectionable areas
and suggests that further documentation and information may be necessary." This was
the entire stated basis for the objection. Ap. 2549, at ¶ 18.

In fact, testimony later revealed that, prior to authorizing the filing of the
objection, the Liquidating Trustee had not reviewed any of HBD's work product,
discussed any objection with HBD, spoken with HBD's clients, or discussed HBD's work
with any members of the Liquidating Trust Board (who were very familiar with HBD by
virtue of their service on the Committee during the bankruptcy case). The Liquidating
Trustee had not even bothered to read HBD's invoices or fee applications, or the entirety
of the draft LCC report. Ap. 2661, at 19 and 43.

To make matters worse, the LCC report on which the Liquidating Trust's
objection was based proved to be a sham. The report states that it was prepared in
accordance with "Generally Accepted Legal Auditing Principles (GALAP)," but LCC
was forced to concede under cross-examination that it made up that term and that, in the
words of the Bankruptcy Court, "there is no such thing." Ap. 3258, at 3. Moreover, as
the Bankruptcy Court later found, LCC's report was incomplete and riddled with
inexcusable errors. For example:

- The report attributed to HBD over 100 incorrect time entries that
were not contained in HBD's invoices, variously overstating the time actually
recorded in HBD's invoices, creating duplicate entries when only a single entry
appeared in HBD's invoices, and fabricating time entries that had no

corresponding time entry at all in HBD's invoices. The Bankruptcy Court found that "the Fee Auditor retyped the HBD time entries into his computer base and there were numerous errors in that process (in description and amount of time recorded)." *Id.* at 4.

- The report ignored the fee application narratives and subject matter categories into which HBD meticulously had grouped its fees, thus enabling LCC to assert that certain time entries were "vague." The Bankruptcy Court found that "the [HBD] entries were removed from their categories and other entries that provided context to what was done." *Id.* at 5.

- The report included many time entries in two or more categories of objection, thus double- or triple-counting a single "objectionable" time entry and increasing the amount of the fees subject to objection by a like amount. The Bankruptcy Court found that "there were duplications in [LCC's] categorization of objections; that is, some time entries or expenses were objectionable on more than one basis. Therefore, the overall objection to the fees and expenses was less than the sum of the categories ($2,729,337). The Fee Auditor could not identify the exact amount of reduction being requested." *Id.*

- The report asserted objections to tens of thousands of dollars of "expenses" for which HBD never sought reimbursement. The Bankruptcy Court found that "the Fee Auditor was not aware that HBD had already agreed to reduce its fees and expenses. Therefore, there were some items in the Fee Audit Report which had already been reduced." *Id.*

After receiving substantial discovery at significant cost to HBD (described below), the Liquidating Trust continued its irresponsible pursuit of baseless objections. It filed a "supplemental" objection that continued to rely on the flawed LCC report, and then added additional objections to all of HBD's fees for services rendered in connection with the Debtors' plan, investigation of causes of action available to the estate,

management of the estates' documents, and HBD's use "temporary" attorneys and paralegals in an effort to keep the costs down in the case. Ap. 2650.

**D.     The Liquidating Trust's Litigation Tactics Needlessly Prolong And Increase The Expense Of The Fee Dispute.**

Normally, disputes over fee applications in bankruptcy cases are resolved in an inexpensive, summary manner. Objectors raise specific issues, fee applicants respond, and the bankruptcy court decides.

This case, unfortunately, was different in many ways. First, the way in which the Liquidating Trust first made its objection to HBD's fees was highly unusual. The Liquidating Trustee filed the objection without ever reading HBD's final fee application, reviewing any of HBD's work product, or discussing HBD's work with anyone.

Second, after filing the objection, the Liquidating Trust demanded the production of virtually every document in HBD's files relating to this case, including all of HBD's work product. At great expense, HBD ultimately culled through, reviewed, and made available over 500 boxes of hard copy documents, plus HBD's electronic files on four CD-Roms (roughly 2 gigabytes of data). In contrast to HBD's full and voluntary production, the Liquidating Trust objected to the majority of HBD's modest document requests and ultimately produced less than two boxes of documents, while delaying production of certain documents until after HBD had completed the depositions of key witnesses. The Liquidating Trust refused to answer the majority of interrogatories propounded (most of which simply sought an explanation of the confusing objections set forth in LCC's report), failed to verify supplemental responses, and filed motions to quash subpoenas issued to members of the Liquidating Trust Board. Ap. 2661, at 44-47.

Third, the Liquidating Trust abandoned all but four of the twenty-four categories of objections identified in the LCC draft report literally on the eve of trial. However, because the Liquidating Trust refused to entirely abandon the LCC report, the hearing on

the fee objection consumed two days, requiring two cross-country trips by HBD attorneys tasked with defending HBD's fees. Ap. 3297, at 11-12.

All of this demonstrably increased the fees and expenses incurred by HBD in protecting the fees that it had earned in service of the bankruptcy estate. It also needlessly increased the expense to the bankruptcy estate. HBD estimates that, despite the slapdash nature of the Liquidating Trust's objection, the Liquidating Trust's professionals incurred approximately $240,000 in fees in attacking HBD, including over $87,500 in fees charged by LCC for producing the report that the Bankruptcy Court ultimately rejected. *Id.* at 4 n.4.

**E.    The Bankruptcy Court Overrules Virtually All Of The Liquidating Trust's Objections Other Than The Objection Made With Respect To "Temporary Attorneys."**

After the matter was submitted for decision, the Bankruptcy Court issued an opinion that overruled nearly all of the Liquidating Trust's objections to HBD's fee application, and that allowed over 86% of the fees and expenses to which an objection was made (and nearly 95% of HBD's total request). Ap. 3258.

The Bankruptcy Court first considered and rejected the LCC report (which, of course, had served as the entire basis for the Liquidating Trust's initial objection to HBD's fees). It held that, due to the lack of any discernable methodology, the LCC report "cannot be considered an expert report done in accordance with generally acceptable methodologies of performing such a report." *Id.* It then canvassed all of the various factual errors in the LCC report and concluded that LCC could not be relied upon even as a factual witness. *Id.* at 4-5. Ultimately, the Bankruptcy Court held that, "[b]ecause [LCC] did not follow an accepted methodology of performing a fee examination and the Fee Auditor Report itself has numerous factual errors, we conclude that it is not reliable." *Id.* at 5.

The Bankruptcy Court then turned to the substance of the Liquidating Trust's objection. The Court overruled all but de minimis amounts of the objections with respect to HBD's timekeeping (things like grouped descriptions, clerical functions, and the like). *Id.* at 5-9. The Court then completely rejected the Liquidating Trust's contention that HBD should not be compensated for its work with respect to the plan and its investigation of causes of action. *Id.* at 9-10.

Finally, the Bankruptcy Court turned to the Liquidating Trust's objection to more than $900,000 in HBD's fees for use of "temporary" professionals in connection with the document maintenance project. First, the Court found that HBD's services with respect to the documents were appropriate. *Id.* at 8 ("HBD was required, at the insistence of the Committee[,] to secure and maintain the Debtors' books and records after the sale to AT&T. In addition, HBD was required to prepare a log identifying the categories of documents which it had and a log of those documents covered by any applicable privilege. . . . [W]e conclude that this function did require the skill of a professional and would normally be billed to a client.").

Next, the Bankruptcy Court rejected the Liquidating Trust's argument that HBD's use of temporary attorneys and paralegals constituted impermissible fee sharing or otherwise was inappropriate, and affirmed the basic point that HBD did not violate any bankruptcy or ethical rules in employing the temporary personnel. *Id.* at 11-22. Instead, the Court concluded that "HBD may bill and receive compensation for their services from the Debtors' estates." *Id.* at 22. The Court also found HBD's disclosure with respect to its use of temporary professional to have been adequate. *Id.* at 22-24.

The Bankruptcy Court did, however, ultimately reduce HBD's allowed fees by approximately $364,000, the amount of the difference between what HBD paid the agencies who had provided temporary attorneys and the amount that HBD billed the estate for the services of those attorneys. The Court concluded that HBD had "not met its burden of proving that the additional amount it seeks from the estate over the actual cost

-14-

of the temporary personnel should be borne by the Debtors." *Id.* at 26. Ironically, this was not even an argument that had been made by the Liquidating Trust.

**F.     The Bankruptcy Court Adopts A *Per Se* Rule And Declines
To Compensate HBD For The Fees Incurred In Fending Off
The Liquidating Trust's Objection.**

HBD thereafter filed the Supplemental Application seeking an award of fees and expenses incurred in the defending its final fee application. HBD requested an award of 86% of the fees and expenses it incurred in defending itself – a total of approximately $230,000 (which was less than the approximately $240,000 in fees that the Liquidating Trust's professionals billed, and were paid for by the bankruptcy estate, in connection with the objection to HBD's fees). Ap. 3297.

The Bankruptcy Court denied the Supplemental Application. The Court agreed that the Liquidating Trust's objection to HBD's fees "did not have a sound basis in fact," Ap. 3308, at 22, and stated that HBD satisfied the various factors set forth in the majority of cases that award fees to professionals who prevail in fee objection litigation, *id.* at 21-22. However, the Court declined to follow the majority rule, and instead adopted a new *per se* rule that professionals are not entitled to recover their fees because "the benefit by responding to [fee] objections is for the benefit of the professional, not the estate." *Id.* at 22. The Court concluded by observing that, "[a]lthough [the Liquidating Trust's objection] was unusual, in that there was a two day hearing on it, I think that is simply the cost of doing business." *Id.* at 23.

This appeal ensued.

## VI.     ARGUMENT

The Bankruptcy Court erred in adopting a *per se* rule prohibiting HBD – and all professionals employed in bankruptcy cases – from recouping any expenses associated with defending against unsuccessful fee objections, even frivolous ones like the Liquidating Trust's objection in this case.

-15-

A.    **The Bankruptcy Code Requires That Bankruptcy Professionals Receive Compensation Equivalent To Their Non-Bankruptcy Counterparts, And Such Compensation Should Not Be Diluted By Fees Incurred In Responding To Unsuccessful Fee Objections.**

Section 330 of the Bankruptcy Code provides for professionals employed in bankruptcy cases to receive "reasonable compensation for [the] actual, necessary services" they render.  11 U.S.C. § 330(a)(1)(A).

In the seminal case of *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833 (3d Cir. 1993), the Third Circuit held that, in determining what constitutes "reasonable compensation," courts must adhere to the principle "that professionals and paraprofessionals in bankruptcy cases should earn the same income as their non-bankruptcy counterparts." *Id.* at 849; *see id.* at 848 ("the principal purpose of the 1978 amendments to § 330 was to compensate bankruptcy attorneys at the same level as non-bankruptcy attorneys").

1.    *A Substantial Majority Of Courts Authorize The Compensation Requested HBD.*

In light of this recognized, unambiguous policy of "comparable compensation," the vast majority of courts to consider the issue have held that bankruptcy professionals are entitled to be reimbursed for fees incurred in successfully defending against objections to their fee applications, on the theory that a failure to provide such reimbursement would dilute compensation in comparison to non-bankruptcy personnel:

> Failure to grant fees for successfully defending challenges to an authorized fee application would dilute fee awards, in violation of section 330(a), and this would reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally.

*Smith v. Edwards & Hale, Ltd. (In re Smith)*, 317 F.3d 918, 928 (9th Cir. 2002) (emphasis added); *id.* at 929 ("To deny . . . reasonable compensation for *successfully* defending its fee awards would dilute . . . compensation for 'actual and necessary services.'") (emphasis in original).

-16-

This is the clear majority rule.  By HBD's research, in addition to the *Smith* case

quoted above, at least <u>ten additional published decisions hold that fees should be awarded</u>

<u>in circumstances like those in this case</u>.[5]

### 2.    *The Compensation Requested By HBD Is Consistent With Third Circuit Precedent.*

Although it has never faced precisely this question, the Third Circuit has endorsed

the notion that, without reimbursement for fees incurred in disputes over fees, bankruptcy

professionals would not receive the full, comparable compensation to which they are

entitled.  *See Busy Beaver*, 19 F.3d at 847 n.17.

---

[5]    *E.g.*, *Burgess v. Klenske (In re Manoa Finance Co.)*, 853 F.2d 687, 692 (9th Cir. 1988); *In re Nucorp Energy, Inc.*, 764 F.2d 655, 662 (9th Cir. 1985) ("[A] refusal to award compensation for the time spent preparing or litigating fee applications results in a reduction of the rate paid for all the attorneys' services.  Were we to affirm the district court's decision [denying compensation], we would, in effect, be reducing the fees that bankruptcy counsel may earn to a level that fails to provide full compensation for their services."); *Big Rivers Electric Corp. v. Schilling (In re Big Rivers Electric Corp.)*, 252 B.R. 670, 675 (W.D. Ky. 2000) ("If the court declined to award such compensation, creditors could negotiate reductions in these fee awards knowing full well that the attorney is in a no-win situation.  Even if the attorney prevails, he or she will have in effect financed the litigation without any hope of surviving it whole.") (quotation omitted); *Sloan v. Hoffman (In re Chavez)*, 157 B.R. 30, 33 (D. Colo. 1993) (without an award of fees incurred in defending a fee application, "the Trustee's compensation for his services would be diluted or dissipated, and he would have effectively financed the litigation"); *Nunley v. Jessee*, 92 B.R. 152, 154 (W.D. Va. 1988) ("I find the Bankruptcy Court's determination that § 330 precludes him from exercising his discretion to award attorney's fees in this case to be erroneous."); *In re Moss*, 320 B.R. 143, 159 (Bankr. E.D. Mich. 2005); *In re Computer Learning Centers, Inc.*, 285 B.R. 191, 224 (Bankr. E.D. Va. 2002) ("the Congressional objective of compensating professionals the same whether they are engaged in a bankruptcy case or in a non-bankruptcy matter [is] furthered by allowing additional fees to successfully present, prosecute or defend a fee application in appropriate circumstances"); *In re On Tour, LLC*, 276 B.R. 407, 418 (Bankr. D. Md. 2002) ("bankruptcy counsel should be compensated for preparing and defending fee applications"); *In re Hutter Construction Co.*, 126 B.R. 1005, 1013 (Bankr. E.D. Wis. 1991) ("attorneys are entitled to be compensated for the time spent in defending fee applications, if the attorneys are successful in the defense"); *In re Hers Cosmetics Corp.*, 114 B.R. 240, 244 (Bankr. C.D. Cal. 1990) ("In the case of § 330, Congress obviously felt that it was important to pay attorneys from the estate on a priority basis to provide an incentive for attorneys to represent debtors. . . . [T]he underlying purpose of these provisions would be subverted if the fee award could be diluted through the appeal process.").

In fact, in the leading *Nucorp Energy* case, the Ninth Circuit looked specifically to Third Circuit precedent to support its conclusion that bankruptcy professionals should be reimbursed for their fees incurred in fending off fee objections. The Ninth Circuit observed that "[t]he Third Circuit [has] carefully explained why compensating attorneys for the time spent in fee litigation is necessary to effectuate the objectives underlying most attorneys' fee statutes." *Nucorp Energy*, 764 F.2d at 660. The Ninth Circuit then quoted the following passage directly from the Third Circuit's decision in *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978):

> If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. Recognizing this fact, attorneys may become wary about taking Title VII cases, civil rights cases, or other cases for which attorneys' fees are statutorily authorized. Such a result would not comport with the purpose behind most statutory fee authorizations, *viz*, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies. Indeed, courts have consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for the expenses of and time spent litigating the issue of a reasonable fee – *i.e.*, for time spent on the fee application and successful fee appeals.

*Nucorp Energy*, 764 F.2d at 660 (quoting *Prandini*, 585 F.2d at 53) (emphasis added).[6]

The Ninth Circuit then concluded that "[t]he Third Circuit's reasoning is persuasive," *id.* at 661, and proceeded to analogize bankruptcy cases to the types of statutory fee cases in which the Third Circuit has authorized comparable fee awards:

> Attorneys' fees in bankruptcy cases are in the most important respect similar to attorneys' fees in other statutory cases. As in the case of other statutory fees, fees are awarded to bankruptcy counsel pursuant to Congress' express directive that attorneys are to receive reasonable compensation for all services rendered in the course of their representation. . . . .

---

6   Other Third Circuit cases to this effect are *Pawlak v. Greenawalt*, 713 F.2d 972, 983 (3d Cir. 1983) ("if attorneys are required to litigate for their fees but are not compensated for the time spent on such litigation, their effective rates will be reduced correspondingly") (common benefit action); and *Bagby v. Beal*, 606 F.2d 411, 415-16 (3d Cir. 1979) (same) (civil rights action).

-18-

> While recognizing the unique nature of the source of fees in bankruptcy proceedings, we have little difficulty in concluding that, on balance, we should follow the practice employed in other statutory fee cases rather than that used in common fund cases. <u>The policies underlying the compensation of attorneys under the Bankruptcy Reform Act closely parallel those expressed in the other statutory fee cases.</u> Statutory fee award provisions are designed to ensure that attorneys are fully compensated for handling cases. That was clearly Congress' intent when it enacted section 330 of the Bankruptcy Reform Act. As noted earlier, a refusal to award compensation for the time spent preparing or litigating fee applications results in a reduction of the rate paid for all the attorneys' services. <u>Were we to affirm the district court's decision, we would, in effect, be reducing the fees that bankruptcy counsel may earn to a level that fails to provide full compensation for their services.</u> . . .

*Id.* at 662 (emphasis added).

The Third Circuit has observed that "Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts. Congress determined, it appears, that on average the gain to the estate of employing able, experienced, expert counsel would outweigh the expense to the estate of doing so, and that unless the estate paid competitive sums it could not retain such counsel on a regular basis." *Busy Beaver*, 19 F.3d at 850 (alteration omitted). This is the precisely same policy as that which underlies the various statutory fee cases in which the Third Circuit has awarded fees incurred in defending objections to fee applications. There is no basis not to award such fees in bankruptcy cases as well.

### 3. *Other Strong Policy Grounds Support The Majority Rule*.

In addition to the policies of comparable compensation and "provid[ing] sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts," the majority rule also is grounded in the important policy of deterring precisely that which happened to HBD in this case – a largely-frivolous, mean-spirited objection to a fee application.

As the Ninth Circuit has explained: "denying . . . fees for defending against [fee] objections, which the bankruptcy court found were 'frivolous,' would serve to encourage

debtors to file meritless objections to fee applications." *Smith*, 317 F.3d at 929. The

Court in *Hers Cosmetics* elaborated further:

> [Without a rule providing compensation], [c]reditors could negotiate
> reductions in these fee awards knowing full well that the attorney is in
> a no-win situation. Even if the attorney prevails, he or she will have in
> effect financed the litigation without any hope of surviving it whole.
> This makes absolutely no sense. If that was the inevitable result,
> debtors and creditors would have substantial difficulties in retaining
> competent counsel in bankruptcy cases. Certainly, Congress did not
> have that end in mind.

*Hers Cosmetics*, 114 B.R. at 244 (emphasis added); *accord, e.g., Big Rivers*, 252 B.R. at

675; *Computer Learning Centers*, 285 B.R. at 223-24 ("The fee application process can

become involved and expensive, particularly if the fee application process is improperly

used to seek an unjustified reduction in fees. If additional fees for defending fee

applications are invariably denied, objections may be encouraged on the theory that what

is not objected to will not be disallowed."); *Hutter Construction*, 126 B.R. at 1013

("Baseless filings in bankruptcy court must be deterred, and the limited resources of the

court should be spent on productive matters. This includes baseless fee applications, and

irresponsible objections to fee applications.") (citations omitted).

This policy is particularly strong in a case like this one, where the party objecting

to the underlying fee application (here, the Liquidating Trust) is not spending its own

money to pay its own attorneys' fees and instead is able to have the bankruptcy estate

foot the bill for such fees. And it is particularly appropriate to award fees in a case, like

this one, where the objection lodged in respect of a fee application is not narrowly

tailored, is not grounded in any specific facts, and is based on an "unreliable" audit that is

"factually inaccurate in numerous ways" and does "not have a sound basis in fact."

### 4.    *The Authority Cited By The Liquidating Trust Is Inapposite And/Or Contrary To Third Circuit Precedent.*

In papers filed below the Liquidating Trust cited only one case that was directly

contrary to the majority rule – *In re St. Rita's Associates Private Placement, L.P.*, 260

B.R. 650 (Bankr. W.D.N.Y. 2001). The *St. Rita's* case, however, clearly is an outlier and, HBD submits, is incorrectly decided. In *St. Rita's*, without citing any of the cases cited in this Brief other than *Nucorp Energy*, the Court reached the bizarre conclusion that a professional is entitled to reimbursement for its <u>expenses</u> incurred in litigating over a fee objection, but not for its <u>fees</u> incurred in the litigation. *Id.* at 652. There is no rhyme or reason to that conclusion, and the *St. Rita's* case should be discarded.

      The Liquidating Trust did cite several other cases, but none were particularly on point or helpful to its cause. For example, in one case the court declined to award fees for an appeal in which <u>the applicant did not prevail</u>. *Grant v. George Schuman Tire & Batter Co.*, 908 F.2d 874, 882-83 (11th Cir. 1990). In another case, the court declined to award fees incurred on <u>appeal</u> of a fee award, but seemed to agree that applicants are entitled to fees incurred in litigating a fee objection before the bankruptcy court. *In re DN Associates*, 165 B.R. 344, 354 (Bankr. D. Me. 1994) ("Assuming *Nucorp*'s holding that reasonable fees and expenses generated in preparing and presenting fee applications in accordance with the Code's requirements are compensable is the law in this circuit, I am unconvinced that bankruptcy estates should bear the expense of run of the mill fee appeals."). In another, the court expressly <u>allowed</u> fees and expenses incurred in litigating an objection to a professional's retention. *In re Gillette Holdings, Inc.*, 137 B.R. 462, 470 (Bankr. D. Colo. 1992).

      The Liquidating Trust also argued that the Bankruptcy Code's policy of comparable compensation for bankruptcy professionals did not require the reimbursement of fees due to "the impact of the 'American Rule.'" Doc. 3305, ¶ 12. The Liquidating Trust's theory was that bankruptcy professionals do not need to be reimbursed for such fees in order to avoid dilution of their compensation because, outside of bankruptcy, attorneys cannot recover their fees incurred in litigating "to recover a fee from a recalcitrant client." *Id.*

This ignores the fact that, as in civil rights and other statutory fee cases (in which the Third Circuit has permitted lawyers to recover the costs incurred in litigating fee objections), a bankruptcy professional faces a vastly different situation than does the run-of-the-mill nonbankruptcy professional "faced with a client unwilling to pay its fees outside of bankruptcy."

> Congress has made it clear that the compensation of bankruptcy counsel should be commensurate with that awarded to non-bankruptcy attorneys for "comparable services." We therefore must determine what services are comparable to the preparation and presentation of fee applications in bankruptcy proceedings. An attorney's work in obtaining an award from the court involves a somewhat different process, and ordinarily far more time, than is required simply to dun the ordinary client. Accordingly, we find the closest parallel to be the time that attorneys spend calculating and justifying their fees in other types of cases in which fees are awarded by the court. Most of those cases involve fees that are expressly provided for by statute.

*Nucorp Energy*, 764 F.2d at 659 (emphasis added); *see id.* at 662 ("There is even more reason to compensate attorneys for services related to fee application preparation in bankruptcy proceedings than in other statutory fee cases. Bankruptcy counsel devote substantially more time and effort to the preparation of fee applications than do attorneys who receive compensation for comparable services pursuant to other statutory fee award provisions. The fee applications required of counsel by the bankruptcy court generally are much more detailed and time consuming than are the fee applications submitted in other types of cases.") (emphasis added); *Computer Learning Centers*, 285 B.R. at 223 ("[i]n non-bankruptcy cases where there is no statute shifting fees to the prevailing party, third-party approval of a professional's bill is not required. Resort to court is necessary only if the client refuses to pay the bill presented. In bankruptcy cases, a court order is necessary *before* the professional may be paid") (emphasis in original).

Moreover, as happened in this case, a bankruptcy professional can be subjected to meritless objections to its fees even when the professional's client has no objection to those fees and otherwise is fully satisfied with the professional's work, and even when

-22-

neither the client nor anyone else objected to the professional's fees for a period of several years, thus giving the professional no notice or opportunity to change the fees and billing practices that are ultimately become subject to an objection.  Indeed, in a case like this one, the objecting party does not even need to spend its own money in pursuing such an objection.  What happened to HBD in this case could not happen outside of the bankruptcy context.

In *Busy Beaver* the Third Circuit recognized that bankruptcy fee procedures may put bankruptcy professionals in a less advantageous position than their non-bankruptcy counterparts and that, in such instances, bankruptcy professionals should be compensated for their efforts to comply with those procedures:

> [C]ertain procedures for bill approval unique to bankruptcy cases may alter the answer to the above questions to the extent that the bankruptcy procedures are materially more onerous . . . . Thus, for example, if a fee applicant can demonstrate that non-bankruptcy clients require substantially less documentation and are considerably more deferential to the professional's exercise of judgment concerning which fees are billable (resulting in considerable savings of effort defending bills), etc., the court could meet § 330's mandate of competitive incomes by compensating the attorney for the excess average time spent preparing fee applications to satisfy the bankruptcy court over the average time spent on preparing bills for similar services for comparable non-bankruptcy clients. *Cf. Pawlak*, 713 F.2d at 983 ("[I]f attorneys are required to litigate for their fees but are not compensated for the time spent on such litigation, their effective rates will be reduced correspondingly.").

*Busy Beaver*, 19 F.3d at 847 n.17 (emphasis added).  This is precisely the reasoning for the majority rule relied upon by HBD, and it demonstrates why the Bankruptcy Court erred in rejecting that majority rule.

Finally, citing section 330(a) of the Bankruptcy Code, the Liquidating Trust argued below that HBD's requested fees "were neither 'necessary' . . . nor 'beneficial'," since the estate gained absolutely nothing from their performance."  Doc. 3305, ¶ 9. Courts have repeatedly rejected this type of sophistic parsing of the statute.  Specifically, courts hold that fees incurred in responding to objections are "necessary for the

administration of the case and provide[] a <u>benefit</u> to the debtor's estate in determining the amount of the administrative fees that the estate owe[s]" to the professional in question. *Smith*, 317 F.3d at 929 (emphasis added); *see, e.g., Nunley*, 92 B.R. at 153-54 ("I do not find the assessment of whether the fee litigation has provided services of value to the Debtor's estate to be determinative. First, § 330 does not make value to the estate the primary determinant of a fee award. Second, even if the value of an attorney's services are considered as a factor in the granting of the award, I do not see that litigation over an already established fee award on appeal is more remote from the purposes of the Debtor's estate than the preparation and presentation of the fee application in the first instance."); *Hers Cosmetics*, 114 B.R. at 242 ("As to whether the services were necessary, it is clear to me that additional legal services are necessary when an appeal of a fee award is taken.").

In sum, therefore, the Bankruptcy Court plainly erred in adopting a *per se* rule that bankruptcy professionals are never entitled to reimbursement for the fees and expenses they incur in fending off objections made to their fee applications. The Bankruptcy Court should have granted HBD's request for reimbursement of 86% of the fees and expenses it incurred in successfully defending its final fee application.[7]

---

[7]    In light of the Bankruptcy Court's conclusion that HBD did not meet its burden of proving that fees over the amount paid to the temporary personnel agencies should be borne by the estate, HBD sought an award of only 86% of the fees and expenses that it incurred in defending against the Liquidating Trust's objection, which approximates the percentage of HBD's fees subject to objection that ultimately were allowed. This is consistent with the methodology employed in the case law. *See Hutter Construction*, 126 B.R. at 1019-20 (adopting a similar, percentage-based approach and awarding a professional a fraction of the fees it incurred in successfully defending a portion of the compensation requested in its fee application); *Big Rivers*, 252 B.R. at 675-76 (awarding fees incurred in a successful defense of a portion of a fee request; denying fees incurred in connection with the portion of a fee request that did not result in an award of allowed fees).

**B.     The Liquidating Trust's Attempt To Leverage A Discount From HBD Does Not Provide A Basis For Denying HBD's Supplemental Application.**

As noted above, prior to objecting to HBD's fee application the Liquidating Trust wrote a "blast fax" to HBD, and every other professional employed in the bankruptcy case, and demanded that HBD and the others agree to a flat 7% reduction in their requested fees or face a fee audit, which the Liquidating Trust threatened would subject the professional "to the cost and inconvenience of having to address issues raised by a fee audit," and could result in an objection "greater than what is currently proposed." At that time, the Liquidating Trustee conceded that it had not made "a thorough and detailed examination" of the various fee applications.

This was not a settlement offer; it was a shakedown that HBD rightly declined. The Liquidating Trust argued below that HBD somehow was foreclosed from seeking an award of fees because HBD decided to resist the Liquidating Trust's extortionate demand (which, ironically, the Liquidating Trust unsuccessfully tried to keep out of evidence at the hearing on its objection to HBD's fee application). Doc. 3305, ¶ 15. The Liquidating Trust cited no authority, and HBD is aware of no authority, that serves to disable a professional from seeking fees where the professional declines an offer to "settle" a trumped-up objection to the professional's fee application, particularly where (as here) the objecting party ultimately only achieves a reduction in the professional's allowed fees that is smaller than the amount for which it offered to "settle."

## VII.    CONCLUSION

HBD prevailed in protecting over 86% of the fees and expenses that were subject to objection by the Liquidating Trust (and nearly 95% of HBD's total requested fees and expenses). Without an award of a comparable percentage of the fees and expenses that HBD incurred in fending off the Liquidating Trust's largely unfounded attacks, HBD's actual compensation for the valuable services it rendered in this case would be unfairly

-25-

diluted, in violation of "Congress' manifest intent to provide fully competitive income to bankruptcy attorneys." *Busy Beaver*, 19 F.3d at 853.

The Bankruptcy Court therefore erred in denying HBD's request for allowance of those fees. Accordingly, HBD respectfully requests that this Court reverse the order of the Bankruptcy Court and remand with instructions to the Bankruptcy Court to determine and award HBD a reasonable fee for its services in connection with responding to the Liquidating Trust's objection, including the reasonable fees and expenses incurred by HBD in this appeal.

July 22, 2005

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Robert S. Brady (No. 2847)
The Brandywine Building – 17th Floor
1000 West Street
P.O. Box 391
(302) 571-6600 (Telephone)
(302) 571-1253 (Facsimile)

-- and --

HENNIGAN, BENNETT & DORMAN LLP

James O. Johnston
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 (Telephone)
(213) 694- 1234 (Facsimile)