## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WORLDWIDE DIRECT, INC., et al.,<br><br>        Debtors. | Chapter 11<br><br>Case No. 99-00108(MFW) through<br>Case No. 99-00127(MFW)<br><br>(Jointly Administered) |
| HENNIGAN, BENNETT & DORMAN<br>LLP,<br><br>        Appellant,<br><br>vs.<br><br>GOLDIN ASSOCIATES, L.L.C. AS<br>LIQUIDATING TRUSTEE,<br><br>        Appellee. | Civil Action No. 05-206 |

---

### BRIEF OF APPELLEE GOLDIN ASSOCIATES, L.L.C. AS LIQUIDATING TRUSTEE OF THE WORLDWIDE LIQUIDATING TRUST IN OPPOSITION TO OPENING BRIEF OF HENNIGAN BENNETT & DORMAN LLP

---

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP
Steven K. Kortanek, Esq. (#3106)
Michael W. Yurkewicz, Esq. (#4165)
919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189

WOLLMUTH MAHER & DEUTSCH LLP
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
(212)-382-3300

Counsel for Appellee Goldin Associates, L.L.C.,
Liquidating Trustee of the Worldwide Direct
Liquidating Trust

# TABLE OF CONTENTS

PAGE

I.    Statement of the Issues Presented and Standard of Review…………………….....2

II.    Statement of the Case……………………………………………………………..3

       a.  Nature of the Case……………………………………………………………….3

       b.  Course of the Proceeding & Statements of Facts………………………………4

III.    Argument………………………………………………………………………….8

       Point 1: The Order Should Be Affirmed Because the Bankruptcy Court's

       Finding that HBD did not Confer a Benefit Upon the Debtors is Not

       Clearly Erroneous……………………………………………………………….9

       Point II: Disallowance of the Fess and Expenses Sought in the

       Supplemental Fee Application Offends Neither Precedent of Policy………….13

          A) The Bankruptcy Court's Ruling is Consistent With the

            Policy of the Bankruptcy Code………………………..…………….13

          B) HBD's "Deterrence" Argument Lacks Merit………………………17

          C) HBD's Argument Against Application of the American Rule is

            Fundamentally Flawed……………………………………………...18

          D) HBD's Conclusory Argument That It Benefited the Estate Lacks

            Merit……………………………………………………………..19

IV. Conclusion…………………………………..……………………………………21

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page**

Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240 (1975)........................................ 13

Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154,
   (3d Cir. 2004)........................................................................................................ 10

Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince), 40 F.3d 356,
   (11th Cir. 1994).................................................................................................... 2

Fellheimer, Eichen & Braverman v. Charter Technologies,  57 F. 3d 1215 (3d Cir. 1995)........... 3

Friedman Enters. v. B.U.M Int'l Inc. (In re B.U.M. Int'l, Inc.), 229 F.3d 824
   (9th Cir. 2000)................................................................................................... 3, 10

Generes v. Morrell (In re Generes), 165 B.R. 1011 (N.D. Ill. 1994)........................................... 18

Grant v. George Schuman Tire & Battery Co., 908 F.2d 874 (11th Cir. 1999).....................14

In re Busy Beaver Building Centers, Inc., 19 F.3d 833 (3d Cir. 1994) ........................ 8, 16, 17, 18

In re Callister, (Callister v. Ingersoll-Rand Financial Corporation), 673 F.2d 305
   (10th Cir. 1982)....................................................................................................5

In re Carretta, 220 B.R. 203 (D.N.J. 1998) ................................................................. 12

In re DN Assoc.,165 B.R. 344 (Bankr. D. Me. 1994)....................................................14

In re Engel, 124 F.3d 567 (3d Cir. 1997)........................................................... 2, 3, 9, 10

In re Gribbon, 181 B.R. 179 (D.N.J. 1995) ......................................................... 11

In re Inter Urban Broadcasting, 174 B.R. 441 (D. La. 1994)....................................3, 10

In re Kula, 213 B.R. 729 (8th Cir. BAP 1997) ......................................................... 2

In re Lederman Enterprises, Inc., 997 F. 2d 1321 (10th Cir. 1993)................................ 11

In re Marvel Entertainment Group, Inc., 234 B.R. 21, (D. Del. 1999)......................... 16

In re Manoa Finance Co., 853 F.2d 687 (9th Cir. 1999)...........................................10, 15

In re New Boston Cake Corp., 299 B.R. 432 (Bankr. E.D. Mich 2003)............................14

In re Nucorp Energy Inc., 764 F.2d 655 (9th Cir. 1985) ........................................................ 2, 15

In re Riverside-Linden Investment, Co., 945 F.2d 320 (9th Cir. 1991)........................................ 14

In re Smith, 317 F.3d 918 (9th Cir. 2002................................................................................ 10, 15

In re Spanjer Bros., 203 B.R. 85, (Bankr. D. Ill. 1996). ............................................................. 12

In re St. Rita's Assoc. Private Placement, L.P., 260 B.R. 650
    (Bankr. W.D.N.Y. 2001)................................................................................... 14, 16, 17

In re Stations Holding Co., Inc., 2004 Bankr. Lexis 1220 (Bankr. D. Del. 2004)........................ 12

In re Top Grade Sausage, 227 F.3d 123 (3d Cir. 2000).............................................................. 10

In the Matter of Evangeline Refining Co. (Continental Illinois National Bank & Trust
    Company of Chicago v. Wooten), 890 F.2d 1312 (5th Cir. 1989)...................................5

Kemp, Klein, Umphrey, Endelman & May v. Bankr. Estate of Veltri Metal Prods.
    (In re Veltri Metal Prods.), 2005 U.S. Dist. LEXIS 10753 (D. Mich. 2005)...................... 3, 10

Nail v. Harmelink & Fox Law Office (In re Gage), 164 B.R. 756 (D.S.D. 1993) ................... 3, 10

Nunley v. Jesse, 92 B.R. 152 (W.D. Va. 1988)........................................................................10

Staiano v. Cain (In re Lan Assocs. XI, L.P.), 192 F.3d 109 (3d Cir. 1999) ................................ 10

Zolfo Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253 (3d Cir. 1995)....................................... 2

## Statutes

11 U.S.C. § 330(a) ...................................................................................................... 9, 12, 14, 19

Fed. R. Bankr. P. 9011.............................................................................................................18

This is the brief of Appellee Goldin Associates L.L.C., as Liquidating Trustee of the Worldwide Liquidating Trust, in support of affirmance of the Order of Honorable Mary Walrath, U.S. Bankruptcy Judge, denying the Supplemental Fee Application of Appellant Hennigan Bennett & Dorman LLP ("HBD"). For the reasons stated more fully herein, the Liquidating Trustee respectfully requests that the Court dismiss HBD's Appeal and affirm the Order, as that term is defined herein, in its entirety.

## Statement of the Issue Presented and Standard of Review

The issue on appeal is whether the Bankruptcy Court correctly refused to approve payment for the fees and expenses which HBD sought in its Supplemental Fee Application. HBD erroneously asserts that the applicable standard of review is *de novo*. See HBD's Opening Brief, at 1. However, a district court reviews a bankruptcy court's decision to award attorneys' fees for an abuse of discretion. See In re Engel, 124 F.3d 567, 571 (3d Cir. 1997) (citing Zolfo Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253, 257 (3d Cir. 1995)); see also In re Nucorp Energy Inc., 764 F.2d 655, 657 (9th Cir. 1985). Appellate review of fee awards is limited in deference to the bankruptcy judge's familiarity with the work performed by the respective professionals. See In re Kula, 213 B.R. 729, 736 (8th Cir. BAP 1997). A district court may set aside a Bankruptcy Court's fee award only where the judge sitting below failed to apply the proper legal standard or to follow proper procedures in making the determination, or based an award upon findings of fact that were clearly erroneous. See Zolfo, Cooper & Co., 50 F.3d at 257 (quoting Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince), 40 F.3d 356, 359 (11th Cir. 1994)). "The clearly erroneous standard is fairly stringent: It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue

2

of credibility or bears no rational relationship to the supportive evidentiary data." Fellheimer,

Eichen & Braverman v. Charter Technologies, 57 F. 3d 1215, 1223 (3d Cir. 1995) (internal

quotations omitted). The Bankruptcy Court's ruling was based on its determination that the

services and expenses sought were not beneficial to the estate, which is a prerequisite for

payment of fees from the estate. Engel, 124 F. 3d at 573 (the attorney who seeks fees from the

estate "must show that his services were necessary and benefited the estate..."). The

determination of whether services were beneficial is one of fact which is reviewed for clear error.

Friedman Enters. v. B.U.M Int'l Inc. (In re B.U.M. Int'l, Inc.), 229 F.3d 824, 831 (9th Cir. 2000)

(The bankruptcy court's determination under § 330 that a professional's services did not benefit

the estate is reviewed for clear error as a finding of fact, and its decision not to award fees is

reviewed for an abuse of discretion.); Kemp, Klein, Umphrey, Endelman & May v. Bankr. Estate

of Veltri Metal Prods. (In re Veltri Metal Prods.), 2005 U.S. Dist. LEXIS 10753 (D. Mich.

2005); In re Inter Urban Broadcasting, 174 B.R. 441, 445 (D. La. 1994); Nail v. Harmelink &

Fox Law Office (In re Gage), 164 B.R. 756, 757 (D.S.D. 1993). HBD has not argued, much less

established, that the Bankruptcy Court committed clear error in its finding of lack of benefit to

the estate, that finding is adequately supported by the record below, and based upon that finding

the lower court properly exercised its discretion in denying payment of the fees and expenses

requested.

### Statement of the Case

#### A.    Nature of the Case

This is an appeal by HBD of a Bankruptcy Court order dated March 8, 2005 (the

"Order"), denying all of the attorneys' fees and expenses requested by HBD in its Application

for Allowance of Compensation and for Reimbursement of Expenses Incurred in Defense of

3

Objection to the Firm's Final Fee Application, dated December 30, 2004 (the "Supplemental Fee Application"). The sole issue on appeal is whether the Bankruptcy Court correctly denied HBD the fees and expenses sought in the Supplemental Fee Application, all of which were incurred after the consummation of the Debtors' Chapter 11 Plan of Reorganization and in prosecuting HBD's Final Fee Application. None of the statements and characterizations contained in HBD's Opening Brief regarding the discovery in connection with, and the hearings on, HBD's Final Fee Application (See HBD Brief at 2-3, 5-8, 9-14), are even remotely relevant to this appeal, since (i) HBD has not appealed from the Bankruptcy Court's decision to deny HBD over $380,000 in fees, and (ii) the Bankruptcy Court found as a fact (which has not been challenged on this appeal) that the Liquidating Trust's objection to HBD's fees was not filed in bad faith. As set forth more fully herein, HBD has failed to demonstrate that the Bankruptcy Court abused its discretion in rejecting HBD's Supplemental Fee Application, and denying HBD post-Effective Date fees and expenses.

### B.    Course of the Proceedings & Statement of Facts

The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on January 19, 1999. (Docket No. 1). An order retaining HBD as Debtors' counsel was entered on January 21, 1999. (Docket No. 8).

On June 7, 2001, the Court entered its "Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Consolidated Liquidating Chapter 11 Plan," pursuant to which the Liquidating Trust was created and the Trustee was appointed. (Docket No. 2325). As of the June 30, 2001 Effective Date of the Plan, the Debtors were substantively consolidated, all of the Debtors' remaining assets were conveyed to the Liquidating Trust, the Trustee succeeded the Debtors as representative of the estates, and the Debtors were dissolved. Accordingly, at that

4

point, HBD's client, and the Debtors' estates, had been fully administered and ceased to exist.
None of the fees or expenses which are at issue on this appeal were incurred prior to the
Effective Date of the Plan.

On August 14, 2001, HBD filed its Sixth and Final Verified Application for Allowance of
Compensation and for Reimbursement of Expenses (the "Final Fee Application") seeking fees in
the amount of $5,872,609.90 and reimbursement of expenses in the amount of $1,042,422.46.
(Docket No. 2441) for representing the Debtors in the Chapter 11 case[1]. On October 1, 2001, the
Trustee offered in writing to settle its potential objections to HBD's Final Fee Application by
agreeing to a consensual reduction of 7% of the total fees requested, which would have
amounted to $411,082.69. The Trustee made similar offers to all of the other professionals in the
case, and most of the offers resulted in negotiated settlements of the Trustee's potential
objections. Nevertheless, just one day after the offer was extended to HBD, HBD responded and
stated that it would not agree to "the requested reduction, or any other discount to its fees."

Thus, on December 3, 2001, the Trustee filed its Objection to the Final Fee Application,
which Objection was supplemented on March 1, 2002 (collectively, the "Objection"). (Docket
No. 2549). HBD filed its Reply to the Trustee's Objection on March 15, 2002. (Docket No.
2661). The Trustee and HBD engaged in discovery in connection with the Final Fee Application
and the Objection, and HBD had multiple opportunities at hearings before the Bankruptcy Court

---

[1]  HBD suggests (HBD Brief at 2, 9) that the interim awards of fees and expenses to it during the Chapter 11 case without objection is somehow
meaningful. However, that fact is of no consequence, since interim fee awards are not binding and are without prejudice to any party's right to
object to a professional's final fee application. The allowance of interim professional fees is interlocutory in nature and subject to final
adjustment. In the Matter of Evangeline Refining Co. (Continental Illinois National Bank & Trust Company of Chicago v. Wooten), 890 F.2d
1312, 1321 (5th Cir. 1989); In re Callister, (Callister v. Ingersoll-Rand Financial Corporation), 673 F.2d 305, 306 (10th Cir. 1982)(" The statute
anticipates repeated application to the court for reimbursement and compensation, subjecting the award to amendment or modification at any time
during the pendency of the bankruptcy proceedings").

on May 16, 2002 and December 5, 2002 to establish its entitlement to the fees requested. In its

Opinion dated October 29, 2004 (the "Fee Order"), the Court granted in part the Trustee's

Objection and reduced HBD's fees by $380,250.21. (Docket No. 3258).

The Fee Order required HBD to disgorge to the Liquidating Trust excess fees received

during the case in the amount of $399,470.22. HBD ignored the Fee Order and resisted the

Trustee's attempts to collect the excess fees. Accordingly, the Trustee was compelled to file a

motion to enforce the Fee Order, which it did on December 16, 2004. (Docket No. 3289). In

response, HBD disgorged only a portion of the excess fees, and on December 30, 2004, filed the

Supplemental Fee Application. (Docket No. 3297). In the Supplemental Fee Application, HBD

argued that it was entitled to such fees and expenses because: (i) it "prevailed" in the litigation

involving its Final Fee Application; and (ii) its fee award would be diluted if the defense costs

were not allowed. Absent from the Supplemental Fee Application, however, was any evidence,

or contention, that the services provided in connection with the fees conferred, or were

reasonably likely to confer, a benefit upon the Debtors or their estates when they were

performed.

On February 1, 2005, the Trustee objected to the Supplemental Fee Application. (Docket

No. 3305). In its objection, the Trustee argued that (i) the Bankruptcy Code does not allow fees

for a "prevailing party;"(ii) the dilution argument failed because it ignored the "American Rule"

concerning payment of professional fees; and (iii) the fees and expenses incurred by HBD were

not necessary to the administration of the estates or beneficial to the Debtors or their creditors,

and therefore, were not allowed under Bankruptcy Code Section 330.

The Court agreed with the Trustee's arguments, and at the February 8, 2005 hearing,

denied the Supplemental Fee Application in its entirety. In reaching its decision, the Court

6

adopted a straightforward analysis and evaluated the Supplemental Fee Application against the backdrop of the statutory requirements for approval of fees generally. The record below is absolutely devoid of any evidence that the services in question benefited the estates, as the following colloquy hearing demonstrates:

| | |
|---|---|
| THE COURT: | Well, how did [defending the Final Fee Application] benefit the estate? |
| MR. JOHNSTON: | It benefited the estate, and this is what the case law says, by fixing – by enabling the Court to fix the amount of our fees. The Court fixed the amount of our fees, only after a one year, two day trial process. The benefit to the estate was enabling the Court to determine the validity, or lack of validity of the trust's objections, and to fix the amount of our fees. |
| THE COURT: | Well, I could have done that by sustaining the objection. And if you had never even responded to the objection I could have fixed your fee. |
| MR. JOHNSTON: | You absolutely could have. And then we wouldn't have been put through the process, our fee wouldn't have been diluted. |

                              ***

| | |
|---|---|
| MR. JOHNSTON: | …I think, Your Honor – and hindsight is 20/20, had you just looked at the auditor's report, I don't think that you would have disallowed $2.7 million in our fees. But, certainly, we had to go to the time and expense, and it was great time and expense, to establish to the Court the unreliability of [the Legal Cost Control] report. |

                              ***

| | |
|---|---|
| THE COURT: | Well, that's true. But, wasn't that for your benefit, not for the estate? |
| MR. JOHNSTON: | Ultimately, yes. It certainly was for [HBD's] benefit, but that is not the be-all and end-all of the Court's inquiry… |

See Tr. pgs 11-12.

Moreover, while acknowledging the comparable compensation policy espoused in In re Busy Beaver Building Centers, Inc., 19 F.3d 833 (3d Cir. 1994), the Bankruptcy Court held that the decision did not compel allowance of the Supplemental Fee Application because the "American Rule" applied in the bankruptcy arena, which in this case required HBD to bear the fees and expenses it incurred in litigating to collect its fees, just as would a lawyer seeking to recover fees outside of bankruptcy.

On March 8, 2005, the Court entered the Order disallowing all of the fees and expenses requested in the Supplemental Fee Application, and this appeal followed.  (Docket No. 3312).

### Argument

At issue in this Appeal is whether the Bankruptcy Court abused its discretion in denying HBD post-Effective Date fees and expenses that it incurred on the firm's own behalf in prosecuting its Final Fee Application, which  fees and expenses were found as a fact not to be beneficial to the Debtors or their estates.  The lower court should be affirmed because there is no basis to overturn  the Bankruptcy Court's factual finding that HBD's post-Effective Date services did not benefit the Debtors or their estates, and in order to be compensable services must have been necessary and beneficial. The Busy Beaver[2] court's holding that bankruptcy professionals should receive compensation that is comparable with non-bankruptcy professionals is not offended by this result, since outside of bankruptcy professionals who must litigate to recover their fees are not entitled to recover the costs incurred in such litigation. Since the Bankruptcy Court did not abuse its discretion in denying the Supplemental Fee Application, the Order should be affirmed in its entirety.

---

[2] In re Busy Beaver Building Centers, Inc., 19 F. 3d 833 (3d Cir. 1994).

**Point I**

**The Order Should Be Affirmed Because
the Bankruptcy Court's Finding that
HBD did not Confer a Benefit Upon
the Debtors is Not Clearly Erroneous**

HBD seeks payment from the Liquidating Trust for services it rendered after its clients,

the Debtors, liquidated and were dissolved pursuant to a confirmed Plan of Reorganization. The

disputed services were rendered after all the work that HBD performed for its clients was

completed, and as the lower court found, were for the sole purpose of prosecuting HBD's final

fee application on its own behalf. Notably, HBD has not appealed from the Bankruptcy Court's

disallowance of over $380,000 in fees sought in its final fee application for representing the

Debtors in Chapter 11. This appeal solely relates to fees HBD incurred in representing itself,

which the Bankruptcy Court correctly found did not benefit the estates and were therefore not

compensable.

Estate compensation of a professional in bankruptcy is a two step process: the first step

requires court approval of retention prior to performance of services, and the second step

requires submission of an application (similar to a bill) to the court after performance of the

services, which is tested against the standards of Section 330 of the Bankruptcy Code. Engel, 124

F. 3d at 569.

Under Bankruptcy Code section 330(a), a bankruptcy court may award only reasonable

compensation for actual, necessary services rendered by a professional. See 11 U.S.C. § 330(a).

In that regard, subsection 330(a)(4)(A)(ii)(I) requires that the services be "reasonably likely to

benefit the debtor's estate." 11 U.S.C. § 330(a)(4)(A)(ii)(I). In interpreting this provision, the

9

Court of Appeals held in Engel that § 330 of the Bankruptcy Code requires that services rendered

by counsel must benefit the estate before payment from estate funds may be authorized. 124 F.

3d at 569. It is also settled law that the fee applicant has the burden of proof on this element.

See In re Top Grade Sausage, 227 F.3d 123, 132 (3d Cir. 2000). Indeed, in In re Smith, – a case

heavily relied upon by HBD – the court held that a fee applicant must demonstrate that the

services satisfy the requirements of section 330. See In re Smith, 317 F.3d 918, 928 (9th Cir.

2002).[3] Accordingly, the inquiry conducted by the lower court under section 330, whether

HBD's services were necessary and benefited the estate, was the proper analytical framework

against which to test the Supplemental Fee Application. As noted above, the question of whether

services provided the necessary benefit is a factual determination which may not be set aside

unless clearly erroneous.[4] Moreover, the Bankruptcy Court exercises broad discretion in the

matter of fee allowance. Staiano v. Cain (In re Lan Assocs. XI, L.P.), 192 F.3d 109 (3d Cir.

1999)

    The phrase "reasonably likely to benefit the debtor's estate" is not defined in the

Bankruptcy Code. While the definition may be fluid, it is settled that courts may not waive this

condition precedent to the allowance of fees. See In re Engel, 124 F.3d at 576. A precondition

to finding a likelihood of benefit to the estate is the existence of an estate to be benefited.

However, it is the law in the Third Circuit, and elsewhere, that the debtor's estate ceases to exist

once confirmation of the plan has occurred. Binder v. Price Waterhouse & Co., LLP (In re

Resorts Int'l, Inc.), 372 F.3d 154, 165 (3d Cir. 2004)( citing cases to the same effect from other

---

[3] Other cases relied upon by HBD require a benefit to the estate. See e.g., In re Manoa Finance
Co., 853 F.2d 687 (9th Cir. 1999); Nunley v. Jessee, 92 B.R. 152 (W.D. Va. 1988).
[4] Friedman Enters. v. B.U.M Int'l Inc. (In re B.U.M. Int'l, Inc.), 229 F.3d 824, 831 (9th Cir. 2000); Kemp, Klein,
Umphrey, Endelman & May v. Bankr. Estate of Veltri Metal Prods. (In re Veltri Metal Prods.), 2005 U.S. Dist.
LEXIS 10753 (D. Mich. 2005); In re Inter Urban Broadcasting, 174 B.R. 441, 445 (D. La. 1994); Nail v. Harmelink
& Fox Law Office (In re Gage), 164 B.R. 756, 757 (D.S.D. 1993).

circuits). Accordingly, at the time it began to perform the services which are the subject of the

Supplemental Fee Application, all of which were performed after the Effective Date and

consummation of the Plan, HBD knew that (1) it no longer had a client whose interests were at

stake, and (2) there was no longer an estate in existence that could be benefited by those services.

The Bankruptcy Court's determination that HBD performed the services in question for its own

benefit, a fact acknowledged by HBD at oral argument, is clearly correct. Tr. at 23. HBD did

not, and could not reasonably have expected to, confer a benefit upon the Debtors' estates at the

time it performed the disputed services since the estates no longer existed to receive such benefit.

Other than to insure that HBD got itself paid, the services neither provided for the orderly or

prompt disposition of the bankruptcy cases or any related adversary proceedings. In fact, had

HBD accepted the Liquidating Trustee's pre-litigation offer to compromise its fees for a 7%

reduction, both HBD and the trust would have been far better off; HBD alone would have saved

itself over $250,000 in internally generated fees and costs in recovering the same amount as it

got after litigation. To put this dispute in perspective, HBD sought recovery from the estate of

almost $231,000, for litigating over approximately $30,000, the difference between the

Trustee's October 1, 2001 offer, and the amount disallowed from HBD's final fee application.

The lower court also correctly noted below that HBD's services were not necessary to the

administration of the estate, since the Bankruptcy Court could have adjudicated HBD's final fee

application without the performance of those services. (THE COURT: "And if you had never

even responded to the objection I could have fixed your fee." Tr. At 11). The test of whether

services are "necessary" is whether the bankruptcy estate required those services for some

specific articulable reason. In re Gribbon, 181 B.R. 179, 183 (D.N.J. 1995). As noted above,

since the estates no longer existed at the time the services were rendered, the services could not

11

have been needed by the estates. Further, an element of whether services and expenses are necessary is whether they benefited the estate. In re Lederman Enterprises, Inc., 997 F. 2d 1321, 1323 (10th Cir. 1993). "The 1994 amendment of the Bankruptcy Code to account for professionals' performance of administrative functions which might have no direct quantifiable benefit (see 11 U.S.C. §§ 330(a)(3)(C) and 330(a)(4)(A)(ii)(II)) did not alter the principle that compensable services must have been rendered for the estate's benefit." In re Spanjer Bros., 203 B.R. 85, 90 (Bankr. D. Ill. 1996). As the Bankruptcy Court held in In re Stations Holding Co., Inc., 2004 Bankr. Lexis 1220 (Bankr. D. Del. 2004) in refusing to allow a professional's fees for responding to objections to its retention, services beyond those necessary to file its retention application were unnecessary and were not beneficial to the estate because "The purpose of such work is to improve the position of the applicant, not the Debtor or creditor body in general." 2004 Bankr. Lexis 1220 at *7. The Bankruptcy Court's decision was based upon the record before it and was governed by the appropriate legal standards for the review of fee applications. Accordingly, there is no basis to disturb the Bankruptcy Court's finding, and likewise, to overturn the Order.

The Bankruptcy Court's decision to deny HBD its fees due to the absence of a benefit as required by Section 330 was not clearly erroneous. Rather, it was based upon the record and the evidence elicited at the February 8, 2005, hearing. Specifically, the decision was based on the fact that HBD failed to make a showing of benefit in the Supplemental Fee Application; that HBD indeed performed the services for its own benefit; and that at the time the services were performed, the Plan had gone effective and the Debtors' estates no longer existed. The Bankruptcy Court's finding of no benefit was not "completely devoid of minimum evidentiary support..." and did bear a relationship to the evidence (or lack thereof) that was presented by

HBD both in the Supplemental Fee Application and at the February 8, 2005 hearing. See In re Carretta, 220 B.R. 203, 210 (D.N.J. 1998). For these reasons, the Bankruptcy Court's determination that that HBD's services did not, and was not reasonably likely to benefit the Debtors estates should not be disturbed; in the absence of a benefit to the estate, it was not an abuse of discretion to hold that HBD's services are not compensable.

### Point II

### Disallowance of the Fees and Expenses Sought
### in the Supplemental Fee Application Offends Neither Precedent or Policy

**A.     The Bankruptcy Court's Ruling Is Consistent With the Policy of the**

**Bankruptcy Code.**

The Bankruptcy Court's conclusion that HBD failed to satisfy Section 330's requirements for payment of its supplemental fees is not clearly erroneous, and that should end the Court's inquiry on this appeal. In an effort to overcome this defect in its position, HBD argues that the Busy Beaver policy of comparable compensation overcomes the requirement that HBD's services must have been necessary and beneficial to the estates. HBD's argument is without merit.

In federal courts, attorneys' fees are not recoverable by the prevailing party in an action except by contract or by statute. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975). This principle is known as the American Rule. According to the American Rule, each litigant is responsible for payment of his own attorney fees. See id. at 247. HBD admitted in argument below that it was "not seeking to reverse the American Rule, or impose any kind of prevailing party standard."(Tr. 10) It was therefore incumbent on HBD to establish an exception to the American Rule applied in this case, a burden that HBD failed to meet.

13

The lower court correctly held that no exception to the American Rule applied, and that

therefore  HBD should bear its own fees and expenses in prosecution of its fee application.

First, the Bankruptcy Court found that the Liquidating Trustee did not act in bad faith in

opposing HBD's fees,  Tr. at 22, and the correctness of this finding is not challenged on appeal.

Accordingly, HBD cannot rely upon any exception to the American Rule based upon the

Liquidating Trustee's conduct.  Furthermore, there is no contract in this case that would shift the

responsibility for HBD's fees to the Debtors' estates.

Finally, there is no statutory exception to the American Rule available to HBD in this

case.  The only statutory provision identified by HBD as even potentially satisfying that

requirement is Bankruptcy Code Section 330.  The first answer to HBD's contention that Section

330 authorizes the award of its fees is that the Bankruptcy Court found that HBD did not meet

Section 330's requirements that fees be necessary and beneficial.  Second, Section 330 does not

on its face provide a statutory exception to the American Rule for fees and expenses incurred in

prosecuting fee applications.  Rather, Section 330 provides only for the recovery of limited fees

and expenses incurred in connection with the <u>preparation</u> of fee applications.  <u>See</u> 11 U.S.C. §

330(a)(6) (providing that "any compensation awarded for the preparation of a fee application

shall be based on the level and skill reasonably required to prepare the application").  The

litigation of a fee dispute is an exercise distinct from the preparation of a fee application.  <u>See</u> <u>In</u>

<u>re St. Rita's Assoc. Private Placement, L.P.</u>, 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001); <u>see</u>

<u>also</u> <u>In re Riverside-Linden Investment, Co.</u>, 945 F.2d 320, 323 (9th Cir. 1991).[5]  There is

---

[5] Attorney time incurred in prosecuting or  defending fee applications is not compensable.  <u>In re</u>
<u>New Boston Coke Corp.</u>, 299 B.R. 432, 442 (Bankr. E.D. Mich. 2003) (citing <u>In re Riverside-</u>
<u>Linden Investment, Co.</u>, 945 F.2d 320 (9th Cir. 1991)); <u>see also</u> <u>Grant v. George Schuman Tire &</u>
<u>Battery Co.</u>, 908 F.2d 874 (11th Cir. 1999); <u>In re DN Assoc.</u>, 165 B.R. 344 (Bankr. D. Me. 1994);
<u>In re St. Rita's Assoc. Private Placement</u>, 260 B.R. 650 (Bankr. W.D.N.Y. 2001).

nothing in Section 330 – or any other provision of the bankruptcy code for that matter – that provides for the recovery of fees and expenses incurred in prosecution of fee applications. Hence, that provision does not provide a statutory basis for an exception to the American Rule, which serves to distinguish this case from the Civil Rights (and other fee shifting cases) on which the cases relied upon by HBD rest.

The seminal case in the line of cases cited at pp. 16-17 of HBD's Brief (and on which those cases rely), is In re Nucorp Energy, Inc., 764 F. 2d 655 (9th Cir. 1985). In re Smith, In re Manoa Finance Co., Big Rivers Electric Co., and virtually all of the other cases that are cited by HBD, all ultimately revert to Nucorp as the source of their holdings. However, a careful reading of Nucorp reveals that it does not support the proposition for which it is cited. Nucorp involved an appeal from the lower court's denial of the fees incurred by a firm in preparing a fee application; there was no issue raised or discussed in Nucorp concerning the award of fees incurred in litigating a contested fee application. As noted above, since Nucorp Section 330 has been amended to specifically permit recovery of fees for fee application preparation, but is silent on compensability of fees for fee application litigation. Nucorp did not address, and does not hold, that fees incurred in litigation over a contested fee application are compensable. The cases that rely on Nucorp for that proposition distort its holding.

In addition, many of the cases relied upon by HBD adopt the test of whether the attorney is the prevailing party in their decision to allow compensation for prosecuting a fee application. See, e.g., Big Rivers, Moss, Hutter. As noted above, HBD stated to the lower court that it was not advocating a prevailing party standard, which should render the prevailing party cases, and logic, inapplicable here. Others of the cases relied upon by HBD deal with fees incurred in a

successful appeal from an allowed fee award, e.g., Nunley, Chavez, Hers, which are not the facts of this case.

The "comparable compensation" policy espoused in Busy Beaver, and upon which HBD relies so heavily on appeal, does not alter the conclusion that HBD is not entitled to the fees and expenses sought in the Supplemental Fee Application. First, the Busy Beaver comparability analysis is designed to determine whether fees charged in bankruptcy are reasonable, by comparing them to fees charged outside of bankruptcy. 19 F. 3d at 848-849. Nothing in Busy Beaver excuses a professional from proving the services in question satisfies Section 330's separate requirement that the services be both necessary and beneficial, a requirement that HBD failed to meet.

Second, in the context of the Busy Beaver comparability analysis, Judge McKelvie's observations in : In re Marvel Entertainment Group, Inc., 234 B.R. 21, (D. Del. 1999) are insightful: "the appropriate market for determining reasonable ... fees . . . depends on the nature of the specific services . . . provided". HBD's services were found by the lower court to be analogous to the costs it would have incurred outside of bankruptcy in trying to recover a fee from a recalcitrant client. The lower court was justified in considering that the services at issue here were rendered under circumstances that would ordinarily not have rendered them compensable in the non-bankruptcy context. HBD's argument that outside of bankruptcy this could not have happened to them because their client would not have waited two years to challenge their fees is also not apposite in this case. The only fees in issue on this appeal are fees that HBD incurred after its client no longer existed, and HBD had no client monitoring the accrual of fees represented by the Supplemental Fee Application. Outside of bankruptcy, if HBD was reporting to a client with a financial interest that client would have undoubtedly instructed

16

HBD not to incur (at least at the client's expense) the fees represented by the Supplemental Fee Application.

In In re St. Rita's Assoc., the court analyzed the comparability standard and stated that

> [i]n bankruptcy, services rendered in connection with a fee dispute are to receive the same compensation as would be paid to skilled practitioners in a non-bankruptcy case. Outside the field of bankruptcy, when clients refuse to pay a disputed bill, attorneys must choose either to "write-off" the liability or to commence litigation for collection. In that litigation, the American Rule applies. Each side generally assumes the cost of its own legal counsel. Because skilled practitioners outside bankruptcy would customarily receive no compensation for the additional time spent on litigating a fee dispute, no further compensation is payable to [the applicant] in the present instance.

In re St. Rita's Assoc., 260 B.R. at 652. Thus, because fee disputes are common to all areas of legal practice, the comparable compensation policy does not provide a basis for the recovery of such fees (as it does with the recovery of fees for preparation of fee applications). See id. Had HBD been faced with a client unwilling to pay its fees outside of bankruptcy, its choices would have been to write off the time or to litigate to try to recover it. Even if it succeeded in that litigation, absent an agreement to the contrary, it would not have been allowed to recover its fees incurred in that litigation due to the American Rule. Thus, denying HBD's Supplemental Fee Application would put HBD in the same position as its non-bankruptcy counterpart under similar circumstances, a fact which was important to the Bankruptcy Court in her ruling below. That is precisely what Busy Beaver requires, and nothing more. There is no aspect of the comparable compensation policy – or Section 330 for that matter – that entitles bankruptcy professionals to compensation greater than their non-bankruptcy counterparts. The policy is one of equality and nothing more. For these reasons, the American Rule precludes HBD from recovering the fees and expenses sought in the Supplemental Fee Application. As such, the Order should be affirmed.

17

**B.    HBD's "Deterrence" Argument Lacks Merit.**

HBD argues that it should be entitled to its defense costs to deter "that which happened to HBD in this case – a largely frivolous, mean spirited objection to a fee application." See HBD's Opening Brief, at 19. Specifically, HBD advocates for a *per se* rule authorizing the allowance of fees and expenses for defending against objections to fee applications as a means to prevent frivolous or meritless objections. See id. That argument fails for at least two reasons. First, such a rule ignores the fact that the Bankruptcy Court has an independent duty to examine fee applications, Busy Beaver, 19 F. 3d at 841, a duty which the lower court exercised in its Opinion on HBD's Final Fee Application. Even after disregarding  the fee auditor's report, in this case the Bankruptcy Court performed an independent review of HBD's Final Fee Application in reaching the conclusions in its October 29, 2004 Fee Order.  The Bankruptcy Court presumably would have reached the same conclusions as to HBD's fees even in the absence of an objection by the trustee.  HBD's deterrence argument does not, and could not prevent fee reductions arising from the Bankruptcy Court"s discharge of its duty of review.  There is no reason for a rule designed to deter conduct which the rule would be ineffective to deter.

Next, and what HBD ignores, is that there is already a rule in place that serves the exact same purpose as the rule proposed by HBD.  Rule 9011 of the Federal Rules of Bankruptcy Procedure vests a Bankruptcy Court with the discretion to award fees and expenses if it finds that a party's conduct warrants such a sanction, *i.e.*, if a party filed a frivolous or meritless pleading. See Fed. R. Bankr. P. 9011; see also Generes v. Morrell (In re Generes), 165 B.R. 1011, 1020 (N.D. Ill. 1994).  Reliance on Rule 9011, rather than a judge-made rule, provides appropriate protections against prosecution of frivolous objections. (Notably, HBD did not assert that the

18

Liquidating Trustee violated Rule 9011 in this case). Indeed, the Bankruptcy Court found that the Liquidating Trustee did not act in bad faith in objecting to HBD's fees (Tr. at 22) and as such, no sanctions in the form of fees and expenses to HBD were warranted.

### C.    HBD's Argument Against Application of the American Rule is Fundamentally Flawed.

HBD also argues that the Liquidating Trustee's view of the impact of the American Rule is erroneous because it ignores the fact that bankruptcy professionals must prepare detailed fee applications as a prerequisite to payment and that the fee applications are typically more detailed that those in non-bankruptcy cases (such as civil rights and other statutory fee cases). See Brief, at 22. Thus, according to HBD, the American Rule should not apply to bankruptcy professionals under those circumstances. HBD's argument fails because it ignores well settled law and is contrary to the express provisions of the Bankruptcy Code.

First, the American Rule applies in bankruptcy cases unless one of the narrow exceptions apply, and none of the exceptions to the American Rule are applicable in this case. Next, Bankruptcy Code Section 330(a)(6) addresses HBD's specific concern and allows for the recovery of fees and expenses for fee application preparation. There is no basis either in the Bankruptcy Code or the comparable compensation policy upon which HBD relies extensively, for the contention that the American Rule should not apply in light of the requirements imposed upon bankruptcy professionals. Section 330(a)(6) equalizes the playing field between bankruptcy and non-bankruptcy professionals and effectuates comparable compensation policy by allowing for the recovery of fees and expenses incurred in the preparation of fee applications. Thus, HBD's reliance on the fee application process as a means to avoid the impact of the American Rule, while ignoring that the Bankruptcy Code already allows for recovery of fees

19

incurred in fee application preparation (rather than litigation), is wholly without merit. In any event, HBD's contentions in this regard do nothing to demonstrate how or why the Bankruptcy Court abused its discretion in denying the Supplemental Fee Application, and that is the salient inquiry on this Appeal.

### D.    HBD's Conclusory Argument That It Benefitted the Estate Does Not Render the Bankruptcy Court's Contrary Finding Clearly Erroneous.

Finally, HBD contends in a conclusory fashion that the services it provided in connection with the Supplemental Fee Application conferred a benefit upon the Debtors or their estates. HBD cites no authority for the proposition that post-effective date services can be either necessary or beneficial to an estate that no longer exists. Nothing in HBD's Brief meets the burden of proving that the lower court's findings are clearly erroneous.

HBD also argues that the services in the Supplemental Fee Application provided a benefit because they helped determine the amount of the fees owed by the estate. See HBD's Opening Brief, at 24. However, HBD agreed with the Bankruptcy Court at the February 8, 2005, hearing when it reasoned that the Court could have determined the amount of the fees owed by the estate without HBD performing any of the services for which it sought compensation in the Supplemental Fee Application. See Tr. at 11-12. That admission is fatal to the contention that the services were either necessary or beneficial.

In sum, none of HBD's contentions demonstrate how or why the Bankruptcy Court abused its discretion in denying the Supplemental Fee Application, and that is the salient and dispositive inquiry on this Appeal. Accordingly, because HBD has failed to meet its burden and otherwise failed to point to any basis to disturb the Bankruptcy Court's Order, the Appeal should be denied and the Order should be affirmed in its entirety.

## Conclusion

For the reasons set forth in detail herein, the Liquidating Trustee respectfully requests

that the Court affirm the Order in its entirety.

Dated:  August 26, 2005                         KLEHR, HARRISON, HARVEY,
        Wilmington, Delaware                    BRANZBURG & ELLERS, LLP


By _____

Steven K. Kortanek (#3106)
Michael W. Yurkewicz (#4165)
919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189

- and -

WOLLMUTH MAHER & DEUTSCH
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

Counsel for Goldin Associates, L.L.C.,
Liquidating Trustee of the Worldwide Direct
Liquidating Trust

21