Case No. CV 1:05-00206-KAJ

**UNITED STATES DISTRICT COURT**

**DISTRICT OF DELAWARE**

---

*In re* WORLDWIDE DIRECT, INC., et al., *Debtors*.

HENNIGAN, BENNETT & DORMAN LLP, *Appellant*,

v.

GOLDIN ASSOCIATES, L.L.C.,
as Liquidating Trustee for the Worldwide Direct Liquidating Trust, *Appellee*.

---

*Appeal From The United States Bankruptcy Court*

*For The District of Delaware*

Bankr. Case Nos. 99-108 to -127 (MFW) (jointly administered)

---

# APPELLANT HENNIGAN, BENNETT & DORMAN LLP's REPLY BRIEF

James O. Johnston, Jr.
HENNIGAN, BENNETT & DORMAN LLP
601 South Figueroa Street
Suite 3300
Los Angeles, California 90017
Telephone: (213) 694-1200
Telecopy: (213) 694-1234

Robert S. Brady (Bar No. 2874)
YOUNG CONAWAY STARGATT & TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Telecopy: (302) 571-1253

*Counsel for Appellant*
*Hennigan, Bennett & Dorman LLP*

**TABLE OF CONTENTS**


| | | Page |
|---|---|---|
| I. | THE BANKRUPTCY COURT'S ERROR OF LAW IS SUBJECT TO *DE NOVO* REVIEW | 1 |
| II. | THE BANKRUPTCY CODE AUTHORIZES HBD TO BE COMPENSATED FOR SUCCESSFULLY DEFENDING AGAINST THE LIQUIDATING TRUST'S MERITLESS OBJECTION | 3 |
| III. | THE BANKRUPTCY COURT'S *PER SE* RULE IS INCONSISTENT WITH THE PURPOSE AND INTENT OF THE BANKRUPTCY CODE'S COMPENSATION PROVISIONS | 7 |
| IV. | CONCLUSION | 12 |

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979) .......... 10

*In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833 (3d Cir. 1993) .......... 7

*In re Callister*, 673 F.2d 305 (10th Cir. 1982) .......... 8

*In re Computer Learning Centers, Inc.*, 285 B.R. 191 (Bankr. E.D. Va. 2002) .......... 6,9

*In re Delta Petroleum (P.R.) Ltd.*, 193 B.R. 99 (D.P.R. 1996) .......... 4

*In re Engel*, 124 F.3d 567 (3d Cir. 1997) .......... 2

*In re Hers Cosmetics Corp.*, 114 B.R. 240 (Bankr. C.D. Cal. 1990) .......... 4,9

*In re Holder*, 207 B.R. 574 (Bankr. M.D. Tenn. 1997) .......... 4

*In re Hutter Construction Co.*, 126 B.R. 1005 (Bankr. E.D. Wis. 1991) .......... 6

*In re Lan Associates XI, L.P.*, 192 F.3d 109 (3d Cir. 1999) .......... 2

*In re Lederman Enterprises, Inc.*, 997 F.2d 1321 (10th Cir. 1993) .......... 2

*In re Manoa Finance Co.*, 853 F.2d 687 (9th Cir. 1988) .......... 10

*In re Meade Land & Development Co.*, 527 F.2d 280 (3d Cir. 1975) .......... 2

*In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985) .......... 2,9,10

*Nunley v. Jessee*, 92 B.R. 152 (W.D. Va. 1988) .......... 4

*Pawlak v. Greenawalt*, 713 F.2d 972 (3d Cir. 1983) .......... 10

*Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978) .......... 10

*In re Smith*, 317 F.3d 918 (9th Cir. 2002) .......... 4,5,6,10

*In re Spanjer Brothers, Inc.*, 203 B.R. 85 (Bankr. N.D. Ill. 1996) .......... 4

*United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552 (3d Cir. 1999) .......... 5

**Page**

**Statutes and Rules**

11 U.S.C. § 330 ........................................ 3,4,5,6

11 U.S.C. § 350 ........................................ 5

Fed. R. Bankr. P. 3020 ........................................ 5

Fed. R. Bankr. P. 3022 ........................................ 5

## I. THE BANKRUPTCY COURT'S ERROR OF LAW IS SUBJECT TO *DE NOVO* REVIEW

The issue on appeal is strictly a question of law. The Bankruptcy Court concluded that the Bankruptcy Code prohibits a professional like HBD from recovering fees and expenses incurred in successfully defending against a fee objection. HBD asserts that the Bankruptcy Court was incorrect as a matter of law.

Unlike the typical case in which a court reduces or disallows a professional's requested fees, the Bankruptcy Court's order here was not based on any assessment of the fees for which HBD sought reimbursement. The Court did not find, for example, that HBD spent too much time drafting a pleading, or taking a deposition, or researching an issue. The Court did not decide that HBD's rates were too high, or that HBD overstaffed the case, or that any of HBD's services were inappropriate. In short, the Court did not make any kind of finding to which an appellate court properly would apply limited, abuse of discretion review "in deference to the bankruptcy judge's familiarity with the work performed by the respective professionals" (to use the words of the Liquidating Trust). Liq. Tr. Brief at 2.

To the contrary, the Bankruptcy Court observed that HBD satisfied the factors established in the vast majority of cases that authorize compensation like that denied to HBD. Ap. 3308, at 21-22. The Court simply believed that those cases were decided incorrectly. In order to affirm, this Court will not have to review any factual findings or otherwise assess the reasonableness of HBD's fees. Instead, the Court will have to determine whether the Bankruptcy Court was correct as a matter of law, and the Ninth Circuit and other courts cited by HBD in its Opening Brief therefore were wrong as a matter of law, on the issue of whether a fee applicant is ever entitled to reimbursement for its time and expense in fending off a baseless fee objection.

This Court, acting as an appellate tribunal, reviews the Bankruptcy Court's legal conclusions on a *de novo* basis. The fact that, in this case, those legal conclusions were

made in the context of a fee application does not alter this basic rule. The Third Circuit expressly has held that a district court commits reversible error if it applies a "clearly erroneous" standard of review to a bankruptcy court's fee award where (as here) the appellant raised a legal, rather than a factual, issue:

> We must first determine whether the district court applied the correct standard in reviewing the challenged aspects of the Bankruptcy Judge's fee determination. The district court treated the Referee's conclusions as findings of fact and applied the 'clearly erroneous' rule prescribed by Bankruptcy Rule 810. Given the nature of appellant's contentions we think <u>it was error to apply the clearly erroneous standard to test the correctness of the Bankruptcy Judge's conclusions</u>. We say this because appellant was raising legal issues, *viz.*, whether detailed time records were required before credit could be given for certain services claimed to have been rendered and whether certain services were legal services. <u>We thus approach this case as we would any case raising purely legal issues</u>.

*In re Meade Land & Development Co.*, 527 F.2d 280, 282-83 (3d Cir. 1975) (emphasis added). The very cases cited by the Liquidating Trust demonstrate this fact. *E.g.*, *In re Lan Associates XI, L.P.*, 192 F.3d 109, 114 (3d Cir. 1999) (reviewing bankruptcy court's "conclusions of law under a plenary standard" and reversing a fee award where "it was erroneous as a matter of law for the bankruptcy court to consider" several factors that the appellate court deemed inapplicable); *In re Engel*, 124 F.3d 567, 571 (3d Cir. 1997) (even in the fee context, "[t]he bankruptcy court's legal interpretations are subject to plenary review"); *In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) (applying *de novo* review to appellant's argument that the bankruptcy court "employed an incorrect legal standard to determine its eligibility for fees").

Finally, lest there be any doubt as to the specific issue now on appeal, the Ninth Circuit expressly has held that *de novo* review is applied in a case like this. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir. 1985) (applying *de novo* review to, and ultimately reversing, "the bankruptcy court's decision to disallow compensation for services related to the preparation and presentation of attorneys' fee applications[, which]

was based on an erroneous construction of 11 U.S.C. § 330, the statutory provision governing reimbursement to counsel in bankruptcy proceedings").[1]

## II. THE BANKRUPTCY CODE AUTHORIZES HBD TO BE COMPENSATED FOR SUCCESSFULLY DEFENDING AGAINST THE LIQUIDATING TRUST'S MERITLESS OBJECTION

The Bankruptcy Court concluded that the Bankruptcy Code forbids a professional from being reimbursed for fees and expenses incurred in defending against an unsuccessful fee objection. In its Opening Brief, HBD demonstrated that an overwhelming majority of the courts to confront the issue – in at least eleven different published opinions – has reached the opposite conclusion. HBD Brief at 16-17 & n.5.

The Liquidating Trust barely mentions or attempts to distinguish this precedent. Instead, the Liquidating Trust relies primarily on an argument that expenses incurred in litigating a fee objection are not "reasonably likely to benefit the debtor's estate" and thus not compensable under section 330(a)(4)(A)(ii)(I) of the Bankruptcy Code. Liq. Tr. Brief at 9. There are several flaws with this argument.

First and foremost, the Liquidating Trust fails to consider the entirety of the statutory provision on which it relies. Section 330(a)(4)(A) provides, in relevant part, that a court may not allow compensation for –

> (ii) services that were not –
>
> > (I) reasonably likely to benefit the debtor's estate; <u>or</u>
> >
> > (II) <u>necessary to the administration of the case</u>.

---

1 The Liquidating Trust tries to avoid *de novo* review by claiming that "[t]he Bankruptcy Court's ruling was based on its determination that the services and expenses sought [sic] were not beneficial to the estate." Liq. Tr. Brief at 3. This is misleading, as the only finding made by the Court was the <u>categorical</u> determination that services like those rendered by HBD are <u>never</u> beneficial or reimbursable. That was a legal conclusion, not a factual finding. The Court made no findings at all that were specific to HBD or the fees for which HBD sought reimbursement.

11 U.S.C. § 330(a)(4)(A) (emphasis added). In other words, compensation may be allowed for services that were likely to benefit the estate or that are necessary to administration of the case, regardless of any benefit to the estate. *E.g.*, *In re Delta Petroleum (P.R.) Ltd.*, 193 B.R. 99, 108 (D.P.R. 1996). The Liquidating Trust completely ignores the second half of this disjunctive statutory test.

Second, the Liquidating Trust also neglects the ample authority establishing that, contrary to the Trust's rigid "benefit" analysis, "[t]he concept of 'benefit to the estate' is not restricted to an economic dollar for dollar interpretation." *In re Holder*, 207 B.R. 574, 584 (Bankr. M.D. Tenn. 1997) (collecting cases). As the Liquidating Trust's own authority demonstrates, noneconomic benefits are compensable, including where "the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy cases." *In re Spanjer Brothers, Inc.*, 203 B.R. 85, 90 (Bankr. N.D. Ill. 1996).

Under this rubric, courts have had no difficulty concluding that a professional's fees for successfully defending against a fee objection satisfy both disjunctive prongs of section 330(a)(4)(A) and therefore are compensable. *E.g.*, *In re Smith*, 317 F.3d 918, 929 (9th Cir. 2002) (fees incurred in responding to a fee objection "were necessary for the administration of the case and provided a benefit to the debtor's estate in determining the amount of the administrative fees that the estate owed" to the professional) (emphasis added); *Nunley v. Jessee*, 92 B.R. 152, 153-54 (W.D. Va. 1988); *In re Hers Cosmetics Corp.*, 114 B.R. 240, 242 (Bankr. C.D. Cal. 1990).

The Liquidating Trust's argument that HBD cannot be compensated because "the debtor's estate ceases to exist once confirmation of the plan has occurred" is equally fallacious. Liq. Tr. Brief at 10. For one thing, as explained above, compensation is to be allowed for services that are "necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A)(ii)(II). Here, the bankruptcy case remains open and HBD's services were

necessary to the administration of the pending case because they aided the Bankruptcy Court in "determining the amount of the administrative fees" due to HBD. *Smith*, 317 F.3d at 929.

More fundamentally, the bankruptcy estate does not magically disappear upon confirmation a plan. To the contrary, the Bankruptcy Code, the Bankruptcy Rules, and legions of cases recognize that, even after confirmation, an estate remains to be administered until the bankruptcy case is closed. Section 350 of the Bankruptcy Code provides that a bankruptcy case may be closed only "[a]fter an estate is fully administered," not merely upon confirmation of a plan. 11 U.S.C. § 350(a); *see* Fed. R. Bankr. P. 3022 ("After an estate is fully administered in a chapter 11 reorganization case, the court . . . shall enter a final decree closing the case."). Bankruptcy Rule 3020(d) specifically provides that, "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." Fed. R. Bankr. P. 3020(d). Citing these provisions, the Third Circuit repeatedly has held that the Bankruptcy Court has post-confirmation jurisdiction over any dispute that impacts administration of the estate. *E.g.*, *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 555-56 (3d Cir. 1999) ("the trustee's action to enforce the post-confirmation fee provision is 'related to' or 'arising in' the bankruptcy . . . because it directly relates to the debtor's liabilities – in fact it creates a liability – and could impact the handling and administration of the estate").

Indeed, section 330 of the Bankruptcy Code – the governing statute here – contemplates an award of fees for services after confirmation of a plan, in that it speaks to "compensation awarded for the preparation of a fee application," which (at least in the case of a final fee application) necessarily must occur after plan confirmation. 11 U.S.C. § 330(a)(6). The Liquidating Trust's bald contention that this provision somehow precludes reimbursement of fees for defending a fee application because it speaks only to "preparation of a fee application," Liq. Tr. Brief at 14, is belied by the statute itself, in

that section 330(a)(6) does nothing more than the clarify that typically clerical fee application services are to be compensated "based on the level and skill reasonably required to prepare the application." 11 U.S.C. § 330(a)(6); *see In re Computer Learning Centers, Inc.*, 285 B.R. 191, 223 (Bankr. E.D. Va. 2002) ("the amendments [that added section 330(a)(6) to the Bankruptcy Code] do not clearly preclude the award of additional fees for successfully defending a fee application").

The entire purpose of the fee litigation (which was initiated by the Liquidating Trust, not HBD) was to fix the amount of HBD's reasonable fee for services rendered prior to confirmation of the Debtors' plan. This was both necessary and beneficial to the estate and administration of the case. In comparable circumstances, estate or no estate, courts routinely have awarded fees for successfully defending against fee objections, even where those objections were litigated after confirmation of a plan. *E.g.*, *Smith*, 317 F.3d at 927-29 (post-confirmation fees awarded for defending pre-confirmation fees); *In re Hutter Construction Co.*, 126 B.R. 1005, 1011-12 (Bankr. E.D. Wis. 1991) (same).[2]

Given the Bankruptcy Code's clear requirement that a professional's reasonable fee not be diluted by bankruptcy-unique procedures and expenses – including expenses incurred in fending off unsuccessful fee objections – it was error for the Bankruptcy Court to fail to allow such compensation in this case.

---

2 The Liquidating Trust oddly claims that HBD conceded that its response to the fee objection was not beneficial to the estate. Liq. Tr. Brief at 20. Hardly. HBD's colloquy with the Bankruptcy Court, as cited by the Liquidating Trust, makes the point that the wasteful fee objection litigation could have been avoided had the Liquidating Trust not interposed a massive, groundless $2.7 million objection. The Liquidating Trust's irresponsible reliance on the flawed "audit" report forced HBD, and hence the estate, to incur the cost of establishing the unreliability of the report. Without HBD's efforts, the Bankruptcy Court never would have known just how deficient the report, and hence the Liquidating Trust's entire objection, actually was.

## III. THE BANKRUPTCY COURT'S *PER SE* RULE IS INCONSISTENT WITH THE PURPOSE AND INTENT OF THE BANKRUPTCY CODE'S COMPENSATION PROVISIONS

The Liquidating Trust asserts that the Bankruptcy Court's *per se* rule "is consistent with the policy of the Bankruptcy Code." Liq. Tr. Brief at 13.

One need only review what happened in this case to understand why this assertion in incorrect. After two-plus years of exemplary service to satisfied clients, an engagement ending with the successful confirmation of a bankruptcy plan, HBD was hit with an objection to $2.7 million of its fees, nearly 40% of its total requested compensation. That objection was not raised by HBD's clients, who remained satisfied, but instead by an adversary – the Liquidating Trust – freed from the burden of having to pay its own attorneys' fees (which were to be funded from the communal pool of assets created by the plan that HBD confirmed), and motivated to pursue professionals no longer involved with the bankruptcy case. Worst of all, the massive objection was not grounded in fact and not based on any diligent inquiry into HBD's services. Instead, it was premised on an "auditor's" report so flawed that the Bankruptcy Court ultimately deemed it unreliable and not worthy of consideration. HBD eventually prevailed in achieving allowance of 95% of its total requested fees and more than 86% of the fees subject to the Liquidating Trust's objection, but only after a prolonged and costly litigation (in which the Liquidating Trust's own professionals incurred more than $240,000 in fees).

To forbid a professional like HBD from recovering costs incurred in protecting its reasonable fee is to do violence to the Bankruptcy Code's established – and unchallenged – requirement "that professionals and paraprofessionals in bankruptcy cases should earn the same income as their non-bankruptcy counterparts." *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 849 (3d Cir. 1993). The reasonableness of an allowed fee is preserved, and the "comparable compensation" policy is thus served, only by reimbursing

the professional for successfully defending against a fee objection. *E.g.*, *Smith*, 317 F.3d at 928 ("Failure to grant fees for successfully defending challenges to an authorized fee application would dilute fee awards, in violation of section 330(a), and this would reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally.").

The Liquidating Trust's only response is to argue that HBD's fees are the "cost of doing business" because, under the "American Rule" outside of bankruptcy, HBD would be forced to incur fees "in trying to recover from a recalcitrant client." Liq. Tr. Brief at 16. This analogy is a false one. For any number of reasons, a nonbankruptcy professional could never be exposed to the type of objection raised in this case:

- First, HBD did not have a "recalcitrant client." To the contrary, HBD's clients were fully supportive of HBD's fee request. Outside of bankruptcy, that would be the end of the matter.
- Second, outside of bankruptcy, fee issues are two-party disputes between lawyer and client. In bankruptcy, parties who were not part of the attorney-client relationship are authorized to interject themselves, thereby exponentially increasing the likelihood of baseless objections to the lawyer's reasonable fee.
- Third, in this case HBD already had been paid all of its reasonable fees at the time of the Liquidating Trust's objection.[3] Outside of bankruptcy,

---

3 The Liquidating Trust asserts that the interim approval of HBD's fees during the bankruptcy case is "of no consequence." Liq. Tr. Brief at 5 n.1. While interim fee approval is always subject to the bankruptcy court's final consideration at the conclusion of the case, it is not irrelevant. To the contrary, the practice of submitting interim fee applications is intended to prevent precisely what happened in this case – the wholesale objection to large categories of a professional's services, on the ground that the services allegedly should not have been performed or were not beneficial to the estate, where no objection was made to those services during the lengthy course of the proceedings. Indeed, even the Liquidating Trust's own authority demonstrates that "[i]nterim awards of compensation . . . are to be considered by the court in making a final award." *In re Callister*, 673 F.2d 305, 306 (10th Cir. 1982).

there would have been nothing further for HBD to do, and an unhappy client would have had the burden to commence an action to recover the fees. In bankruptcy, however, HBD was required to return to court to seek affirmative final allowance, and thus to expose itself to third party objections.

- And, fourth, as happened here, objecting parties in bankruptcy frequently do not have to bear their own attorneys' fees or expenses in pursuing a fee objection. Outside of bankruptcy, a "recalcitrant client" is required to retain, at its own expense, a new lawyer in order to pursue a fee dispute with prior counsel, thereby screening out most baseless fee objections. In bankruptcy, objectors often have a "free shot" at fee applicants.

In sum, as the Ninth Circuit aptly remarked, "[a]n attorney's work in obtaining an award from the court involves a somewhat different process, and ordinarily far more time, than is required simply to dun the ordinary client." *Nucorp Energy*, 764 F.2d at 659. In light of this seemingly obvious proposition, courts repeatedly have rejected the argument now made by the Liquidating Trust, and have observed that, absent reimbursement for a successful defense of a reasonable fee, bankruptcy professionals are in a "no win" situation in light of the unique rules of the game in bankruptcy:

> [Without a rule providing compensation], [c]reditors could negotiate reductions in these fee awards knowing full well that <u>the attorney is in a no-win situation</u>. Even if the attorney prevails, he or she will have in effect financed the litigation without any hope of surviving it whole. This makes absolutely no sense. If that was the inevitable result, debtors and creditors would have substantial difficulties in retaining competent counsel in bankruptcy cases. Certainly, Congress did not have that end in mind.

*Hers Cosmetics*, 114 B.R. at 244 (emphasis added); *accord, e.g.*, *Computer Learning Centers*, 285 B.R. at 223-24 ("The fee application process can become involved and expensive, particularly if the fee application process is improperly used to seek an unjustified reduction in fees. If additional fees for defending fee applications are

invariably denied, objections may be encouraged on the theory that what is not objected to will not be disallowed.").

The Liquidating Trust also completely ignores the wealth of Third Circuit authority authorizing reimbursement for fee litigation services in other circumstances in which a "reasonable fee" is mandated by statute. *E.g.*, *Pawlak v. Greenawalt*, 713 F.2d 972, 983 (3d Cir. 1983) ("if attorneys are required to litigate for their fees but are not compensated for the time spent on such litigation, their effective rates will be reduced correspondingly"); *Bagby v. Beal*, 606 F.2d 411, 415-16 (3d Cir. 1979); *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978) (same). *See* HBD Brief at 17-19. As the Ninth Circuit has observed, these Third Circuit cases are closely analogous to bankruptcy cases:

> The policies underlying the compensation of attorneys under the Bankruptcy Reform Act closely parallel those expressed in the other statutory fee cases [such as the Third Circuit cases cited above]. <u>Statutory fee award provisions are designed to ensure that attorneys are fully compensated for handling cases</u>. That was clearly Congress' intent when it enacted section 330 of the Bankruptcy Reform Act. As noted earlier, <u>a refusal to award compensation for the time spent preparing or litigating fee applications results in a reduction of the rate paid for all the attorneys' services</u>. Were we to affirm the district court's decision, we would, in effect, be reducing the fees that bankruptcy counsel may earn to a level that fails to provide full compensation for their services.

*Nucorp Energy*, 764 F.2d at 662 (emphasis added).[4]

---

[4] The Liquidating Trust attempts to distinguish *Nucorp Energy* by contending that the case involved fees incurred in preparing, rather than litigating, a fee application. Liq. Tr. Brief at 15. To the contrary, as the above passage demonstrates, the Ninth Circuit spoke to both "time spent preparing or litigating fee applications." The Liquidating Trust claims that the cases that rely on *Nucorp Energy* "distort its holding." *Id.* The Ninth Circuit, however, is in the best position to decide what *Nucorp Energy* means, and it has cited *Nucorp* several times for precisely the proposition that the Liquidating Trust now disclaims. *Smith*, 317 F.3d at 928 ("We also stated [in *Nucorp Energy*] that time spent litigating fee awards should be compensable."); *In re Manoa Finance Co.*, 853 F.2d 687, 692 (9th Cir. 1988).

Lastly, the Liquidating Trust fails to refute the basic point that the *per se* rule adopted by the Bankruptcy Court "serve[s] to encourage [parties] to file meritless objections to fee applications." *Smith*, 317 F.3d at 929. The Trust claims that "[t]he Bankruptcy Court presumably would have reached the same conclusions as to HBD's fees even in the absence of an objection by the trustee," Liq. Tr. Brief at 18, but this is precisely the point. Had the Liquidating Trust not filed its baseless $2.7 million objection, the Bankruptcy Court would have reached the same result that it ultimately did, and would have allowed 95% of HBD's requested fees. HBD would have had no quarrel with that result, as evidenced by the fact that HBD has not appealed the Bankruptcy Court's underlying fee order. What HBD seeks now is simply reimbursement for the fees and expenses it was forced to incur in responding to the $2.3 million in groundless objections that were overruled by the Bankruptcy Court.

The Liquidating Trust also claims that its irresponsible conduct in connection with the fee litigation is not "relevant" because HBD did not appeal the underlying fee order. Liq. Tr. Brief at 4.[5] To the contrary, that misconduct is highly relevant because, as noted, it related to the Trust's pursuit of $2.3 million in objections that were overruled, not to the small portion of HBD's fees that ultimately were disallowed (on grounds not even advanced by the Liquidating Trust). With the Bankruptcy Court's *per se* rule, non-clients like the Liquidating Trust are free to lodge completely baseless fee objections, indeed even "encouraged" to do so (to use the Ninth Circuit's term), without any countervailing consideration as to the impact on the bankruptcy estate. There is no logic to such a rule.

---

5 The Liquidating Trust asserts that "the Bankruptcy Court found that the Liquidating Trustee did not act in bad faith in objecting to HBD's fees." Liq. Tr. Brief at 15. The Bankruptcy Court's actual observation – "the objection of the trustee[] did not have a sound basis in fact, although I don't go so far as to say it was in bad faith" – is hardly a ringing endorsement of the Liquidating Trust's conduct. Ap. 3308, at 22.

## IV. CONCLUSION

The Bankruptcy Court erred in adopting a *per se* rule that the Bankruptcy Code prohibits a professional like HBD from being reimbursed for fees and expenses incurred in successfully responding to a fee objection. HBD requests that this Court reverse the Bankruptcy Court and remand with instructions to award HBD a reasonable fee for its services in connection with responding to the Liquidating Trust's objection, including the reasonable fees and expenses incurred by HBD in this appeal.

September 16, 2005

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
The Brandywine Building – 17th Floor
1000 West Street
P.O. Box 391
(302) 571-6600 (Telephone)
(302) 571-1253 (Facsimile)

-- and --

HENNIGAN, BENNETT & DORMAN LLP

James O. Johnston
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 (Telephone)
(213) 694- 1234 (Facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2005, I electronically filed a true and correct copy of the Appellant Hennigan, Bennett & Dorman LLP's Reply Brief with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Steven K. Kortanek, Esq.
Klehr, Harrison, Harvey, Branzburg
& Ellers LLP
919 Market Street, Suite 1000
Wilmington, De 19801
***Also by Hand Delivery***

I further certify that on September 16, 2005, I served the Appellant Hennigan, Bennett & Dorman LLP's Reply Brief upon the following non-registered participants in the manner indicated below:

Office of the United States Trustee
844 King Street, Suite 2313
Lock Box 35
Wilmington, DE 19801
***By Email and Hand Delivery***

Paul R. DeFilippo, Esq.
Wollmuth, Maher & Deutsch
One Gateway Center, 9th Floor
Newark, NJ 07102
***By Email and Federal Express***

Robert S. Brady (Bar No. 2874)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6681
rbrady@ycst.com

*Counsel for Appellant Hennigan, Bennett & Dorman LLP*